# Exhibit A

FILED
11/15/2024 3:31 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L012887
Calendar, A
30230209

FILED DATE: 11/15/2024 3:31 PM    2024L012887

# IN THE CIRCUIT COURT OF COOK COUNTY
## STATE OF ILLINOIS

**YASMEEN ELAGHA**

    *Plaintiff,*

v.

    **Case No: 24-** 2024L012887

    **Hon.: _____**

    **JURY TRIAL DEMANDED**

**NORTHWESTERN UNIVERSITY PRITZKER SCHOOL OF LAW,
NORTHWESTERN UNIVERSITY POLICE DEPARTMENT,
THE DAILY SIGNAL MEDIA GROUP, INC. D/B/A THE DAILY SIGNAL,
THE STAR NEWS NETWORK, a/k/a STAR NEWS DIGITAL MEDIA, INC.,
THE CONNECTICUT STAR,
THE TENNESSEE STAR,
MELODY MOSTOW,
ANITA KINNEY,
HARI OSOFSKY in her official capacity as dean of Northwestern University School of Law,
SUSAN MICHELLE SPIES ROTH, in her official capacity as dean of students at Northwestern University School of Law,
GEORGE LANGFORD, in his official capacity as associate dean at Northwestern University School of Law,
ANTHONY KINNETT,
JOHN DOE 1-10,
JANE DOE 1-10,
in their individual and official capacities,**

    *Defendants.*

## COMPLAINT

NOW COMES, Plaintiff Yasmeen Elagha, by and through her counsel, Advanta Law, PLC, & The Shiraz Law Firm, PLLC., Waleed Naser, and Farah Chalisa as local counsel, and for her Complaint against Defendants on information and belief alleges the following:

FILED DATE: 11/15/2024 3:31 PM   2024L012887

## INTRODUCTION:

1. This is a defamation, civil rights, and discrimination action seeking monetary damages from Defendants for the violation of various statutes and laws, resulting in injuries and damages to Plaintiff in the City of Chicago County of Cook, Illinois.

2. Plaintiff Yasmeen Elagha spent nearly three years being harassed in law school by at least one other student whose goal was to prevent Yasmeen from obtaining a job offer from major firms in the United States.

3. Plaintiff is an intelligent and new attorney who had a signed offer to work as an attorney at DLA Piper upon graduation and passage of the Illinois Bar Exam.

4. After years of abuse and harassment, upon information and belief Defendants Melody Mostow and Anita Kinney manufactured an assault and battery claim against Plaintiff and reported it to the Northwestern Police, Northwestern Office of Civil Rights, the Illinois Board of Admissions to the Bar, and Star Media, the Daily Signal, Connecticut Star, Tennessee Star, and Tony Kinnett.

5. Defendants Northwestern Law School, Hari Osofsky, George Langford, and Susan Spies Roth refused to promptly act and deny the false allegations made against Plaintiff by co-defendants, causing everlasting damages to Elagha's reputation, which ultimately cost Plaintiff her career opportunity.

6. Defendant Northwestern Police Department maintained on their site a "complaint" against Plaintiff despite knowing that the complaint was false, inaccurate, and meritless.

7. Defendants, acting in concert and/or individually, defamed, targeted, and harassed Plaintiff.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

8.  Defendants' abuse, harassment, and targeting of Plaintiff was designed to deprive her of career opportunities and inflict serious emotional distress and harm without regard to the consequences.

9.  Defendants repeatedly manufactured claims against Plaintiff through false and fabricated statements regarding crimes that never occurred and spread those statements to various third parties including but not limited to the media.

10. Defendants' Northwestern Law School and their deans Hari Osofsky, George Langford, and Susan Roth explicitly knew that defamatory statements and allegations were made and deliberately refused to correct and deny the allegations and statements to Star Media, the Daily Signal, Connecticut Star, Tennessee Star, and Tony Kinnett, knowing they were false.

11. Defendants Northwestern Law School and their deans Hari Osofsky, George Langford, and Susan Roth explicitly knew that defamatory statements and allegations were made and deliberately refused to correct and deny the allegations and statements to DLA Piper knowing they were false until after Plaintiff lost her job offer and career at DLA Piper.

12. These false statements were made by incentivized individuals and were not refuted or condemned by any university official.

13. Despite there being no evidence to support their claims of assault and battery, upon information and belief, Northwestern University Police Department maintained on their official site a case number against Plaintiff, DLA Piper terminated Plaintiff despite knowing the truth, and Northwestern along with its deans refused to refute and deny Star Media, Daily Signal, Connecticut Star, Tennessee Star, and Tony Kinnett's defamatory article.

14. Ms. Elagha made repeated requests to the university and its deans to correct the false allegations before she lost her job and career.

FILED DATE: 11/15/2024 3:31 PM   2024L012887

15. On May 21, 2024, the Daily Signal published an article defaming Ms. Elagha despite being made aware that the allegations were false.

16. On May 22, 2024, the Connecticut Star published an article defaming Ms. Elagha despite being made aware that the allegations were false.

17. On May 22, 2024, the Tennessee Star published an article defaming Ms. Elagha despite being made aware that the allegations were false.

18. Defendant Tony Kinnett published a knowingly false statement without ever corroborating or determining the veracity of the allegations.

19. Not only did Tony Kinnett publish an article, he also made posts on his account on social media platform "X" regarding the same.

20. To date, Defendants Northwestern, its police department, and its deans never contacted Star Media, the Daily Signal, Connecticut Star, and Tennessee Star to refute the allegations.

21. On July 9, 2024, Ms. Elagha was terminated from DLA Piper.

22. On July 26, 2024, over two weeks after Ms. Elagha was terminated, Northwestern for the first time, and at Ms. Elagha's request, sent correspondence to DLA Piper denying the allegations against Plaintiff. However, it was too little, too late.

23. On August 12, 2024, DLA Piper maintained their decision to terminate Plaintiff.

24. Plaintiff was egregiously defamed and targeted which has led to the loss of her career along with severe and extreme emotional distress.

25. Plaintiff now sues Defendants for their malicious and grossly negligent misconduct that inflicted substantial and irreversible harm.

FILED DATE: 11/15/2024 3:31 PM 2024L012887

## JURISDICTION AND VENUE

26. This Court has jurisdiction over this matter pursuant to Illinois law, as the parties are located in Illinois, the defamatory statements were published and caused harm within the state of Illinois. 735 ILCS 5/2-209

27. Venue is proper in this Court under 735 ILCS 5/2-101, as the events giving rise to this complaint occurred in this jurisdiction.

28. The amount in controversy exceeds $100,000.

## JURY DEMAND

29. Plaintiff Elagha demands a trial by jury on all issues and claims set forth in this Complaint pursuant to pursuant to 735 ILCS 5/2-1105 and Ill. Const. art. I, § 13.

## PARTIES

30. Plaintiff **YASMEEN ELAGHA** is a Palestinian Muslim woman who wears a hijab. Elagha was at all times relevant residing in the State of Illinois. At the time of these events, Plaintiff was a student at Northwestern Law School. She has since graduated and been sworn in as a practicing attorney. In 2023, Plaintiff was wrongfully accused of assault and battery by co-defendants for a crime that was never committed. In May 2024, an article was published in the Daily Signal defaming Plaintiff and accusing her of an assault and battery that never occurred. In July 2024, Plaintiff was terminated from her employment as a result of the defamatory and false allegations made against her.

31. Defendant **NORTHWESTERN UNIVERSITY PRITZKER SCHOOL OF LAW** ("NU", "Northwestern", or "university") at all times relevant to this complaint, is a university located in the State of Illinois. Upon information and belief, the university failed to protect Plaintiff from the publication and dissemination of knowingly false, inaccurate, and defamatory

statements with full knowledge of their incorrectness. Upon information and belief, Northwestern failed to deny the allegations against Plaintiff despite knowing the danger of the statements and possibility of job loss for the Plaintiff until the Plaintiff lost her job. Moreover, Northwestern failed to condemn the false allegations against Plaintiff and failed to take action to prevent harm to its student.

32. Defendant **NORTHWESTERN UNIVERSITY POLICE DEPARTMENT** ("NUPD" or the "Northwestern Police") at all times relevant to this complaint upon information and belief operated under the colors of State Law, employed the officers acting under color of law and within the scope of its employment of the officers pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Chicago Illinois, Chicago Police Department, and the State of Illinois.

33. Defendant **THE DAILY SIGNAL MEDIA GROUP, INC. D/B/A THE DAILY SIGNAL** ("Daily Signal") at all times relevant to this complaint upon information and belief operated and is located in the City of Chicago, State of Illinois. Upon information and belief, the Daily Signal knowingly published defamatory statements against Plaintiff.

34. Defendant **THE STAR NEWS NETWORK, a/k/a STAR NEWS DIGITAL MEDIA, INC.** ("Star News") at all times relevant to this complaint upon information and belief owns and operates Defendant THE CONNECTICUT STAR and Defendant THE TENNESSEE STAR which published an article containing defamatory statements against Plaintiff.

35. Defendant **THE CONNECTICUT STAR,** owned and operated by Defendant Star News Digital Media, Inc**.** at all times relevant to the Complaint upon information and belief, published an article containing defamatory statements against Plaintiff.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

36. Defendant **THE TENNESSEE STAR,** owned and operated by Defendant Star News Digital Media, Inc. at all times relevant to the Complaint upon information and belief, published an article containing defamatory statements against Plaintiff

37. Defendant **MELODY MOSTOW** ("MM", "Melody" or "Mostow") as of August 2023, and relevant to this complaint was a student at Northwestern University Pritzker School of Law and is a resident of the State of Illinois. Upon information and belief, Melody falsely accused Plaintiff of assault and battery, published those false and defamatory statements to the NUPD, and provided those statements to Star Media, the Daily Signal, Connecticut Star, and Tennessee Star. Upon information and belief, Anita and Melody acted in concert to perpetuate the defamation campaign against Plaintiff.

38. Defendant **ANITA KINNEY** ("AK", or "Anita" or "Kinney") at all times relevant to this complaint was a student at Northwestern University Pritzker School of Law and is a resident of the State of Illinois. Upon information and belief, Anita encouraged Melody to falsely accuse Plaintiff of assault and battery, and published those false and defamatory statements Star Media, the Daily Signal, Connecticut Star, and Tennessee Star. Upon information and belief, Anita and Melody acted in concert to perpetuate the defamation campaign against Plaintiff.

39. Defendant **HARI OSOFSKY** ("Hari" or "Osofsky") at all times relevant to this complaint was the Dean of the Northwestern University Pritzker School of Law and is being sued in both her individual and official capacity. Upon information and belief, Osofsky was informed repeatedly of the defamatory statements made against Plaintiff both to the Police and to the media and was warned that Plaintiff was at risk of losing her career. Despite this, Osofsky

FILED DATE: 11/15/2024 3:31 PM    2024L012887

knowingly ignored those concerns and allowed the defamatory statements to be published without refuting them or correcting them or protecting her students.

40. Defendant **SUSAN MICHELLE SPIES ROTH** ("SR" or "Susan" or "Roth") at all times relevant to this Complaint was the Associate Dean and Dean of Students at the Northwestern University Pritzker School of Law and is being sued in both her individual and official capacity. Upon information and belief, Roth was informed repeatedly of the defamatory statements made against Plaintiff both to the Police and to the media and was warned that Plaintiff was at risk of losing her career. Despite this, Roth knowingly ignored those concerns and allowed the defamatory statements to be published without refuting them or correcting them or protecting her students.

41. Defendant **GEORGE LANGFORD** ("GL" or "George" or "Langford") at all times relevant to this Complaint was the Associate Dean/Infrastructure Planning and Design at the Northwestern University Pritzker School of Law and is being sued in both his individual and official capacity. Upon information and belief, Langford was informed repeatedly of the defamatory statements made against Plaintiff both to the Police and to the media and was warned that Plaintiff was at risk of losing her career. Despite this, Langford knowingly ignored those concerns and allowed the defamatory statements to be published without refuting them or correcting them or protecting his students.

42. Defendant **ANTHONY KINNETT a/k/a TONY KINNETT** ("Tony" or "Kinnett") at all times relevant to this Complaint was upon information and belief a reporter employed by the Daily Signal and a resident of the State of Illinois. Upon information and belief, Kinnett published the defamatory article falsely alleging and accusing Plaintiff of assault, battery, and harassment. Upon information and belief, Tony Kinnett also published on social media

8

FILED DATE: 11/15/2024 3:31 PM 2024L012887

platform X falsely alleging and accusing Plaintiff of assault, battery, and harassment. Upon information and belief, Kinnett has not modified or removed the article despite knowing the falsity of the allegations in it nor has he removed the publication on his social media platform X.

43. Defendants **JOHN DOE 1-10**, ("John Doe") upon information and belief at all times relevant to the complaint participated in the defamatory statements or actions giving rise to the defamatory publication.

44. Defendants **JANE DOE 1-10**, ("Jane Doe") upon information and belief at all times relevant to the complaint participated in the defamatory statements or actions giving rise to the defamatory publication.

## **FACTUAL ALLEGATIONS**

45. On or about November 16, 2024, Palestinian students and allies held a silent protest wearing all black and carrying signs, with tape over their mouths.

46. Despite protestors' explicit refusal to be photographed, several law students followed and recorded them, even when asked to stop.

47. Protestors sought assistance from a dean, but nothing was done to stop the students who were recording them against their consent.

48. During the march, other members of the Northwestern community made threatening remarks about their status at the university and their future job prospects, saying things like "we know people high up in university" and "good luck getting jobs after this."

49. Following the protest, pictures and videos of the protestors were shared on social media, including one post by a student at Northwestern Law that garnered significant attention and attracted racist and harmful comments.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

50. Elagha, who had participated in the protest, had her private scholarship status at Northwestern exposed in a tweet by a fellow law student, though it was later deleted.

51. After the protest, that same day, a group of students met with university administrators to express their safety concerns stemming from the protest, asking the school to issue a statement to promote civility on campus and to hold students accountable for doxing and harassment.

52. Despite assurances that the university would follow up on their concerns, no concrete actions were taken to address the threats or the doxing incidents.

53. In fact, since at least November 2022, Elagha made complaints to Northwestern regarding the harassment and targeting she faced by other students in writing and did not receive any protections.

54. Moreover, since at least 2023 and 2024, Elagha made numerous complaints and warnings in writing to Northwestern that the actions of harassment and targeting by other students put her at risk of losing her career opportunities, specifically her job offer at DLA Piper.

55. On or about November 16, 2023, Plaintiff Yasmeen Elagha participated in a silent protest held on Northwestern's campus.

56. Plaintiff Yasmeen Elagha had a job offer from internationally recognized law firm DLA Piper as an associate in their Fall 2024 class.

57. Defendant Melody Mostow at all times relevant, upon information and belief, was at the protest to oppose the silent protest held by the students and to cause issues.

58. Upon information and belief, prior to, during, and after the protest, Anita Kinney, in concert with Melody, encouraged Melody to make a false claim against Plaintiff in an effort to interfere with Plaintiff's future career prospects and to directly affect any economic advantages she may obtain.

10

FILED DATE: 1/15/2024 3:31 PM  2024L012887

59. Upon information and belief, Anita was not on campus during the protest and encouraged Melody to create issues for Plaintiff and other students.

60. Upon information and belief, on or about November 16, 2024, Mostow falsely reported to the NUPD that Plaintiff assaulted, battered, and harassed her at the protest.

61. Upon information and belief, NUPD never even contacted Plaintiff and instead posted on their website the allegations made by Mostow.

62. Nonetheless, NUPD refused to remove the false claim from their public database causing harm to Plaintiff's reputation and perpetuating the false accusation that Plaintiff committed a crime.

63. On or about May 20, 2024, Tony Kinnett, an investigative columnist with the Daily Signal emailed Elagha stating that she "is alleged to have followed/stalked and then assaulted an individual on November 9, 2023" and asked her "Did you follow/stalk Melody Mostow on 11/9/23? Did you assault Melody Mostow on 11/9/23?"

64. On or about that same day, Elagha forwarded the reporter's email to Northwestern's Deans with the notice that "Now, I am at risk of being defamed with false allegations from Melody Mostow. I can consider my job offer rescinded if this publishes. I need the administration's assistance in immediately shutting this down. The administration must contact the reporter and emphasize that this event is fully fabricated, false, and defamatory."

65. Rather than protect their student, the Deans responded advising Elagha to refer the reporter to "media@northwestern.edu" which they claimed is the official email for requests for comments from the University.

66. However, Elagha was looking for the deans of her school to refute the defamatory claims being made against her and protect her from harm and false claims that they knew were going to be publicly published, which they refused to do.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

67. Kinnett was provided with the email "media@northwestern.edu" as was advised by Northwestern.

68. Upon information and belief, neither Star Media, Daily Signal, Connecticut Star, Tennessee Star, nor Kinnett ever reached out to Northwestern to corroborate the allegations.

69. Northwestern knowingly failed to protect Plaintiff from the allegations which Northwestern and its Deans knew were false.

70. On or about May 21, 2024, the Daily Signal published an article that Elagha "berated a fellow law student, Melody Mostow for taking photographs of the demonstration" and that "in public comments, Melody Mostow alleged that Yasmeen Elagha pushed her in the back. She filed a police report with Northwestern University Police about the incident involving Elagha."

71. However, the official crime log kept by campus police reports the incident as "harassment," instead of as an assault or battery.

72. On or about May 22, 2024, the Connecticut Star and the Tennessee Star published an article that Elagha "berated a fellow law student, Melody Mostow for taking photographs of the demonstration" and that "in public comments, Melody Mostow alleged that Yasmeen Elagha pushed her in the back. She filed a police report with Northwestern University Police about the incident involving Elagha."

73. However, the official crime log kept by campus police reports the incident as "harassment," instead of as an assault or battery.

74. Not only did Tony Kinnett publish an article, but he also made posts on his account on social media platform "X" regarding the same.

75. On or about May 22, 2024, Elagha received an email from DLA Piper asking her to complete paperwork for a background check.

FILED DATE: 1/15/2024 3:31 PM 2024L012887

76. Elagha immediately emailed NU Deans the published articles, informed them of DLA Piper's request, and expressed her disappointment that NU Law failed to protect her, effectively failing to prevent severe, pervasive, and objectively offensive harassment causing Plaintiff to be deprived of opportunities despite being warned by Plaintiff many times.

77. On or about May 23, 2024, NU Deans responded to Elagha that the reporter did not choose to contact the university.

78. NU's Office of Civil Rights conducted an investigation after Mostow made a report against Plaintiff and found that there was no physical contact between Elagha and Mostow.

79. In fact, NU Office of Civil Rights "reviewed video footage of the demonstration and did not observe any physical contact between Ms. Elagha and Student A [Mostow]. Based on the above, NU-OCR found no violation of University policy."

80. Upon information and belief, Mostow recanted her allegations against Plaintiff only to Dean Roth.

81. In fact, NU was aware that Mostow recanted the allegations against Elagha but failed to act.

82. To make matters worse, while studying for the bar exam, on or about June 3, 2024, the Illinois Board of Law Admissions sent Elagha a letter requesting information to complete processing of Character and Fitness application due to receiving information that 1) she is a party in a civil suit, and 2) she was "involved in a protest at NU which possibly resulted in a criminal charge."

83. On or about June 17, 2024, Elagha, forced to take time away from studying for the bar exam, forwarded the letter from the Illinois Board of Admissions to the Bar to NU and its Deans.

84. Despite being aware of the false allegations against Elagha since at least May, despite multiple written follow-ups from Elagha, and despite knowing that Mostow recanted her allegations against Plaintiff, it took Northwestern at least two weeks to respond to Elagha and at least

13

FILED DATE: 11/15/2024 3:31 PM   2024L012887

another week to send a letter to the Illinois Board of Admissions confirming that the allegations against Elagha regarding criminal charges was false and no findings of responsibility were issued from any Title IX complaint.

85. Unfortunately, since Northwestern failed to protect its student Elagha and refute the false and defamatory statements made against her, and despite her warning and fears, on or about July 09, 2024, DLA Piper terminated Elagha's employment and refused to allow her to join the incoming Fall 2024 associate class.

86. Once again, after failing to refute the false and defamatory statements made against Elagha, and despite Elagha's repeated pleas and warning to Northwestern that if they do not clarify this that she will lose her job, Elagha was terminated from employment at DLA Piper.

87. Even more tragically, it took Northwestern at least two weeks after Elagha was terminated by DLA Piper to send a letter refuting the allegations against Elagha and certifying that any allegation that Elagha has been the subject of a criminal charged related to an on campus protest is false and Elagha has no adverse disciplinary finding in her file.

88. But the damage was done and Northwestern's deliberate negligence cost Elagha her job opportunity with DLA Piper.

89. On or about August 07, 2024, DLA Piper confirmed their termination of Elagha and did not change their position.

90. But it was too late as the article was published, remains published, and Elagha lost her career at DLA Piper.

91. Defendants in concert with each other clearly defamed Elagha and disseminated with deliberate indifference and failure to correct the dissemination of false and patently inaccurate accusations and charges against Elagha.

14

FILED DATE: 11/15/2024 3:31 PM    2024L012887

## DAMAGES

92. The unlawful, intentional, willful, deliberately indifferent, and reckless acts and omissions of all Defendants caused Plaintiff Elagha to be improperly publicly humiliated, harassed, attacked, wrongfully accused, terminated from her lucrative job, discriminated against, targeted, and discriminated against for criminal allegations for which she clearly did not commit.

93. As a direct result of Defendants' actions and omissions, Elagha sustained injuries and damages, including but not limited to loss of her reputation, loss of her career opportunity at DLA Piper and similarly situated firms, income, pain and suffering, mental anguish, emotional distress, indignities, degradation, restrictions on all forms of personal freedom including but not limited to diet, sleep, enjoyment, and freedom of speech and expression.

94. As a direct result of Defendants' actions and omissions, Elagha sustained economic injuries and damages including loss of income and loss of career opportunities as a result of the widely disseminated false and defamatory criminal allegations published against her.

95. As a direct result of Defendants' actions and omissions, Elagha sustained injuries and damages, including pain and suffering, personal injuries, public humiliation and degradation, loss of reputation, abuse, and harassment.

## CAUSES OF ACTION

### COUNT I:
### Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.
### (Intentional Discrimination and Hostile Environment Towards Muslim Students)

96. Plaintiff incorporates by reference all of the foregoing paragraphs.

15

FILED DATE: 11/15/2024 3:31 PM    2024L012887

97. Upon information and belief, Northwestern receives financial assistance from the United States Department of Education and is therefore subject to suit under Title VI of the Civil Rights Act of 1964.

98. Discrimination against Middle Easterners and/or Muslims including based on actual or perceived ancestry, race, ethnic characteristics, or national origin – is prohibited under Title VI, as reflected not only in decades of Title VI jurisprudence, but also in the written policies of the Office of Civil Rights of the United States Department of Education.

99. Elagha is and identifies as a Palestinian Muslim, and her status and identification as a Palestinian Muslim brings her within the scope of Title VI's protections. Middle Eastern Law Student Association members include Middle Eastern students and Muslims at Northwestern, who are also within the scope of Title VI's protections.

100. Title VI prohibits a recipient of federal funds from intentionally treating any individual worse, even in part, because of his or her ancestry, race, ethnic characteristics, or national origin.

101. The acts and omissions of Northwestern and its administrators subjected Elagha to discrimination, harassment, and targeting on the basis of her actual and/or perceived Palestinian Muslim ancestry, race, ethnic characteristics, or national origin.

102. Northwestern and its administrators had actual notice that such discrimination and harassment, over which Northwestern has substantial control and the authority to remediate, was and continues to be so severe, pervasive, and objectively offensive that it created and continues to create a hostile environment based on Middle Eastern and/or Muslim ancestry, race, ethnic characteristics, or national origin that deprives Elagha full access to Northwestern's protections, opportunities, and educational programs.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

103.     Northwestern and its administrators intentionally discriminated against Elagha on the basis of her actual and/or perceived Palestinian Muslim ancestry, race, ethnic characteristics, or national origin, as exhibited by Northwestern and its administrators' deliberate indifference to the abuse, harassment, and intimidation of Elagha in school, in the media, and through false criminal allegations made by other students, in violation of Title VI. Specifically, Northwestern and its administrators clearly and unreasonably failed, and continue to fail, to cure or otherwise adequately, appropriately, and meaningfully address, ameliorate, or remedy the discrimination against Elagha, punish Mostow and other students who targeted and made false claims against Elagha in violation of the school policies, and the hostile environment that she and other Middle Eastern and Muslim students are forced to endure at Northwestern because of their race, ethnic characteristics, or national origin. Additionally, Northwestern continues to grossly fail to take prompt and effective steps reasonably calculated to end the harassment, eliminate any hostile environment, and prevent the harassment from recurring. Such unlawful deliberate indifference caused Elagha to be subjected to a hostile educational environment and ultimately cost Elagha her lucrative job.

104.     The environment at Northwestern, which has been rendered hostile for Elagha as a result of her Palestinian and Muslim ancestry, race, ethnic characteristics, or national origin, is sufficiently severe, pervasive, persistent, and offensive such that it deprived Elagha of equal access protection under school policies, and deprived Elagha of the educational opportunities and benefits that Northwestern provides to non-Middle Eastern and non-Muslim students.

105.     Northwestern and its administrators actively and intentionally engage in this pattern of severe and/or pervasive discrimination.

17

FILED DATE: 11/15/2024 3:31 PM    2024L012887

106. Northwestern and its administrators also directly and intentionally discriminated against Elagha, with her actual or perceived Palestinian and Muslim ancestry, race, ethnic characteristics, or national origin a substantial or motivating factor in Northwestern's actions.

107. Northwestern continues to unreasonably fail to act, or to act grossly inadequately and discriminatorily, and with leniency, tolerance, deliberate indifference, and/or unjustifiable delay, in applying its policies to known or reported incidents involving false claims and false criminal accusations, harassment, or where the victim or complainant is a Middle Eastern or Muslim Student, including Elagha. As detailed above, Northwestern's actions, inactions, and conduct were, and continue to be, intended to treat Elagha differently as a Palestinian Muslim student as compared to other similarly situated non-Middle Eastern or non-Muslim students.

108. Northwestern's actions and inactions failed to properly protect Elagha from harassment and false claims made by other students, failed to enforce policies designed to prevent false allegations and harassment, and failed to take any reasonable step to prevent a knowingly false statement and accusation from being published against Plaintiff.

109. Northwestern's violations of Title VI are the actual, direct, and proximate causes of Elagha's injuries.

110. As a result of the foregoing, Elagha has suffered, and continue to suffer, substantial damages, in amounts to be determined at trial.

111. Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. §2000d *et seq*, and to deter Defendants and others from similar behavior in the future.

FILED DATE: 11/15/2024 3:31 PM   2024L012887

**Count II:**
**Title VI and Title VII of the Civil Rights Act**
**(Deliberate Indifference)**

112.     Plaintiff incorporates by reference all of the foregoing paragraphs.

113.     Northwestern's deliberate indifference to the harassment and hostile environment towards
Elagha could not be clearer. Since at least 2022, Elagha has made complaints to Northwestern
regarding the harassment and targeting she faced by other students in writing and has not
received any protections.

114.     Moreover, since at least 2023 and 2024, Elagha made numerous complaints and warnings
to Northwestern that the actions of harassment and targeting by other students would put her
at risk of losing her career opportunities, specifically her job offer at DLA Piper.

115.     Since on or about May 2024, Elagha made numerous complaints to Northwestern and its
deans that false allegations and criminal accusations against her were being published and that
failure by the school to respond will certainly cause her substantial harm including but not
limited to loss of her career.

116.     Northwestern's deliberate indifference to the hostility and false accusations made against
Elagha was never rectified and Northwestern has not punished its students who specifically
targeted, harassed, and deliberately made false statements and criminal accusations against
Plaintiff.

117.     Northwestern's deliberate indifference to the harassment of a Palestinian Muslim student,
enabling of false accusations and statements to be published against Elagha despite knowing
their falsity, and failing to properly address, rectify, enforce its policies, or punish the students
for harassment and false criminal accusations constitutes an egregious violation of Title VI of
the Civil Rights Act of 1964.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

118.    Northwestern had actual knowledge of the false claims against Elagha and had actual knowledge that the allegations of assault, battery, and harassment against Elagha were false.

119.    Northwestern deliberately ignored the warnings from Elagha that she was being harassed, that there are statements being made against her publicly that are false, and that she was at risk of losing her career if the accusations were not denied by Northwestern.

120.    Northwestern refused to take any action to prevent the publication of knowingly false statements and criminal accusations against Elagha which Northwestern knew were inaccurate, false, and had never occurred.

121.    Northwestern failed to take any reasonable step to protect Elagha from harassment and from false criminal accusations being published and failed to take any additional steps to protect Elagha, including by not reporting to the media that the allegations are false, not reporting to Elagha's employer that the allegations are false prior to her losing her job, and not reprimanding or appropriately disciplining the students for making false accusations and harassing Elagha.

122.    Elagha was subjected to severe harassment by non-Muslim students such as the Defendants, including through the filing of false criminal claims against her.

123.    Elagha was deprived of educational opportunities and/or benefits, loss of her lucrative job position, and opportunities to partake in various activities.

124.    Northwestern clearly knew of the harassment and false criminal claims and accusations made by other students towards Plaintiff through repeated documentation.

125.    Northwestern failed to take any reasonable step to end the harassment, punish the harassment, punish the false criminal accusations, and protect Elagha from the damages suffered as a result of the accusations against her after repeated warnings to Northwestern.

FILED DATE: 11/15/2024 3:31 PM  2024L012887

126. Northwestern's violations of Title VI are the actual, direct, and proximate causes of Elagha's injuries.

127. As a result of the foregoing, Elagha has suffered, and continues to suffer, substantial damages, in amounts to be determined at trial.

128. Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988

WHEREFORE, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. §2000d *et seq*, and to deter Defendants and others from similar behavior in the future.

## COUNT III:
## Defamation per se

129. Plaintiff incorporates by reference all of the foregoing paragraphs.

130. At all times relevant, Plaintiff was a law student at Northwestern University Pritzker School of Law and engaged in a clearly protected activity under the first amendment of the United States Constitution.

131. At all times relevant, on or about November 16, 2023, Plaintiff engaged in a constitutionally protected protest inside the Northwestern Law School.

132. Prior to and during the protest, Anita Kinney, who was not on campus at the time of the protest, acted in concert with Melody Mostow to harass and target the students protesting, specifically Plaintiff Elagha.

133. Kinney and Mostow, acting in concert, sought to cause issues with Plaintiff in order to cost her the employment opportunity she received at prestigious firm DLA Piper.

134. After the protest, Kinney encouraged Mostow to falsify and manufacture a criminal accusation against Plaintiff.

FILED DATE: 11/15/2024 3:31 PM 2024L012887

135.    Mostow made false statements and accusations against Plaintiff to third parties.

136.    Mostow on or about November 16, 2023, filed with NUPD a claim of assault, battery, and harassment against Plaintiff Elagha.

137.    Upon information and belief, Defendant NUPD investigated and found no criminal conduct and closed the case against Elagha without informing Elagha.

138.    However, NUPD deliberately maintained the claim against Elagha on their public database despite knowing the claims were false.

139.    Mostow's claims and charges against Elagha contained false and defamatory statements about Plaintiff Elagha and false criminal accusations.

140.    Plaintiff has never harassed, assaulted, and/or battered Mostow.

141.    Mostow further made public comments to various others including but not limited to the Daily Signal and Tony Kinnett, alleging that Elagha pushed her in the back despite knowing that this was not true.

142.    Star Media, the Daily Signal and its reporter Tony Kinnett, the Connecticut Star, and the Tennessee Star, published an article specifically targeting Elagha and alleged and insinuated that the crime log kept by campus police reported the incident as harassment rather than assault or battery, although the document and case number attached in their article did not reference or name Plaintiff Elagha.

143.    Not only did Tony Kinnett publish an article, but he also made posts on his account on social media platform "X" regarding the same.

FILED DATE: 11/15/2024 3:31 PM    2024L012887



144.    Defendants, Star Media, the Daily Signal, Connecticut Star, and Tennessee Star and its reporter Tony Kinnett proceeded to define assault and battery under Illinois law.

145.    Defendants, Star Media, the Daily Signal, Connecticut Star, Tennessee Star, and Kinnett did not verify the allegations and statements they published and made against Elagha.

146.    Upon information and belief, Defendants Star Media, Daily Signal, Connecticut Star, Tennessee Star, and Kinnett never even contacted Northwestern University to confirm the veracity of the claims against Elagha that Star Media, Daily Signal, Connecticut Star, Tennessee Star, and Kinnett published.

147.    Instead, Star Media, Daily Signal, Connecticut Star, Tennessee Star, and Kinnett, published false and defamatory statements against Elagha.

FILED DATE: 11/15/2024 3:31 PM   2024L012887

148.     When Elagha contacted the Defendants with evidence that the statements were false and defamatory, Defendants ignored the evidence and, to date, maintain the article on their website.

149.     There has never been any criminal charge or adverse disciplinary finding against Plaintiff Elagha.

150.     There has never been a push, assault, battery, or harassment by Plaintiff against Mostow.

151.     In fact, NU Office of Civil Rights "reviewed video footage of the demonstration and did not observe any physical contact between Ms. Elagha and Student A [Mostow]. Based on the above, NU-OCR found no violation of University policy."

152.     The statements made by Defendants and published by Defendants are false.

153.     The statements made and accusations made by Defendants contained and used words that imputed Plaintiff had committed a crime

154.     The statements made by and published by Defendants are of and concerning Plaintiff.

155.     The statements made by and published by Defendants were published without a recognized privilege.

156.     The statements made by and published by Defendants were published with knowledge that the statements were false and the Defendants failed to remove the defamatory statements until today, despite knowing their falsity.

157.     The statements made by and published by Defendants were published with reckless disregard for the truth.

158.     The statements were made with actual malice or, at minimum, with reckless disregard for the truth

159.     Defendants' statements were unprivileged and were communicated to third parties with the intent to harm Plaintiff's reputation.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

160. The statements made by and published by Defendants were published with common law malice, or ill will towards the Plaintiff.

161. The statements made by and published by Defendants were published with common law malice, or ill will towards the Plaintiff and Defendants Mostow and Kinney acted in concert to defame and target Plaintiff.

162. Defendants NU, Dean Osofsky, Dean Spies Roth, Dean Langford, and NUPD failed to refute and remove any false statements made against their student Elagha despite knowing that defamatory allegations had been circulating in the public against Elagha.

163. In violation of NU policy, defendants NU, Dean Osofsky, Dean Spies Roth, Dean Langford, and NUPD failed to discipline Defendants Kinney and Mostow's defamatory conduct and otherwise failed to engage any action in protection of Elagha, furthering the reach of Defendants Kinney and Mostow's defamatory conduct.

164. Defendants the Star Media Daily Signal, Tennessee Star, and Connecticut Star, and Kinnett knew the statements and allegations were false, deliberately insinuated that the allegation of harassment was against Elagha, disseminated these false, inaccurate, and defamatory statements against Plaintiff, and until today have refused to remove the article or correct the information in the article despite knowing that the statements written against Elagha are false.

165. The statements made by Defendants against Plaintiff constitute defamation per se.

166. The statements published by Mostow, Star Media, the Daily Signal, the Connecticut Star, the Tennessee Star, and Tony Kinnett are damaging to Plaintiff in that the statements accused Plaintiff of illegal criminal behavior, accused her of harassment, and targeted her.

167.     The statements published by Mostow, Star Media, the Daily Signal, and Tony Kinnett are damaging to Plaintiff in that the statements painted Plaintiff as a hostile individual and someone who engages in criminal behavior.

168.     The statements published by Mostow, Star Media, the Daily Signal, and Tony Kinnett are damaging to Plaintiff in that the statements humiliated Plaintiff, cost Plaintiff her lucrative job at DLA Piper, and nearly prevented Plaintiff from obtaining a law license in the State of Illinois.

169.     The targeting and manufactured false statements by Kinney and Mostow and false accusations cost Plaintiff her career at DLA Piper and damaged her reputation in the legal community.

170.     Plaintiff has likewise suffered severe loss of opportunity provided by DLA Piper, including the opportunity to practice law internationally, networking events, meetings with major companies, and other opportunities Plaintiff will no longer have.

171.     The targeting and manufactured false statements by Kinney and Mostow and false accusations cost Plaintiff her career at DLA Piper and caused severe financial loss to Plaintiff.

172.     As a direct and proximate result of the Defendants' actions, Plaintiff was wrongfully targeted, harassed, humiliated, defamed, lost her career, and suffered damage to her reputation, career, emotional well-being, and the grievous injuries and damages set forth above.

WHEREFORE, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' false statements and accusations disseminated verbally and in writing, and for Defendants' publication of false statements, and to deter Defendants and others from similar behavior in the future.

26

FILED DATE: 11/15/2024 3:31 PM    2024L012887

## COUNT IV:
## Defamation

*Against all Defendants*

173.    Plaintiff incorporates by reference all of the foregoing paragraphs.

174.    At all times relevant, Plaintiff was a law student at Northwestern University Pritzker School of Law and engaged in a clearly protected activity under the first amendment of the United States Constitution.

175.    At all times relevant, on or about November 16, 2023, Plaintiff engaged in a constitutionally protected protest inside the Northwestern Law School that was compliant with Northwestern's student code of conduct and demonstration policies.

176.    Prior to and during the protest, Anita Kinney, who was not on campus at the time of the protest, acted in concert with Melody Mostow to harass and target the students protesting, specifically Plaintiff Elagha.

177.    Anita actively was engaged in a campaign to facilitate job losses for students engaging in a federally protected right, including Elagha.



**Anita 2**
Firms do not want to hire people who don't follow directions
And some of the ppl involved with this have full tuition scholarships so don't feel bad about photographing them

"Firms do not want to hire people who don't follow directions. And some of the ppl [sic] involved with this have full tuition scholarships so don't feel bad about photographing them" – Anita Kinney



**Anita 2**
The school is also not going to revoke anyone's scholarship; my point was losing big law jobs won't be life ruining for most of these people

"The school is also not going to revoke anyone's scholarship; my point was losing big law jobs won't be life ruining for most of these people" – Anita Kinney

FILED DATE: 11/15/2024 3:31 PM 2024L012887

178.   Kinney and Mostow, acting in concert, sought to cause issues with Plaintiff in order to cost her the employment opportunity she received at the prestigious firm DLA Piper.

179.   After the protest, Kinney encouraged Mostow to falsify and manufacture a criminal accusation against Plaintiff.

180.   Mostow made false statements and accusations against Plaintiff to third parties.

181.   Mostow on or about November 16, 2023 filed with NUPD a claim of assault, battery, and harassment against Plaintiff Elagha.

182.   Upon information and belief, Defendant NUPD investigated and found no criminal conduct and closed the case against Elagha.

183.   However, NUPD deliberately maintained the claim against Elagha on their public database despite knowing the claims were false.

184.   Mostows claims and charges against Elagha contained false and defamatory statements about Plaintiff Elagha and false criminal accusations.

185.   Plaintiff has never harassed, assaulted, and/or battered Mostow.

186.   Mostow further made public comments to various others including but not limited to the Daily Signal and Tony Kinnett, alleging that Elagha pushed her in the back despite knowing that this was not true.

187.   Star Media, the Daily Signal and its reporter Tony Kinnett, the Connecticut Star, and the Tennessee Star published an article specifically targeting Elagha and alleged and insinuated that the crime log kept by campus police reported the incident as harassment rather than assault

FILED DATE: 11/15/2024 3:31 PM    2024L012887

or battery with a case number without having any mention on the document attached in their article referencing Plaintiff Elagha.[1]

188.    Defendants Star Media, the Daily Signal and its reporter Tony Kinnett, the Connecticut Star, and the Tennessee Star proceeded to define assault and battery under Illinois law.

189.    Defendants, Star Media, the Daily Signal and Kinnett, the Connecticut Star, and Tennessee Star did not verify the allegations and statements they published and made against Elagha.

190.    In fact, Defendants, Star Media, the Daily Signal and Kinnett, the Connecticut Star, and Tennessee Star never even contacted Northwestern University to confirm the veracity of the claims against Elagha that Star Media, the Daily Signal, Connecticut Star, Tennessee Star, and Tony Kinnett published.

191.    Instead, Star Media, the Daily Signal and its reporter Kinnett, the Connecticut Star, and the Tennessee Star published false and defamatory statements against Elagha.

192.    When Defendants were contacted with evidence that the statements were false and defamatory, Defendants ignored the evidence and have maintained the article on their website and the front page of google until today.

193.    There has never been any criminal charges or adverse disciplinary finding against Plaintiff Elagha.

194.    There has never been a push, assault, battery, or harassment by Plaintiff against Mostow.

---

[1] Daily Signal, Northwestern U. May Have Broken Federal Law by Failing to Report Crimes During Anti-Israel Protests, *The Daily Signal* (May 21, 2024), https://www.dailysignal.com/2024/05/21/northwestern-u-may-have-broken-federal-law-by-failing-to-report-crimes-during-anti-israel-protests/; Tennessee Star, Northwestern University May Have Broken Federal Law by Failing to Report Crimes During Anti-Israel Protests, *Tennessee Star* (May 22, 2024), https://tennesseestar.com/news/northwestern-university-may-have-broken-federal-law-by-failing-to-report-crimes-during-anti-israel-protests/admin/2024/05/22/; The Connecticut Star, Yasmeen Elagha, *The Connecticut Star*, https://theconnecticutstar.com/tag/yasmeen-elagha/.

FILED DATE: 11/15/2024 3:31 PM 2024L012887

195.    In fact, NU Office of Civil Rights "reviewed video footage of the demonstration and did not observe any physical contact between Ms. Elagha and Student A. Based on the above, NU-OCR found no violation of University policy."

196.    The statements made by Defendants and published by Defendants are false.

197.    The statements made and accusations made by Defendants contained and used words that imputed Plaintiff had committed a crime

198.    The statements made by and published by Defendants are of and concerning Plaintiff.

199.    The statements made by and published by Defendants were published without a recognized privilege.

200.    The statements made by and published by Defendants were published with knowledge that the statements were false.

201.    The statements made by and published by Defendants were published with knowledge that the statements were false and failed to remove the defamatory statements until today despite knowing their falsity.

202.    The statements made by and published by Defendants were published with reckless disregard for the truth.

203.    These statements were made with actual malice or, at minimum, with reckless disregard for the truth

204.    Defendants' statements were unprivileged and were communicated to third parties with the intent to harm Plaintiff's reputation.

205.    The statements made by and published by Defendants were published with common law malice, or ill will towards the Plaintiff.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

206.    The statements made by and published by Defendants were published with common law malice, or ill will towards the Plaintiff and Defendants Mostow and Kinney acted in concert to defame and target Plaintiff.

207.    Defendants NU and NUPD failed to refute and remove any false statements made against their student Elagha despite knowing that defamatory allegations had been circulating in the public against Elagha.

208.    Defendants Star Media, the Daily Signal and Kinnett, the Connecticut Star, and the Tennessee Star knew the statements and allegations were false, deliberately insinuated that the allegation of harassment was against Elagha, disseminated these false, inaccurate, and defamatory statements against Plaintiff, and until today have refused to remove the article or correct the information in the article despite knowing that the statements written against Elagha are false.

209.    The statements made by Defendants against Plaintiff constitute defamation per se.

210.    The statements published by Mostow, Star Media, the Daily Signal, Tony Kinnett, the Connecticut Star, and the Tennessee Star, are damaging to Plaintiff in that the statements accused Plaintiff of illegal criminal behavior, accused her of harassment, and targeted her.

211.    The statements published by Mostow, Star Media, the Daily Signal, Tony Kinnett, the Connecticut Star, and the Tennessee Star are damaging to Plaintiff in that the statements painted Plaintiff as a hostile individual and someone who engages in criminal behavior.

212.    The statements published by Mostow, Star Media, the Daily Signal, Tony Kinnett, the Connecticut Star, and the Tennessee Star are damaging to Plaintiff in that the statements humiliated Plaintiff, cost Plaintiff her career at DLA Piper, and nearly prevented Plaintiff from obtaining a law license in the State of Illinois.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

213.   The targeting and manufactured false statements by Kinney and Mostow and false accusations cost Plaintiff her career at DLA Piper and damaged her reputation in the legal community.

214.   The targeting and manufactured false statements by Kinney and Mostow and false accusations cost Plaintiff her career at DLA Piper and caused severe financial loss to Plaintiff.

215.   Plaintiff was offered a salary by DLA Piper of $225,000.00 along with $10,000.00 2024 summer stipend.

216.   Plaintiff, after the defamatory statements and after losing her job at DLA Piper as a result of these defamatory statements, now has a salary of about $100,000.00.

217.   Plaintiff has lost in base salary at a minimum $125,000.00 per year as a result of the actions of Defendants.

218.   Plaintiff has likewise suffered severe loss of opportunity provided by DLA Piper including the ability to practice law internationally, networking events, meetings with major companies, and other opportunities Plaintiff will no longer have.

219.   As a direct and proximate result of the Defendants' actions, Plaintiff was wrongfully targeted, harassed, humiliated, defamed, lost her career, and suffered damage to her reputation, career, emotional well-being, and the grievous injuries and damages set forth above.

WHEREFORE, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' false statements and accusations disseminated verbally and in writing, and for Defendants' publication of false statements, and to deter Defendants and others from similar behavior in the future.

FILED DATE: 11/15/2024 3:31 PM   2024L012887

**COUNT V:**
**False Light**

*Against all Defendants*

220.    Plaintiff incorporates by reference all of the foregoing paragraphs.

221.    The false statements and accusations about Plaintiff by Defendants place Plaintiff in a false light before the public, as a criminal, unhinged individual, rather than as a law student and future lawyer exercising her constitutional right to peaceful protest.

222.    Defendants publicized statements that placed Plaintiff in a false light that would be highly offensive to a reasonable person.

223.    Defendants acted with actual malice or reckless disregard for the falsity of the information they spread, which cast Plaintiff in a false and damaging light.

224.    Plaintiff has suffered reputational, emotional harm, and loss of her career due to being cast in this false light.

225.    The acts and omissions by the Defendants described in the preceding paragraphs were the direct and proximate cause of Elagha's injuries and damages because the Defendants knew or should have known that their conduct, false statements, false allegations, and failure to refute and/or correct those statements immediately would result in the damages Plaintiff sustained and continues to sustain.

WHEREFORE, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' false statements and accusations disseminated verbally and in writing, and for Defendants' publication of false statements, and to deter Defendants and others from similar behavior in the future.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

## COUNT VI:
## Commercial Disparagement

226.    Plaintiff incorporates by reference all of the foregoing paragraphs.

227.    The false statements and accusations about Plaintiff by Defendants are about Plaintiff's character, reputation, and paint her as a criminal, unhinged individual, rather than as a law student and future lawyer exercising her constitutional right to peaceful protest.

228.    The statements made by Defendants were intended to deter members of the public and legal community from hiring Plaintiff as an attorney, and to undercut and cost Plaintiff her legal career at DLA Piper and remove any future prospect of working in "Big Law."

229.    The acts and omissions by the Defendants described in the preceding paragraphs were the direct and proximate cause of Elagha's injuries and damages because the Defendants knew or should have known that their conduct, false statements, false allegations, and failure to refute and/or correct those statements immediately would result in the damages Plaintiff sustained and continues to sustain.

230.    Defendants have caused Plaintiff to lose her job and career at DLA Piper.

WHEREFORE, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' false statements and accusations disseminated verbally and in writing, and for Defendants' publication of false statements, and to deter Defendants and others from similar behavior in the future.

## COUNT VII:
## Negligence

231.    Plaintiff incorporates by reference all of the foregoing paragraphs.

FILED DATE: 11/15/2024 3:31 PM 2024L012887

232. Defendants at all times relevant had a duty to act with reasonable prudence as an ordinary individual would.

233. Defendants at all times relevant had a duty to refrain from making false claims against an individual to a third party.

234. Defendant Northwestern had a duty to protect its students from harassment, targeting, and defamation from other students and third parties.

235. Defendant Northwestern had a duty to enforce its policies equally without regard to race, sex, religion or group.

236. Defendant Northwestern had a duty to protect Plaintiff from false accusations and statements that were going to be published.

237. Defendant Northwestern had a duty to release a statement denying the allegations against Plaintiff prior to the publishing of the statements by Star Media, Daily Signal, Connecticut Star, Tennessee Star, and Tony Kinnett based on their knowledge of the falsity of the allegations.

238. Defendant Northwestern had a duty to enforce its policies against students preventing harassment of other students for performing a federally protected right.

239. Defendants Star Media, the Daily Signal, the Connecticut Star, the Tennessee Star, and Tony Kinnett had a duty to investigate and evaluate the veracity of the allegations against Plaintiff prior to publishing the statements.

240. Defendants Star Media, the Daily Signal, the Connecticut Star, the Tennessee Star, and Tony Kinnett had a duty to refrain from publishing statements that they could not reasonably confirm their truth without proper investigation.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

241.    Defendants Star Media, the Daily Signal, the Connecticut Star, the Tennessee Star, and Tony Kinnett had a duty to contact the Northwestern University as informed by Plaintiff in order to receive an accurate response prior to publishing their article.

242.    Defendants Osofsky, Roth, and Langford had a duty to ensure that their student, Elagha, was protected from defamatory statements that they knew were false and untrue.

243.    Defendants Osofsky, Roth, and Langford had a duty to ensure that their school policies were enforced equally to all students and had a duty to prevent students of a certain race or religion from being targeted.

244.    Defendants Osofsky, Roth, and Langford had a duty to timely disclose the findings denying the allegations against Plaintiff prior to the false statements being published.

245.    Defendant Mostow had a duty to refrain from making statements and accusations she knew were untrue and inaccurate.

246.    Defendant Mostow had a duty to refrain from harassing another student of a different background.

247.    Defendant Kinney had a duty to avoid targeting and harassing other individuals.

248.    Defendants breached their duty by publishing statements they knew or should have known to be false.

249.    Defendants breached their duty by failing to conduct proper research and investigations into the claims prior to publishing the false statements.

250.    Defendants Northwestern, Osofsky, Roth, and Langford breached their duty by:

    a.    Failing to deny and refute Star Media, the Daily Signal, Connecticut Star, Tennessee Star, and Tony Kinnett's accusations against Plaintiff despite knowing that the allegations were false;

FILED DATE: 11/15/2024 3:31 PM 2024L012887

b. Failing to respond to Plaintiff's concerns about the false statements and fear of job loss if the article gets published;

c. Failing to timely disclose the inaccuracy of the false allegations and statements against Plaintiff;

d. Failing to timely refute the allegations against Plaintiff resulting in job loss despite being made aware numerous times by Plaintiff of the possibility for her job loss;

e. Failing to take any step to enforce its policies against Mostow for false reporting of a crime, making false statements and accusations, and for harassing another student;

f. Failing to properly enforce its policies equally amongst different ethnic and religious groups.

251. Defendants Star Media, the Daily Signal, Connecticut Star, Tennessee Star, and Tony Kinnett breached their duty by failing to conduct due diligence in investigation their accusations against Plaintiff.

252. Defendants Star Media, Daily Signal, Connecticut Star, Tennessee Star, and Tony Kinnett breached their duty by failing to contact Northwestern University to confirm or deny the allegations against Plaintiff prior to publishing the articles.

253. Defendants Star Media, Daily Signal, Connecticut Star, Tennessee Star, and Tony Kinnett breached their duty to remove the articles despite being made aware that the statements were false and inaccurate.

254. Defendants Mostow and Kinney breached their duty by harassing and targeting Plaintiff.

255. Defendant Mostow breached her duty by making false statements and accusations against Plaintiff and publishing them to third parties.

FILED DATE: 11/15/2024 3:31 PM    2024L012887

256.    Defendant Kinney breached her duty by intentionally targeting Plaintiff and other students in an effort to cause loss of scholarship and/or termination of employment.

257.    The statements published by Mostow, the Daily Signal, and Tony Kinnett are damaging to Plaintiff in that the statements humiliated Plaintiff, cost Plaintiff her career at DLA Piper, and nearly prevented Plaintiff from obtaining a law license in the State of Illinois.

258.    The targeting and manufactured false statements by Kinney and Mostow and false accusations cost Plaintiff her career at DLA Piper and damaged her reputation in the legal community.

259.    Plaintiff has likewise suffered severe loss of opportunity provided by DLA Piper including the ability to practice law internationally, networking events, meetings with major companies, and other opportunities Plaintiff will no longer have.

260.    The targeting and manufactured false statements by Kinney and Mostow and false accusations cost Plaintiff her career at DLA Piper and caused severe financial loss to Plaintiff.

261.    As a direct and proximate result of the Defendants actions, Plaintiff was wrongfully targeted, harassed, humiliated, defamed, lost her career, and suffered damage to her reputation, career, emotional well-being, and the grievous injuries and damages set forth above.

WHEREFORE, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' false statements and accusations disseminated verbally and in writing, and for Defendants' publication of false statements, and to deter Defendants and others from similar behavior in the future.

## COUNT VIII:
## Breach of Contract

262.    Plaintiff incorporates by reference all of the foregoing paragraphs.

FILED DATE: 11/15/2024 3:31 PM   2024L012887

263. At all relevant times, an express contractual relationship existed between Northwestern, on the one hand, and Elagha, by virtue of her enrollment at Northwestern and as defined by and through Northwestern's written codes, policies, and procedures, including, but not limited to, the: Non-Discrimination Policy, Statement on Rights and Responsibilities, Free Speech Guidelines, Student Organization Policies, non-harassment guidelines, and Northwestern's various student handbooks, which often adopt and expand on University- wide policies. Through the documents and materials, it publishes and provides to students, Northwestern makes contractual commitments to its students concerning safety, bias-related abuse, harassment, intimidation, and discrimination.

264. Under those contracts, Elagha agreed, among other things, to attend Northwestern Law School, and Northwestern agreed, among other things, to provide her a discrimination-free, harassment-free, and targeting-free environment to be achieved by Northwestern abiding by and adequately and appropriately enforcing Northwestern's policies.

265. Elagha complied and continues to comply with her obligations under these contracts.

266. Northwestern breached and continues to breach its contracts with Elagha by, among other things, its continued failure to comply with its obligations under these contracts, including by, among other things, failing to take measures to ameliorate, prevent, and punish the discriminatory and harassing conduct that Elagha has endured and continue to endure, failing to enforce numerous provisions of Northwestern's policies, failing to meet Elagha's reasonable expectations of the educational benefits and harassment-free environment to which she was entitled.

267. As a result of Northwestern's breaches, Elagha has been damaged and continues to sustain substantial damages, in amounts to be determined at trial.

**COUNT IX:**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

268.    Plaintiff incorporates by reference all of the foregoing paragraphs.

269.    Northwestern has breached the implied covenant of good faith and fair dealing implied in its contracts with students, including Elagha. Among other things, Northwestern selectively applies or enforces its student handbooks, guidelines, policies, procedures, course catalogs, registration materials, bulletins, circulars, and regulations in bad faith and in a discriminatory way—improperly motivated by shared ancestry, race, ethnic characteristics, or national origin bias – treating incidents of abuse, harassment, intimidation, or discrimination against Middle Eastern and Muslim students, including Elagha, in a more lenient, tolerant, forgiving, and nonchalant manner than it treats similar incidents against other minority groups.

270.    As a result of Northwestern's breaches, Elagha has been damaged and continues to sustain substantial damages, in amounts to be determined at trial.

**PRAYER FOR RELIEF:**

**WHEREFORE**, Plaintiff YASMEEN ELAGHA prays as follows:

A.    That the Court award compensatory, consequential, and punitive damages to Plaintiff and against all Defendants, jointly and severally, in an amount to be determined at trial;

B.    Reasonable attorneys' fees, costs of suit, and expenses;

C.    Pre-judgment interest and post-judgment interest at the maximum rate allowable by the law; and

D.    For all other relief and damages to which Plaintiff may be entitled.


Dated: November 15, 2024

40

FILED DATE: 11/15/2024 3:31 PM   2024L012887

By: */s/ Waleed Naser*
WALEED NASER
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Office: 312-248-2501
Direct: 872-265-8490
waleed@naserlegal.com

FARAH CHALISA
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
224-392-7822
attorneychalisa@gmail.com

AHMAD ZAHER *
**ADVANTA LAW FIRM, PLC**
24300 Southfield Road, Suite 210,
Southfield, MI 48075
Tel:  1.248.281.6299
Fax:  1.248.864.8554
azaher@advantalaw.com

SHIRAZ K. KHAN *
**THE SHIRAZ LAW FIRM, PLLC**.
30400 Telegraph Rd. Suite 380
Bingham Farms, MI. 48025
Tel: (248) 419-0678
Fax: (248) 817-4833
info@shirazlawfirm.com

*Attorneys applications to
practice pro hac vice
forthcoming*

**ATTORNEYS FOR
YASMEEN ELAGHA**

41