**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

YASMEEN ELAGHA

          Plaintiff,

          v.

NORTHWESTERN UNIVERSITY PRITZKER
SCHOOL OF LAW,[1] et al.

          Defendants.

CASE NO.: 1:24-CV-12066

**NORTHWESTERN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

In November 2023, Defendant Melody Mostow filed a report against Plaintiff Yasmeen Elagha with the Northwestern University Police Department ("NUPD"), alleging that Plaintiff assaulted and harassed Ms. Mostow at a protest at Northwestern University's Law School. Compl., ¶ 45. The Complaint alleges that Ms. Mostow's allegations were false, and that the report caused Plaintiff to lose her job offer with DLA Piper (which is not a party to this action). *Id.* at ¶ 85.

Plaintiff accuses Northwestern University and certain employees of failing to protect Plaintiff from the publication and dissemination of Ms. Mostow's report. *Id.* at ¶ 69. Although Plaintiff alleges generally that NUPD published information damaging to her (*id.* at ¶ 138), Plaintiff fails to plead what statements NUPD published or in what ways they were false.

Plaintiff asserts nine causes of action against Northwestern University Pritzker School of Law, Northwestern University Police Department, Hari Osofsky, Susan Michelle Spies Roth, and

---

[1] An agreed motion to substitute Northwestern University for Northwestern University Pritzker School of Law and Northwestern University Police Department because the University is the real party in interest is forthcoming.

George Langford (collectively, the "Northwestern Defendants").[2] Because Plaintiff has failed to allege facts which, if true, would support any claim for relief, her claims against the Northwestern Defendants should be dismissed in their entirety.

The Court should dismiss Plaintiff's Title VI claim because she fails to allege any facts that would support a conclusion that the University discriminated against her on the basis of race. She likewise fails to plead facts that meet the basic pleading standard for a hostile environment, since the conduct she alleges the University engaged in was not on the basis of race or severe or pervasive. Plaintiff alleges that she (a) had her scholarship status exposed in a tweet by another law student, which was later removed; and (b) was subject to a false allegation of harassment made against Plaintiff by another student. Although Plaintiff alleges she made complaints to the University regarding other "harassment and targeting" she faced by other students, she fails to provide any facts related to the alleged harassment or targeting from which the Court could determine whether her conclusory allegations are supported. Plaintiff's Title VII claim separately fails because she fails to allege an employment relationship with any Northwestern Defendant, a prerequisite to a Title VII claim. Moreover, Plaintiff's failure to comply with Title VII's administrative exhaustion requirement serves as an independent basis for dismissal of her claim.

Plaintiff's defamation and false light claims should be dismissed because Plaintiff fails to plead the false statements allegedly made by the Northwestern Defendants with specificity as she is required to do under the law. Beyond that, inasmuch as Plaintiff challenges NUPD's publication of reported incidents in its daily crime log, the Northwestern Defendants' statements are privileged because they were compelled by federal law. The crime log was likewise shared for a common

---

[2] Plaintiff's Complaint also alleges various claims against co-defendants The Daily Signal Media Group, Inc. d/b/a The Daily Signal, The Star News Network a/k/a Star News Digital Media, Inc., The Connecticut Star, The Tennessee Star, Melody Mostow, Anita Kinney, Anthony Kinnett, John Doe 1-10, and Jane Doe 1-10.

purpose, further privileging it from a defamation claim. Plaintiff's claim for commercial disparagement also fails because Plaintiff fails to allege that the Northwestern Defendants disparaged the quality of any goods or services provided by Plaintiff.

The Court should dismiss Plaintiff's negligence claim because—as a matter of law—the University and its employees do not owe Plaintiff a duty that could give rise to a negligence claim.

Finally, the Court should dismiss Plaintiff's breach of contract claim because Plaintiff fails to identify any specific contractual promises the Northwestern Defendants allegedly breached. To the extent Plaintiff's breach of contract claim is premised upon Northwestern's Student Handbook, Plaintiff's claim fails because Northwestern expressly disclaimed any express or implied contractual relationship based on the terms of the Handbook. The Court should dismiss Plaintiff's claim for breach of the implied duty of good faith and fair dealing because there is no independent cause of action for such a claim under Illinois law.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation and internal quotations omitted). On review of a motion under Rule 12(b)(6), the district court accepts the facts in the complaint as true, views them in the light most favorable to the plaintiff, and draws reasonable inferences in plaintiff's favor, but need not accept unsupported conclusions of law. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

## ARGUMENT

### I.   The Complaint Fails To State A Title VI Claim.

A plaintiff can plead a Title VI violation in two different ways: (1) direct discrimination, or (2) deliberate indifference. *Doe v. Galster*, 768 F.3d 611, 613–14 (7th Cir. 2014); *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015). Count I of the Complaint appears to

allege a claim for direct discrimination (Compl., ¶¶ 96–111), while Count II appears to allege a claim for deliberate indifference (*id*. at ¶¶ 112–28). Plaintiff's claim fails under both theories.

### A.     The Complaint Does Not Plead The Elements To Show Direct Discrimination.

To state a claim for direct discrimination under Title VI, a plaintiff must adequately allege: (1) she has been intentionally discriminated against on the grounds of race, color, or national origin; and (2) the defendants are recipients of federal financial assistance. *Khan*, 147 F. Supp. 3d at 720. A plaintiff can show intentional discrimination directly or indirectly. *Totten v. Benedictine Univ.*, No. 20 C 6107, 2021 WL 3290926, at *9 (N.D. Ill. Aug. 2, 2021).

Under the "direct method," a plaintiff may establish intentional discrimination through evidence relating "to the motivation of the decisionmaker responsible for the contested decision." *Id.* (quoting *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999)) (quotation marks omitted). "Direct evidence typically requires an admission of discriminatory animus." *Lubavitch-Chabad of Ill., Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013) (quoting *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009)) (quotation marks omitted). However, "a plaintiff may also produce circumstantial evidence that establishes . . . discriminatory motive through a longer chain of inferences." *Id.* To show intentional discrimination under the "indirect method", a plaintiff must show that she "(1) is a member of a protected class; (2) met the school's legitimate expectations; (3) suffered an adverse action; and (4) was treated less favorably than similarly situated individuals outside of the protected class." *Totten*, No. 20 C 6107, 2021 WL 3290926, at *10. To be similarly situated, the comparator must be directly comparable to the plaintiff in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

Here, Plaintiff alleges that: (1) since November 2022, she "made complaints to Northwestern regarding the harassment and targeting she faced by other students in writing and did not receive any protections"; and (2) Northwestern failed to correct the false allegations of

assault, battery, and harassment made against Plaintiff in November 2023 or discipline the individual responsible for the false allegations. Compl., ¶¶ 53, 61. Plaintiff's claim fails because she fails to allege that she was treated differently than any other class of individuals with respect to the above allegations. Plaintiff does not allege any comparators, let alone comparators that are sufficiently similar to Plaintiff. The Complaint is entirely devoid of any specific facts supporting an inference that Plaintiff's ancestry, race, ethnic characteristics, or national origin were a motivating factor in any actions taken or omissions by the University. Plaintiff's allegations, individually or together, are simply insufficient to support an inference of discrimination, either directly or indirectly. For these reasons, Plaintiff's Title VI claim should be dismissed.

**B.      The Complaint Fails To Support An Inference Of Deliberate Indifference.**

To state a claim for deliberate indifference, "[s]chool officials must have had 'actual knowledge' of harassment 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Galster*, 768 F.3d at 613–14 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). To have actual knowledge of an incident, school officials must have witnessed it or received a report of it. *Gabrielle M. v. Park Forest–Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 823–24 (7th Cir. 2003). "To impose liability, school officials' response to known harassment also must have been 'clearly unreasonable in light of the known circumstances.'" *Galster*, 768 F.3d at 614 (quoting *Davis*, 526 U.S. at 648); *Sojda on behalf of Sojda v. Chi. Bd. of Educ.*, No. 23 CV 4231, 2024 WL 1579065, at *2 (N.D. Ill. Apr. 11, 2024).

In determining what constitutes severe and pervasive harassment, courts in the Seventh Circuit consider the "totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with . . . the student's educational opportunities." *Hendrichsen v. Ball State*

5

*Univ.*, 107 Fed. Appx. 680, 684–85 (7th Cir. 2004) (holding that professor's actions towards student were not severe or pervasive enough because the inappropriate behavior lasted a few weeks, it did not physically threaten the student, and the student admitted her academic performance was not affected by the professor's actions). "As a general rule, unless the conduct is quite severe, a single incident or isolated incidents" cannot create a hostile environment. *Adusumilli v. Ill. Inst. of Tech.*, No. 97 C 8507, 1998 WL 601822, at **1, 4 (N.D. Ill. Sept. 9, 1998) (holding that student's allegation of sexual harassment against classmate was not severe or pervasive because student alleged a single instance of physical harassment).

Plaintiff fails to plead facts supporting an inference of deliberate indifference. First, it is not clear from her allegations what conduct Plaintiff contends created a hostile environment. Plaintiff principally alleges that she (a) had her scholarship status exposed in a tweet by another law student, which was later removed; and (b) was subject to a false allegation of harassment made against Plaintiff by another student. Compl., ¶¶ 50, 60. She also contends that she made complaints to the University regarding "harassment and targeting" she faced by other students, but does not describe what the harassment was, where it took place, or how frequently it occurred. This makes evaluating her claims under the governing rubric impossible.

Cases in which an environment was deemed sufficiently severe and pervasive to support a hostile environment claim are markedly different from the allegations Plaintiff makes about her own experiences. *See, e.g.*, *I.G. by & through Grunspan v. Jefferson Cnty. Sch. Dist. through Bd. of Educ. For Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 995 (D. Colo. 2020) (finding severe and pervasive conduct where plaintiff alleged repeated defacement of plaintiff's father's car and school property with swastikas, derogatory jokes, and remarks about plaintiff's Jewish heritage, and that "[f]rom September through the remainder of 2016, students at the School 'were giving

Nazi salutes and verbally stating "Heil Hitler" as they walked through the halls during class breaks.'"); *T.E. et al. v. Pine Bush Cent. Sch. Dist. et al.*, 58 F. Supp. 3d 332, 339–50 (S.D.N.Y. 2014) (describing alleged antisemitic conduct occurring over the course of years, including physical and verbal threats, school property vandalized with swastikas, and constant harassment such as the use of derogatory terms about plaintiff's Jewish heritage); *accord Gul-E-Rana Mirza v. The Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 860 (N.D. Ill. 2009) (finding severe and pervasive conduct where plaintiff alleged co-worker used racial epithets against plaintiff and engaged in sale-stealing, and supervisor regularly singled out plaintiff and granted preferential treatment to non-Pakistani, non-Muslim co-workers).

Plaintiff's allegations of harassment do not come close to approaching this level. Plaintiff does not describe any harassment with specificity. She does not allege, for example, that she was repeatedly assaulted physically or verbally, that her grades suffered, or that she was extensively absent from school as a result of the alleged harassment. What's more, Plaintiff concedes in her Complaint that the University *did* respond to her concerns about the underlying incident by sending letters to DLA Piper and the Illinois Bar at her request (Compl., ¶¶ 22, 84, 87), undermining her claim that the University was deliberately indifferent to a known hostile environment (the existence of which of course she has not shown, either). In short, because Plaintiff alleges none of the elements of a Title VI claim, her claim should be dismissed.

## II. Plaintiff's Title VII Claim Fails As To All Northwestern Defendants Because Plaintiff Is Not An Employee Of Northwestern Or Any Northwestern Defendant.

Title VII prohibits discrimination against "employees" by an "employer" based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1);. *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023); *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701–02 (7th Cir. 2015). The Complaint contains no allegation that Plaintiff is

employed by any of the Northwestern Defendants. *C.f.* Compl., ¶ 30 ("[a]t the time of these events, Plaintiff was a student at Northwestern Law School."). Because Plaintiff had no employment relationship with any of the Northwestern Defendants, Count II must be dismissed. Moreover, even if Plaintiff had alleged she was employed by any of the Northwestern Defendants, her failure to comply with Title VII's administrative exhaustion requirement serves as an independent ground for the dismissal of these claims. *Leskovec v. Circuit Works Corp.*, 2008 WL 5236006, at *2 (N.D. Ill. Dec. 15, 2008) (holding that a plaintiff bringing claims under Title VII must first raise those claims with the Equal Employment Opportunity Commission and then obtain a right to sue letter).

### III.     Plaintiff Fails To State Claims For Defamation And False Light.

#### A.     Plaintiff Has Not Alleged The False Statements Made By The Northwestern Defendants With The Requisite Specificity.

"A complaint for defamation must set forth the words alleged to be defamatory clearly and with particularity." *Krueger v. Lewis*, 342 Ill. App. 3d 467, 470 (1st Dist. 2003). In fact, "a defamation *per se* claim must be pled with a heightened level of precision and particularity." *Green v. Rogers*, 234 Ill.2d 478, 495 (2009). In the alternative, "[a]n action for defamation *per quod* is established where words not defamatory on their face are rendered so by extrinsic facts or innuendo, which must be alleged." *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 733 (1st Dist. 1990). Similarly, "[t]o sustain a cause of action for false light invasion of privacy, a plaintiff must plead and prove that: (1) he or she was placed in a false light before the public as a result of the defendant's actions; (2) 'the false light in which the plaintiff [ ] was placed would be highly offensive to a reasonable person; and (3) the defendant [ ] acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.'" *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 696 (1st Dist. 2000) (quoting *Kirchner v. Greene*, 294 Ill. App. 3d 672, 682 (1st Dist. 1998)). Plaintiff does none of this. Instead,

8

she alleges only that "NUPD deliberately maintained the claim [of assault, battery, and harassment] against [Plaintiff] on their public database despite knowing the claims were false." Compl., ¶ 138. Such a conclusory allegation does not "set forth the words alleged to be defamatory clearly and with particularity," as required under Illinois law. *Krueger*, 342 Ill. App. 3d at 470. Because she fails to plead the specific false statements allegedly made by the Northwestern Defendants, Plaintiff's defamation and false light claims fail.

### B.    The Northwestern Defendants' Statements Are Subject To Privilege.

Plaintiff's defamation and false light claims also fail because any statements allegedly made by the Northwestern Defendants are subject to privilege. "[P]rivilege in Illinois defamation law is based on a policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Dent v. Constellation NewEnergy, Inc.*, 2022 IL 126795, ¶ 30. Illinois follows the RESTATEMENT (SECOND) OF TORTS with regard to what qualifies as a privileged statement. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill.2d 16, 27 (1993). RESTATEMENT (SECOND) OF TORTS § 592 states that "one who is required by law to publish defamatory matter is absolutely privileged to do it." Likewise, RESTATEMENT (SECOND) OF TORTS § 596 provides that a publication is "conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know." In sum, there is an absolute privilege for statements made where the law requires the statement and a qualified privilege where information is shared between parties who have a common interest. *See Razavi v. Sch. of the Art Inst. of Chi.*, 2018 IL App (1st) 171409, ¶¶ 20, 24 (holding that that defendant's report of alleged criminal activity to university campus security as well as comments made during the university's investigation were privileged

because report and investigation were required pursuant to federal law). Whether a privilege applies is a question of law for the court to resolve. *Id.* at ¶ 22.

Here, the Northwestern Defendants' alleged statements regarding the reported assault and harassment were subject to an absolute privilege because the University is required by the Clery Act to publicly publish certain categories of crimes, such as assault or intimidation, that have been reported as having occurred on or near campus. 20 U.S.C. § 1092. The Clery Act also requires Northwestern to issue campus alerts to the campus community on crimes considered to be a threat to students and employees. The primary objective of the Clery Act is to foster the accurate reporting and gathering of reported crime data on college campuses, while also raising awareness about crime and improving safety within these academic communities. Any statements allegedly made by the Northwestern Defendants regarding the alleged assault, battery, and harassment claims against Plaintiff on its daily crime log, the Daily Blotter, are subject to privilege because Northwestern was required by law to publish the report.

Moreover, while Plaintiff does not allege any particular statement was false and made in the crime log, even if she had, the Northwestern Defendants' statements in the daily crime log are also subject to a qualified privilege because they were shared pursuant to the common interest privilege. In particular, any statements allegedly made by the Northwestern Defendants regarding the report made against Plaintiff were shared in the daily crime log for the common purposes of transparency to the community regarding incidents reported to have occurred on or near campus and collecting information for purposes of investigating the alleged crimes. *Accord Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 871 (1st Dist. 1995) (holding grocery store chain's internal publication of plaintiff's evaluation was conditionally privileged because convenience store chains had an interest in the evaluation to determine plaintiff's capabilities as a franchisee).

IV.     **Plaintiff's Commercial Disparagement Claim Is Duplicative.**

As the First District Illinois Appellate Court has noted, "it is disputed as to whether a cause of action for commercial disparagement remains viable in Illinois." *Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 767 (1st Dist. 2002). But even if such a cause of action exists, Plaintiff fails to state one. To allege commercial disparagement, a plaintiff must demonstrate that the defendant made false and demeaning statements regarding the *quality of the plaintiff's goods and services*. *Crinkley v. Dow Jones & Co.*, 67 Ill. App. 3d 869, 876 (1st Dist. 1978). "[D]efamation and commercial disparagement are separate and distinct torts: a defamation action lies when the integrity or credit of a business has been impugned, but if the quality of the goods or services are demeaned, then an action for commercial disparagement may be proper." *Id.* Plaintiff's claim fails because she has not identified the actual defamatory statements by the Northwestern Defendants. Plaintiff alleges only that "[t]he false statements and accusations about Plaintiff by Defendants are about Plaintiff's character, reputation, and paint her as a criminal, unhinged individual." Compl., ¶ 227. Count VI is either improperly pled or duplicative and should be dismissed.

V.      **Plaintiff's Negligence Claim Fails Because The Northwestern Defendants Did Not Owe Plaintiff A Duty That Could Give Rise To A Negligence Claim.**

Duty is an essential element of a negligence claim under Illinois law. *Beaulieu v. Ashford Univ.*, 529 F.Supp.3d 834, 852–53 (N.D. Ill. 2021) (quoting *Prostran v. City of Chi.*, 349 Ill. App. 3d 81, 84 (1st Dist. 2004)). A university does not owe a duty to its students pursuant to the university's handbook, policies, or rules and regulations. *See Rabel v. Ill. Wesleyan Univ.*, 161 Ill. App. 3d 348, 361 (4th Dist. 1987) (rejecting negligence claim because "university, by its handbook, regulations, or policies [had not] voluntarily assumed or placed itself in a custodial relationship with its students, for purposes of imposing a duty to protect its students from [injuries]."); *Haben v. Anderson*, 232 Ill. App. 3d 260, 268 (3d Dist. 1992) ("[L]egal duty is not

normally established through rules and regulations of a university."); *Freeman v. Busch*, 349 F.3d 582, 587–88 (8th Cir. 2003) ("[S]ince the late 1970s, the general rule is that no special relationship exists between a college and its own students because a college is not an insurer of the safety of its students."). Count VII alleges a cause of action for negligence related to the University's handling of the assault, battery, and harassment accusations against Plaintiff. Compl., ¶¶ 234–38. However, because the University does not—as a matter of law—have a duty to Plaintiff in this context, the Court should dismiss Count VII.

**VI.     Plaintiff Fails To Allege A Breach Of Contract Claim.**

    **A.     Plaintiff Has Not Identified Any Specific And Enforceable Promises.**

To state a breach of contract claim a student must point to an identifiable contractual promise. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883–84 (7th Cir. 2022). For an implied contract, "the student's complaint must be specific about the source of the implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.* at 884 (quoting *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013)). As one court explained, "[t]hough a student handbook may contain material that forms part of the contract between a university and its students, only the handbook's 'specific promises' become part of the contract, not its 'expression[s] of intention, hope or desire.'" *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1064 (N.D. Ill. 2021) (quoting *Abrams v. Ill. Coll. of Podiatric Med.*, 77 Ill.App.3d 471, 476 (1st Dist. 1979)). Accordingly, "'definite' and 'concrete promise[s]' must be distinguished from 'unenforceable expression[s].'" *Id.* (quoting *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *7 (N.D. Ill. Feb. 4, 2019)); *see also Polley v. Nw. Univ.*, 560 F. Supp. 3d 1197, 1207 (N.D. Ill. 2021) (granting motion to dismiss where students pointed to aspirational "promises" such as "an environment with limitless possibilities to learn, make a difference, and define your path for future success.").

Here, Plaintiff claims she had an express contractual relationship with Northwestern by virtue of her enrollment and as defined in Northwestern's written policies and procedures. Compl., ¶ 263. Plaintiff contends Northwestern promised Plaintiff a "discrimination-free, harassment-free, and targeting-free environment." *Id.* at ¶ 264. But anti-discrimination provisions in a university's handbook or policies are not "definite or enforceable" and are "a general reference of adherence to existing law concerning discrimination." *Harris v. Adler Sch. of Prof'l Psych.*, 309 Ill. App. 3d 856, 861 (1st Dist. 1999) (dismissing student's breach of contract claim premised upon college's non-discrimination policy). Beyond those general allegations, Plaintiff does not identify the definite written University policies at issue, much less the specific provisions allegedly breached by the Northwestern Defendants. As a result, her claim for breach of contract fails.

**B.      Northwestern Has Explicitly Disclaimed Any Contractual Relationship.**

To the extent Plaintiff's breach of contract claim relies upon the University's Student Handbook, Plaintiff's claim fails for the additional reason that the University expressly disclaimed any contractual relationship in its Handbook. A student cannot assert a breach of contract claim based on a student policy that expressly disclaims any contractual relationship. *See Buschauer v. Columbia Coll. Chi.*, No. 20 C 3394, 2021 WL 1293829, at **2, 5 (N.D. Ill. Apr. 6, 2021) (finding no enforceable contract where course catalog included a disclaimer that it "is not a contract."); *see also Carr v. Bd. Of Regents of Univ. Sys. Of Ga.*, 249 Fed. Appx. 146, 150–51 (11th Cir. 2007) (undergraduate catalog did not constitute a contract because of express disclaimer); *Truell v. Regent Univ. Sch. Of L.,* No. CIVA 2:04CV716, 2006 WL 2076769, at **6–7 (E.D. Va. July 21, 2006) (dismissing breach of contract claim where the university's catalog stated "this catalog does not establish contractual relationships.").

Here, to the extent that Plaintiff's claim is premised upon Northwestern's Student Handbook, the claim fails because Northwestern disclaimed any contractual relationship in its

Student Handbook. The Student Handbook[3] states in bolded italics that "[t]he provisions of this Student Handbook do not constitute a contract, expressed or implied, between any students, prospective and/or matriculated, and Northwestern University." The Court should therefore dismiss any breach of contract claim based on the Student Handbook.

**VII.** **There Is No Independent Cause Of Action For Breach Of The Implied Duty Of Good Faith And Fair Dealing Under Illinois Law.**

The Illinois Supreme Court has made clear that there is no independent cause of action for breach of the implied duty of good faith and fair dealing, with one exception for certain insurance disputes, which is not relevant here. *Voyles v. Sandia Mortg. Corp.*, 196 Ill.2d 288, 295 (2004). This well-established principle has been upheld consistently by Illinois courts. *See The N. Trust Co. v. VIII S. Mich. Assocs.*, 276 Ill. App. 3d 355, 366–67 (1st Dist. 1995); *Household Fin. Servs., Inc. v. Coastal Mortg. Servs., Inc.*, 152 F. Supp. 2d 1015, 1024 (N.D. Ill. 2001) (holding that under Illinois law, a party "cannot bring an independent claim for breach of an implied duty of good faith and fair dealing"); *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir. 2000) (finding that the plaintiff could not bring a separate cause of action for breach of implied duty of good faith and fair dealing). Instead, "the proper place for an implied covenant argument is within a breach of contract claim, 'not standing alone as its own claim.'" *Household*, 152 F. Supp. 2d at 1024 (citation omitted). As a result, Count IX should be dismissed.

**VIII.** **Plaintiff's Claims Against The Individual Northwestern Employee-Defendants Fail For Additional Reasons.**

Although Plaintiff does not specify against which Defendant(s) each claim is pled, Plaintiff's claims against Defendants Hari Osofsky, Susan Michelle Spies Roth, and George

---

[3] Northwestern's Student Handbook, pg. 5 (https://www.northwestern.edu/communitystandards/student-handbook/student-handbook.pdf) (last accessed January 8, 2025). The Court may take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, including documents retrieved from a website. See Fed. R. Evid. 201(b)(2); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003).

Langford (the "Northwestern Employees") fail for additional reasons. To the extent she seeks to assert them, Plaintiff's Title VI and Title VII claims fail because Title VI and Title VII claims may not be asserted against individuals. *Lubavitch-Chabad of Ill., Inc.*, 6 F. Supp. 3d at 815–16. Plaintiff's breach of contract claim also fails because Plaintiff does not allege that she entered into a contract with the Northwestern Employees, nor does she allege the Northwestern Employees breached any contract with Plaintiff. Further, Plaintiff's defamation, false light, commercial disparagement, and negligence claims against the Northwestern Employees fail because Plaintiff does not allege any false statements made by the Northwestern Employees, let alone any statements concerning Plaintiff, nor does she allege that the Northwestern Employees acted outside the scope of their authority as agents of Northwestern.

## **CONCLUSION**

WHEREFORE, The Northwestern Defendants respectfully request that this Court enter an order dismissing Plaintiff's Complaint against them with prejudice and granting such further relief as this Court deems equitable and just.

Dated: January 10, 2025

Respectfully submitted,

NORTHWESTERN UNIVERSITY
PRITZKER SCHOOL OF LAW,
NORTHWESTERN UNIVERSITY POLICE
DEPARTMENT, HARI OSOFSKY, SUSAN
MICHELLE SPIES ROTH, AND GEORGE
LANGFORD[4]

By: *Joshua W. B. Richards*
One of their attorneys

---

[4] *See* n.1, *supra.*

15

Casey Grabenstein (casey.grabenstein@saul.com)
Shivani Govani (shivani.govani@saul.com)
Saul Ewing LLP
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
(312) 876-7100

Joshua W.B. Richards (joshua.richards@saul.com) – *pro hac vice*
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7777

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on January 10, 2025, he caused the foregoing to be filed electronically with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which sent electronic notification to all parties who have appeared and are registered as CM/ECF participants in this matter.


/s/ *Joshua W. B. Richards*