**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

**YASMEEN ELAGHA**

       *Plaintiff,*

v.                                   **Case No: 1:24-cv-12066**
                                        **Hon. Charles P. Kocoras**
                                        **JURY TRIAL DEMANDED**

**NORTHWESTERN UNIVERSITY,**
**HARI OSOFSKY in her official capacity as**
**Dean of Northwestern University School of Law,**
**SUSAN MICHELLE SPIES ROTH, in her official capacity**
**as Dean of students at Northwestern University School of Law,**
**GEORGE LANGFORD, in his official capacity as associate**
**Dean at Northwestern University School of Law,**

       *Defendants.*

---

## <u>FIRST-AMENDED COMPLAINT</u>

**NOW COMES**, Plaintiff, Yasmeen Elagha, by and through her counsel, Advanta Law, PLC, & The Shiraz Law Firm, PLLC., Waleed Naser, and Farah Chalisa as local counsel, and for her First-Amended Complaint ("Amended Complaint"), states and alleges the following:

### I.    NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff's claims are brought pursuant to pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., 28 U.S.C. §§ 1331, 1337, 1343, and 1367; and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et.seq*.

## II.      JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., 28 U.S.C. §§ 1331, 1337, 1343, and 1367.

3. This Court has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et.seq*.

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of Illinois under 28 U.S.C. § 1391 because Plaintiff is a resident of the Eastern District of Illinois, and the actions giving rise to the claims pled and alleged in this amended Complaint all occurred within the Eastern District of Illinois.

## <u>PARTIES</u>

6. Plaintiff **YASMEEN ELAGHA** ("Plaintiff" or "Plaintiff Elagha" or "Elagha") is a Palestinian Muslim woman who wears a hijab, graduated from Northwestern Law School in May 2024, and is currently a licensed attorney practicing law in the state of Illinois.

7. Defendant **NORTHWESTERN UNIVERSITY** ("Defendant NU", "Defendant Northwestern", or "Defendant University") is a university located in the state of Illinois that receives financial assistance and funding from the United States federal government.

8. Defendant **HARI OSOFSKY** ("Defendant Osofsky") at all times relevant to this amended complaint was the Dean of the Northwestern University Pritzker School of Law.

9. Defendant **SUSAN MICHELLE SPIES ROTH** ("Defendant Roth") at all times relevant to this amended complaint was the Associate Dean and Dean of Students at the Northwestern University Pritzker School of Law.

10. Defendant **GEORGE LANGFORD** ("Defendant Langford") at all times relevant to this amended complaint was the Associate Dean/Infrastructure Planning and Design at the Northwestern University Pritzker School of Law.

## FACTUAL ALLEGATIONS

11. In 2021, Plaintiff Elagha was accepted into Defendant Northwestern's prestigious law school and graduated with honors in May 2024.

12. While a law school student, Plaintiff Elagha was very active in Pro-Palestinian, anti-war causes and organizations on campus.

13. On or about November 16, 2023, Palestinian students and anti-war allies, including Plaintiff Elagha, held a silent protest wearing all black and carrying signs, with tape over their mouths.

14. Despite protestors' explicit refusal to be photographed, several law students followed and recorded Plaintiff Elagha and the other students participating in the peaceful protest, even when asked to stop.

15. Protestors, including Plaintiff Elagha, sought assistance from administrators of the Defendant Northwestern's Law School, but nothing was done to stop the students who were recording them against their consent.

16. During the peaceful march, other members of the Defendant Northwestern community made threatening remarks about their status at the university and their future job prospects, saying things like "we know people high up in university" and "good luck getting jobs after this."

17. Following the protest, pictures and videos of the protestors were shared on social media, including one post by a student at the Defendant Northwestern's Law School that garnered significant attention and attracted racist and harmful comments.

18. Plaintiff Elagha, who had participated in the protest, had her private scholarship status at Defendant Northwestern exposed in a tweet by a fellow law student, though it was later deleted.

19. After the protest, that same day, a group of students, including Plaintiff, met with administrators of the Defendant Northwestern to express their safety concerns stemming from the protest, asking the school to issue a statement to promote civility on campus and to hold students accountable for doxing and harassment.

20. Despite assurances that the Defendant Northwestern would follow up on their concerns, no concrete actions were taken to address the threats or the doxing incidents.

21. In fact, since at least November 2022, Plaintiff Elagha made complaints in writing to the Defendant Northwestern regarding the harassment and targeting she faced by other students in writing, yet did not receive any protections like other students of different racial and ethnic backgrounds had received.

22. In November 2022, Plaintiff Elagha filed an OCR report with Defendant Northwestern against fellow law student Anita Kinney ("Kinney") after Kinney publicly stated that she was "personally gunning for" Plaintiff as a result of Plaintiff sending a school-wide email supporting Palestine.

23. Despite Plaintiff Elagha requesting Defendant Northwestern to issue a no-contact directive against Kinney as Defendant Northwestern customarily have done when

requested by students of other races, Defendant Northwestern ignored Plaintiff's request and did not issue a no-contact directive against Kinney.

24. Since at least 2023 and 2024, Plaintiff Elagha made numerous complaints and warnings in writing to Defendant Northwestern that the actions of harassment and targeting by other students put her at risk of losing her career opportunities.

25. On or about November 16, 2023, Plaintiff Elagha again participated in a silent protest held on Defendant Northwestern's campus.

26. At this time, Plaintiff Elagha had recently received a job offer from internationally recognized law firm DLA Piper as an associate in their Fall 2024 class.

27. Fellow law student, Melody Mostow ("Mostow") at all times relevant, upon information and belief, was at the protest to oppose the silent protest held by the students and to cause issues.

28. Upon information and belief, prior to, during, and after the protest, Kinney, acting in concert with Mostow, encouraged Mostow to make a false claim against Plaintiff in an effort to interfere with Plaintiff's future career prospects and to directly affect any economic advantages she may obtain.

29. Upon information and belief, Kinney was not on campus during the protest and encouraged Mostow to create issues for Plaintiff and other students.

30. Upon information and belief, on or about November 16, 2023, Mostow falsely reported to the Northwestern University Police Department ("NUPD") that Plaintiff assaulted, battered, and harassed her at the protest.

31. Upon information and belief, NUPD never even contacted Plaintiff and instead, posted on their website the allegations made by Mostow.

32. Nonetheless, NUPD failed to remove the false claim from their public database causing harm to Plaintiff's reputation and perpetuating the false accusation that Plaintiff committed a crime.

33. After the November 2023 protest, Plaintiff Elagha again filed an OCR report with the Defendant Northwestern against Kinney requesting the Defendant Northwestern to issue a no-contact directive against Kinney because Kinney began "doxing" the Plaintiff.

34. Despite Plaintiff Elagha's request, the Defendant Northwestern again treated Plaintiff's request differently than other similarly situated students of different ethnic and racial backgrounds and denied Plaintiff's request.

35. On or about May 20, 2024, Tony Kinnett ("Kinnett"), an investigative columnist with the Daily Signal emailed Plaintiff Elagha stating that she "is alleged to have followed/stalked and then assaulted an individual on November 9, 2023" and asked her "Did you follow/stalk Melody Mostow on 11/9/23? Did you assault Melody Mostow on 11/9/23?"

36. On or about that same day, Plaintiff Elagha forwarded the reporter's email to Defendant Deans Osofsky, Spies Roth, and Langford with the notice that "Now, I am at risk of being defamed with false allegations from Melody Mostow. I can consider my job offer rescinded if this publishes. I need the administration's assistance in immediately shutting this down. The administration must contact the reporter and emphasize that this event is fully fabricated, false, and defamatory."

37. Rather than protect their student, Defendant Dean Spies Roth responded on behalf of the University, advising Plaintiff Elagha to refer the reporter to "media@northwestern.edu" which they claimed is the official email for requests for comments from the Defendant Northwestern.

38. However, Plaintiff Elagha was looking for the Deans of her school to refute the defamatory claims being made against her and protect her from harm and false claims that they knew were going to be publicly published, which they refused to do.

39. Kinnett was provided with the email "media@northwestern.edu" as was advised by the Defendant Northwestern.

40. Upon information and belief, neither Star Media, Daily Signal, Connecticut Star, Tennessee Star, nor Kinnett ever reached out to the Defendant Northwestern to corroborate the allegations.

41. The Defendant Northwestern knowingly failed to protect Plaintiff from the allegations which the Defendant Northwestern and Defendants Osofsky, Roth & Langford knew were false.

42. On or about May 21, 2024, the Daily Signal published an article that Plaintiff Elagha "berated a fellow law student, Melody Mostow for taking photographs of the demonstration" and that "in public comments, Melody Mostow alleged that Yasmeen Elagha pushed her in the back. She filed a police report with Northwestern University Police about the incident involving Elagha."

43. On or about May 22, 2024, the Connecticut Star and the Tennessee Star published an article that Plaintiff Elagha "berated a fellow law student, Melody Mostow for taking photographs of the demonstration" and that "in public comments, Melody Mostow alleged that Yasmeen Elagha pushed her in the back. She filed a police report with Northwestern University Police about the incident involving Elagha."

44. However, the official crime log kept by campus police reports the incident as "harassment," instead of as an assault or battery.

45. Not only did Kinnett publish an article, but he also made posts on his account on social media platform "X" regarding the same.

46. On or about May 22, 2024, Plaintiff Elagha received an email from DLA Piper asking her to complete paperwork for a background check.

47. Plaintiff Elagha immediately emailed Deans Osofsky, Spies Roth, and Langford the published articles, informed them of DLA Piper's request, and expressed her disappointment that Defendant Northwestern failed to protect her, effectively failing to prevent severe, pervasive, and objectively offensive harassment causing Plaintiff to be deprived of opportunities despite being warned by Plaintiff many times.

48. On or about May 23, 2024, Defendant Dean Spies Roth responded to Plaintiff Elagha that the reporter did not choose to contact the university.

49. Defendant Northwestern's Office of Civil Rights conducted an investigation after Mostow made a report against Plaintiff and found that there was no physical contact between Plaintiff Elagha and Mostow.

50. In fact, Plaintiff Northwestern's Office of Civil Rights "reviewed video footage of the demonstration and did not observe any physical contact between Ms. Elagha and Student A [Mostow]. Based on the above, NU-OCR found no violation of University policy."

51. Upon information and belief, Mostow recanted her allegations against Plaintiff only to Defendant Dean Roth.

52. In fact, Defendant Northwestern was aware that Mostow recanted the allegations against Plaintiff Elagha, but failed to act or take any action pursuant to Defendant Northwestern's Policies and Student Code of Conduct.

53. To make matters worse, while studying for the bar exam, on or about June 3, 2024, the Illinois Board of Law Admissions sent Plaintiff Elagha a letter requesting additional information to complete processing of her Character and Fitness application due to receiving information that 1) she is a party in a civil suit, and 2) she was "involved in a protest at NU which possibly resulted in a criminal charge."

54. On or about June 17, 2024, Plaintiff Elagha, forced to take time away from studying for the bar exam, forwarded the letter from the Illinois Board of Admissions to the Bar to Defendant Northwestern and its Deans Osofsky, Spies Roth, and Langford.

55. Despite being aware of the false allegations against Plaintiff Elagha since at least November 2023, despite multiple written follow-ups from Plaintiff Elagha, and despite knowing that Mostow recanted her allegations against Plaintiff, it took Defendant Northwestern at least two weeks to respond to Plaintiff Elagha and at least another week to send a letter to the Illinois Board of Admissions confirming that the allegations against Plaintiff Elagha regarding criminal charges was false and no findings of responsibility were issued from any Title IX complaint.

56. Unfortunately, since Defendant Northwestern failed to protect its student Plaintiff Elagha and refute the false and defamatory statements made against her, and despite her warning and fears, on or about July 10, 2024, DLA Piper terminated Plaintiff Elagha's employment and refused to allow her to join the incoming Fall 2024 associate class.

57. Once again, after failing to refute the false and defamatory statements made against Plaintiff Elagha, and despite Plaintiff Elagha's repeated pleas and warning to Defendant Northwestern that if they do not clarify this that she will lose her job, Plaintiff Elagha was terminated from employment at DLA Piper.

58. Even more tragically, it took Defendant Northwestern at least two weeks after Plaintiff Elagha was terminated by DLA Piper to send a letter refuting the allegations against Plaintiff Elagha and certifying that any allegation that Plaintiff Elagha has been the subject of a criminal charged related to an on-campus protest is false and Plaintiff Elagha has no adverse disciplinary finding in her file.

59. But the damage was done and Defendant Northwestern's deliberate negligence cost Plaintiff Elagha her job opportunity with DLA Piper.

60. On or about August 07, 2024, DLA Piper confirmed their termination of Plaintiff Elagha and did not change their position.

61. But it was too late as the article was published, remains published, and Plaintiff Elagha lost her career at DLA Piper.

62. Defendants in concert with each other failed to correct the dissemination of false and patently inaccurate accusations and charges against Plaintiff Elagha.

## **DAMAGES**

63. The unlawful, intentional, willful, deliberately indifferent, and reckless acts and omissions of all Defendants caused Plaintiff Elagha to be improperly publicly humiliated, harassed, attacked, wrongfully accused, terminated from her lucrative job, discriminated against, targeted, and discriminated against for criminal allegations for which she clearly did not commit.

64. As a direct result of Defendants' actions and omissions, Plaintiff Elagha sustained injuries and damages, including but not limited to loss of her reputation, loss of her career opportunity at DLA Piper and similarly situated firms, income, pain and suffering, mental anguish, emotional distress, indignities, degradation, restrictions on all forms of personal

freedom including but not limited to diet, sleep, enjoyment, and freedom of speech and expression.

65. As a direct result of Defendants' actions and omissions, Plaintiff Elagha sustained economic injuries and damages including loss of income and loss of career opportunities directly due to the widely disseminated false and defamatory criminal allegations published against her.

66. As a direct result of Defendants' actions and omissions, Plaintiff Elagha sustained injuries and damages, including pain and suffering, personal injuries, public humiliation and degradation, loss of reputation, abuse, and harassment.

<u>**CAUSES OF ACTION**</u>

**COUNT I:**
**Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.**
**(Intentional Discrimination & Hostile Environment towards Plaintiff and other Palestinian and/or Muslim Middle Eastern Students)**

67. Plaintiff incorporates by reference all of the foregoing paragraphs.

68. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

69. Defendant Northwestern receives financial assistance and funding from the United States Department of Education and other federal agencies, and is therefore subject to suit under Title VI of the Civil Rights Act of 1964.

70. Discrimination against Middle Easterners and/or Muslims based on actual or perceived ancestry, race, ethnic characteristics, or national origin – is prohibited under Title VI, as

reflected not only in decades of Title VI jurisprudence, but also in the written policies of the Office of Civil Rights of the United States Department of Education.

71. Plaintiff Elagha is and identifies as a Palestinian Muslim, and her status and identification as a Palestinian Muslim brings her within the scope of Title VI's protections. Middle Eastern Law Student Association members include Middle Eastern students and Muslims at Defendant Northwestern, who are also within the scope of Title VI's protections.

72. Title VI prohibits a recipient of federal funds from intentionally treating any individual worse, even in part, because of his or her ancestry, race, ethnic characteristics, or national origin.

73. The acts and omissions of Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford subjected Plaintiff Elagha to discrimination, harassment, and targeting on the basis of her actual and/or perceived Palestinian Muslim ancestry, race, ethnic characteristics, or national origin.

74. Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, had actual notice that such discrimination and harassment, over which Northwestern has substantial control and the authority to remediate, was and continues to be so severe, pervasive, and objectively offensive that it created and continues to create a hostile environment based on Middle Eastern and/or Muslim ancestry, race, ethnic characteristics, or national origin that deprives Plaintiff Elagha full access to Defendant Northwestern's protections, opportunities, and educational programs.

75. Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, intentionally discriminated against Plaintiff Elagha on the basis of her actual and/or perceived Palestinian Muslim ancestry, race, ethnic characteristics, or national origin, as exhibited by Defendant Northwestern and Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford deliberate indifference to the abuse, harassment, and intimidation of Plaintiff Elagha in school, in the media, and through false criminal allegations made by other students, in violation of Title VI.

76. Specifically, Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, clearly and unreasonably failed, and continue to fail, to cure or otherwise adequately, appropriately, and meaningfully address, ameliorate, or remedy the discrimination against Plaintiff Elagha, discipline Mostow and other students who targeted and made false claims against Plaintiff Elagha in violation of the school policies, and the hostile environment that she and other Middle Eastern and Muslim students are forced to endure at Defendant Northwestern because of their race, ethnic characteristics, or national origin.

77. Additionally, Defendant Northwestern continues to grossly fail to take prompt and effective steps reasonably calculated to end the harassment, eliminate any hostile environment, and prevent the harassment from recurring. Such unlawful deliberate indifference caused Plaintiff Elagha to be subjected to a hostile educational environment and ultimately cost Plaintiff Elagha her lucrative job.

78. The environment at Defendant Northwestern, which has been rendered hostile for Plaintiff Elagha as a result of her Palestinian and Muslim ancestry, race, ethnic

characteristics, or national origin, is sufficiently severe, pervasive, persistent, and offensive such that it deprived Plaintiff Elagha of equal access protection under school policies, and deprived Plaintiff Elagha of the educational opportunities and benefits that Defendant Northwestern provides to non-Middle Eastern and non-Muslim students.

79. Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, actively and intentionally engage in this pattern of severe and/or pervasive discrimination.

80. Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, also directly and intentionally discriminated against Plaintiff Elagha, with her actual or perceived Palestinian and Muslim ancestry, race, ethnic characteristics, or national origin a substantial or motivating factor in Defendant Northwestern's actions.

81. Defendant Northwestern continues to unreasonably fail to act, or to act grossly inadequately and discriminatorily, and with leniency, tolerance, deliberate indifference, and/or unjustifiable delay, in applying its policies to known or reported incidents involving false claims and false criminal accusations, harassment, or where the victim or complainant is a Middle Eastern or Muslim Student, including Plaintiff Elagha. As detailed above, Defendant Northwestern's actions, inactions, and conduct were, and continue to be, intended to treat Plaintiff Elagha differently as a Palestinian Muslim student as compared to other similarly situated non-Middle Eastern or non-Muslim students.

82. Defendant Northwestern's actions and inactions failed to properly protect Plaintiff Elagha from harassment and false claims made by other students, failed to enforce policies designed to prevent false allegations and harassment, and failed to take any reasonable step

to prevent a knowingly false statement and accusation from being published against Plaintiff.

83. Defendant Northwestern's and Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford violations of Title VI are the actual, direct, and proximate causes of Plaintiff Elagha's injuries.

84. As a result of the foregoing, Plaintiff Elagha has suffered, and continue to suffer, substantial damages, in amounts to be determined at trial.

85. Plaintiff is entitled to attorneys' fees and costs pursuant to Title VI of the Civil Rights Act of 1964.

**WHEREFORE**, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. §2000d *et seq*, and to deter Defendants and others from similar behavior in the future. Plaintiff further prays that this Honorable Court awards her attorneys' fees and costs pursuant to Title VI of the Civil Rights Act of 1964.

### Count II:
### Title VI of the Civil Rights Act
### (Deliberate Indifference)

86. Plaintiff incorporates by reference all of the foregoing paragraphs.

87. Defendant Northwestern's deliberate indifference to the harassment and hostile environment towards Plaintiff Elagha could not be clearer. Since at least 2022, Plaintiff Elagha has made complaints to Defendant Northwestern regarding the harassment and targeting she faced by other students in writing and has not received any protections.

88. Moreover, since at least 2023 and 2024, Plaintiff Elagha made numerous complaints and warnings to Defendant Northwestern that the actions of harassment and targeting by other students would put her at risk of losing her career opportunities, specifically her job offer at DLA Piper.

89. Since on or about May 2024, Plaintiff Elagha made numerous complaints to Defendant Northwestern and Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford that false allegations and criminal accusations against her were being published and that failure by the school to respond will certainly cause her substantial harm including but not limited to loss of her career.

90. Defendant Northwestern's deliberate indifference to the hostility and false accusations made against Plaintiff Elagha was never rectified and Defendant Northwestern has not punished its students who specifically targeted, harassed, and deliberately made false statements and criminal accusations against Plaintiff.

91. Defendant Northwestern's deliberate indifference to the harassment of a Palestinian Muslim student, enabling of false accusations and statements to be published against Plaintiff Elagha despite knowing their falsity, and failing to properly address, rectify, enforce its policies, or punish the students for harassment and false criminal accusations constitutes an egregious violation of Title VI of the Civil Rights Act of 1964.

92. Defendant Northwestern had actual knowledge of the false claims against Plaintiff Elagha and had actual knowledge that the allegations of assault, battery, and harassment against Plaintiff Elagha were false.

93. Defendant Northwestern deliberately ignored the warnings from Plaintiff Elagha that she was being harassed, that there are statements being made against her publicly that are

false, and that she was at risk of losing her career if the accusations were not denied by Defendant Northwestern.

94. Northwestern refused to take any action to prevent the publication of knowingly false statements and criminal accusations against Elagha which Northwestern knew were inaccurate, false, and had never occurred.

95. Defendant Northwestern failed to take any reasonable step to protect Plaintiff Elagha from harassment and from false criminal accusations being published and failed to take any additional steps to protect Plaintiff Elagha, including by not reporting to the media that the allegations are false, not reporting to Plaintiff Elagha's employer that the allegations are false prior to her losing her job, and not reprimanding or appropriately disciplining the students for making false accusations and harassing Plaintiff Elagha.

96. Plaintiff Elagha was subjected to severe harassment by non-Muslim students such as Mostow and Kinney, including through the filing of false criminal claims against her.

97. Plaintiff Elagha was deprived of educational opportunities and/or benefits, loss of her lucrative job position, and opportunities to partake in various activities.

98. Defendant Northwestern clearly knew of the harassment and false criminal claims and accusations made by other students towards Plaintiff through repeated documentation.

99. Defendant Northwestern failed to take any reasonable step to end the harassment, punish the harassment, punish the false criminal accusations, and protect Plaintiff Elagha from the damages suffered as a result of the accusations against her after repeated warnings to Defendant Northwestern.

100. Defendant Northwestern's violations of Title VI are the actual, direct, and proximate causes of Plaintiff Elagha's injuries.

101.     As a result of the foregoing, Plaintiff Elagha has suffered, and continues to suffer, substantial damages, in amounts to be determined at trial.

102.     Plaintiff is entitled to attorneys' fees and costs pursuant to Title VI of the Civil Rights Act of 1964.

**WHEREFORE**, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. §2000d *et seq*, and to deter Defendants and others from similar behavior in the future. Plaintiff further prays that this Honorable Court awards her attorneys' fees and costs pursuant to Title VI of the Civil Rights Act of 1964.

### COUNT III:
### State Law Claim - Breach of Contract

103.     Plaintiff incorporates by reference all of the foregoing paragraphs.

104.     At all relevant times, an express contractual relationship existed between Defendant Northwestern, on the one hand, and Plaintiff Elagha, by virtue of her enrollment at Defendant Northwestern and as defined by and through Northwestern's written codes, policies, and procedures, including, but not limited to, the: Non-Discrimination Policy, Statement on Rights and Responsibilities, Free Speech Guidelines, Student Organization Policies, non-harassment guidelines, and Northwestern's various student handbooks, which often adopt and expand on University- wide policies. Through the documents and materials, it publishes and provides to students, Defendant Northwestern makes contractual commitments to its students concerning safety, bias-related abuse, harassment, intimidation, and discrimination.

105.     Under those contracts, Plaintiff Elagha agreed, among other things, to attend Defendant Northwestern's Law School, and Defendant Northwestern agreed, among other things, to provide her a discrimination-free, harassment-free, and targeting-free environment to be achieved by Defendant Northwestern abiding by and adequately and appropriately enforcing Defendant Northwestern's policies.

106.     Plaintiff Elagha complied and continues to comply with her obligations under these contracts.

107.     Defendant Northwestern breached and continues to breach its contracts with Plaintiff Elagha by, among other things, its continued failure to comply with its obligations under these contracts, including by, among other things, failing to take measures to ameliorate, prevent, and punish and/or discipline the discriminatory and harassing conduct that Plaintiff Elagha has endured and continue to endure, failing to enforce numerous provisions of Defendant Northwestern's policies, failing to meet Plaintiff Elagha's reasonable expectations of the educational benefits and harassment-free environment to which she was entitled.

108.     As a result of Defendant Northwestern's breaches, Plaintiff Elagha has been damaged and continues to sustain substantial damages, in amounts to be determined at trial.

**WHEREFORE**, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' breach of the contract and to deter Defendants and others from similar behavior in the future.  Plaintiff further prays that this Honorable Court awards her attorneys' fees and costs pursuant to Title VI of the Civil Rights Act of 1964.

## COUNT IV:
### State Law Claim -Breach of Implied Covenant of Good Faith and Fair Dealing

109.      Plaintiff incorporates by reference all of the foregoing paragraphs.

110.      Defendant Northwestern has breached the implied covenant of good faith and fair dealing implied in its contracts with students, including Plaintiff Elagha. Among other things, Defendant Northwestern selectively applies or enforces its student handbooks, guidelines, policies, procedures, course catalogs, registration materials, bulletins, circulars, and regulations in bad faith and in a discriminatory way—improperly motivated by shared ancestry, race, ethnic characteristics, or national origin bias – treating incidents of abuse, harassment, intimidation, or discrimination against Palestinian, Middle Eastern and/or Muslim students, including Plaintiff Elagha, in a more lenient, tolerant, forgiving, and nonchalant manner than it treats similar incidents against other minority groups.

111.      As a result of Defendant Northwestern's breaches, Plaintiff Elagha has been damaged and continues to sustain substantial damages, in amounts to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff YASMEEN ELAGHA prays as follows:

A.    That the Court award compensatory, consequential, and punitive damages to Plaintiff against all Defendants, jointly and severally, in an amount to be determined at trial;

B.    Reasonable attorneys' fees, costs of suit, and expenses;

C.    Pre-judgment interest and post-judgment interest at the maximum rate allowable by the law; and

D.    For all other relief and damages to which Plaintiff may be entitled.

Dated: February 7, 2025                    Respectfully submitted,

By: */s/ Farah Chalisa*
FARAH CHALISA
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Tel: 224-392-7822
farah@naserlegal.com

WALEED NASER
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Office: 312-248-2501
Direct: 872-265-8490
waleed@naserlegal.com

AHMAD ZAHER *
**ADVANTA LAW FIRM, PLC**
23800 Northwestern Hwy, Suite 220,
Southfield, MI 48075
Tel: 1.248.281.6299
Fax: 1.248.864.8554
azaher@advantalaw.com

SHIRAZ K. KHAN *
**THE SHIRAZ LAW FIRM, PLLC**.
30400 Telegraph Rd. Suite 380
Bingham Farms, MI. 48025
Tel: (248) 419-0678
Fax: (248) 817-4833
info@shirazlawfirm.com

*Attorneys applications to
practice pro hac vice
forthcoming*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

---

**YASMEEN ELAGHA**

      *Plaintiff,*

v.                                     **Case No: 1:24-cv-12066**
                                          **Hon. Charles P. Kocoras**
                                        **JURY TRIAL DEMANDED**

**NORTHWESTERN UNIVERSITY,**
**HARI OSOFSKY in her official capacity as**
**Dean of Northwestern University School of Law,**
**SUSAN MICHELLE SPIES ROTH, in her official capacity as**
**Dean of students at Northwestern University School of Law,**
**GEORGE LANGFORD, in his official capacity as associate**
**Dean at Northwestern University School of Law,**

      *Defendants.*

---

### DEMAND FOR JURY TRIAL

    **NOW COMES**, Plaintiff, Yasmeen Elagha, by and through her counsel, Advanta Law, PLC, & The Shiraz Law Firm, PLLC., Waleed Naser, and Farah Chalisa as local counsel, and pursuant to Fed.R.Civ.P. 38, hereby demands a jury trial on all the issues so triable by a jury as pled in Plaintiff's first amended complaint.

Dated: February 7, 2025                Respectfully submitted,

                                          By: */s/ Farah Chalisa*
                                        FARAH CHALISA
                                        155 N. Wacker Dr. Suite 4250
                                        Chicago, IL 60606
                                        Tel: 224-392-7822
                                        farah@naserlegal.com

                                        WALEED NASER
                                        155 N. Wacker Dr. Suite 4250
                                        Chicago, IL 60606

Office: 312-248-2501
Direct: 872-265-8490
waleed@naserlegal.com

AHMAD ZAHER *
**ADVANTA LAW FIRM, PLC**
23800 Northwestern Hwy, Suite 220
Southfield, MI 48075
Tel:  1.248.281.6299
Fax:  1.248.864.8554
azaher@advantalaw.com

SHIRAZ K. KHAN *
**THE SHIRAZ LAW FIRM, PLLC**.
30400 Telegraph Rd. Suite 380
Bingham Farms, MI. 48025
Tel: (248) 419-0678
Fax: (248) 817-4833
info@shirazlawfirm.com

*Attorneys applications to
practice pro hac vice
forthcoming*

**ATTORNEYS FOR
YASMEEN ELAGHA**

## CERTIFICATE OF SERVICE

I, FARAH CHALISA, certify that the foregoing document(s) was filed and served via the Court's electronic filing system this 7th day of February, 2025, which will automatically send notification of such filing to all attorneys and parties of record registered electronically.

Dated: February 7, 2025                           Respectfully submitted,

By: */s/ Farah Chalisa*
FARAH CHALISA
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Tel: 224-392-7822
farah@naserlegal.com