IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| YASMEEN ELAGHA<br><br>Plaintiff,<br><br>v.<br><br>NORTHWESTERN UNIVERSITY, et al.<br><br>Defendants. | CASE NO.: 1:24-CV-12066 |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

In November 2023, a student at Northwestern University's Northwestern Pritzker School of Law, Melody Mostow, filed a report against Plaintiff Yasmeen Elagha with the Northwestern University Police Department ("NUPD") alleging that Plaintiff assaulted and harassed Ms. Mostow at a protest at the law school. Am. Compl., ¶ 30. The First Amended Complaint ("Amended Complaint") alleges that Ms. Mostow's allegations were false and that the report caused Plaintiff to lose her job offer with DLA Piper (which is not a party to this action). *Id.* at ¶ 56. Plaintiff generally accuses Defendants of failing to protect Plaintiff from the publication and dissemination of Ms. Mostow's report. *Id.* at ¶¶ 41, 62.

Plaintiff asserts four causes of action against Northwestern University, Hari Osofsky, Susan Michelle Spies Roth, and George Langford (collectively, "Defendants"). Because Plaintiff has failed to allege facts which, if true, would support any claim for relief, her claims against the Defendants should be dismissed in their entirety.

First, the Court should dismiss Plaintiff's Title VI claims because she fails to allege any facts that would support a conclusion that the University discriminated against her on the basis of

race, color, or national origin. She likewise fails to plead facts that meet the basic pleading standard for a hostile environment, since the conduct she alleges the University engaged in was not on the basis of race, color, or national origin or severe or pervasive. Plaintiff principally alleges that during a November 2023 protest at the law school that she participated in, several law students recorded protestors without their consent, and community members made threatening remarks about the protestors' future job prospects. *Id.* at ¶¶ 14, 16. Following the protest, a fellow law student exposed Plaintiff's scholarship status in a tweet that was later deleted, another law student publicly stated she was "personally gunning for" Plaintiff and "doxed" Plaintiff, and another student falsely reported to NUPD that Plaintiff assaulted, battered and harassed her at the November 2023 protest. *Id.* at ¶¶ 18, 22, 30, 33. Although Plaintiff alleges she made complaints to the University regarding "harassment and targeting" she faced by other students, she fails to provide any facts related to the alleged harassment or targeting from which the Court could determine whether her conclusory allegations are supported.

Second, the Court should dismiss Plaintiff's breach of contract claim because Plaintiff fails to identify any specific contractual promises the Defendants allegedly breached. To the extent Plaintiff's breach of contract claim is premised upon Northwestern's Student Handbook, Plaintiff's claim fails because Northwestern expressly disclaimed any express or implied contractual relationship based on the terms of the Handbook.

Third, the Court should dismiss Plaintiff's claim for breach of the implied duty of good faith and fair dealing because there is no independent cause of action for such a claim under Illinois law.

**LEGAL STANDARD**

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation and internal quotations omitted). On review of a motion under Rule 12(b)(6), the district court accepts the facts in the complaint as true, views them in the light most favorable to the plaintiff, and draws reasonable inferences in plaintiff's favor, but need not accept unsupported conclusions of law. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

**ARGUMENT**

**I.    The Complaint Fails To State A Title VI Claim.**

A plaintiff can plead a Title VI violation in two different ways: (1) direct discrimination, or (2) deliberate indifference. *Doe v. Galster*, 768 F.3d 611, 613–14 (7th Cir. 2014); *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015). Count I of the Amended Complaint appears to allege a claim for direct discrimination (Am. Compl., ¶¶ 67–85), while Count II appears to allege a claim for deliberate indifference (*id.* at ¶¶ 86–102). Plaintiff's claims fail under both theories.

**A.    The Complaint Does Not Plead The Elements To Show Direct Discrimination.**

To state a claim for direct discrimination under Title VI, a plaintiff must adequately allege: (1) she has been intentionally discriminated against on the grounds of race, color, or national origin; and (2) the defendants are recipients of federal financial assistance. *Khan*, 147 F. Supp. 3d at 720. A plaintiff can show intentional discrimination directly or indirectly. *Totten v. Benedictine Univ.*, No. 20 C 6107, 2021 WL 3290926, at *9 (N.D. Ill. Aug. 2, 2021).

Under the "direct method," a plaintiff may establish intentional discrimination through evidence relating "to the motivation of the decisionmaker responsible for the contested decision." *Id.* (quoting *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999)) (quotation marks

3

omitted). "Direct evidence typically requires an admission of discriminatory animus." *Lubavitch-Chabad of Ill., Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013) (quoting *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009)) (quotation marks omitted). However, "a plaintiff may also produce circumstantial evidence that establishes . . . discriminatory motive through a longer chain of inferences." *Id.* To show intentional discrimination under the "indirect method," a plaintiff must show that she "(1) is a member of a protected class; (2) met the school's legitimate expectations; (3) suffered an adverse action; and (4) was treated less favorably than similarly situated individuals outside of the protected class." *Totten*, No. 20 C 6107, 2021 WL 3290926, at *10. To be similarly situated, the comparator must be directly comparable to the plaintiff in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

Here, Plaintiff alleges that: (1) since November 2022, she "made complaints in writing to [] Northwestern regarding the harassment and targeting she faced by other students in writing, yet did not receive any protections like other students of different racial and ethnic backgrounds had received;" and (2) Northwestern failed to correct the false allegations of assault, battery, and harassment made against Plaintiff in November 2023 or discipline the individual responsible for the false allegations. Am. Compl., ¶¶ 21, 31.

Plaintiff's claim fails because she fails to allege with the requisite specificity that she was treated differently than any other class of individuals with respect to the above allegations. Although Plaintiff claims she was treated differently than "other students of different racial and ethnic backgrounds," she does not specifically allege any comparators, let alone any comparators that are sufficiently similar to Plaintiff. *Id.* The Complaint lacks any specific facts supporting an inference that Plaintiff's ancestry, race, ethnic characteristics, or national origin were a motivating factor in any actions taken or omissions by the University. To the contrary, Plaintiff concedes in

4

her Amended Complaint that certain of the harassing and targeting conduct alleged above was *not* on the basis of Plaintiff's race, color, or national origin and instead was due to Plaintiff's political beliefs. *See, e.g.*, *id.* at ¶ 22 (alleging a fellow student informed Plaintiff she "'was personally gunning for' Plaintiff as a result of Plaintiff sending a school-wide email supporting Palestine"). For these reasons, Plaintiff's Title VI claim should be dismissed.

### B. The Complaint Fails To Support An Inference Of Deliberate Indifference.

To state a claim for deliberate indifference, "[s]chool officials must have had 'actual knowledge' of harassment 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Galster*, 768 F.3d at 613–14 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). To have actual knowledge of an incident, school officials must have witnessed it or received a report of it. *Gabrielle M. v. Park Forest–Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 823–24 (7th Cir. 2003). "To impose liability, school officials' response to known harassment also must have been 'clearly unreasonable in light of the known circumstances.'" *Galster*, 768 F.3d at 614 (quoting *Davis*, 526 U.S. at 648); *Sojda on behalf of Sojda v. Chi. Bd. of Educ.*, No. 23 CV 4231, 2024 WL 1579065, at *2 (N.D. Ill. Apr. 11, 2024).

In determining what constitutes severe and pervasive harassment, courts in the Seventh Circuit consider the "totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with . . . the student's educational opportunities." *Hendrichsen v. Ball State Univ.*, 107 Fed. Appx. 680, 684–85 (7th Cir. 2004) (holding that professor's actions towards student were not severe or pervasive enough because the inappropriate behavior lasted a few weeks, it did not physically threaten the student, and the student admitted her academic performance was not affected by the professor's actions). "As a general rule, unless the conduct is

5

quite severe, a single incident or isolated incidents" cannot create a hostile environment. *Adusumilli v. Ill. Inst. of Tech.*, No. 97 C 8507, 1998 WL 601822, at **1, 4 (N.D. Ill. Sept. 9, 1998) (holding that student's allegation of sexual harassment against classmate was not severe or pervasive because student alleged a single instance of physical harassment).

"The Supreme Court has set a high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment." *Galster*, 768 F.3d at 617 (citing *Davis*, 526 U.S. at 643). "School officials are given broad latitude to resolve peer harassment and are liable only in 'certain limited circumstances.'" *Id.* (quoting *Davis*, 526 U.S. at 643). "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* In fact, the "response does not have to be perfect or even successful." *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 543 (7th Cir. 2022). As the Seventh Circuit recently explained, a "response will suffice to avoid institutional liability so long as it is not so unreasonable, under all the circumstances, as to constitute an 'official decision' to permit discrimination." *Id*.

Plaintiff fails to plead facts supporting an inference of deliberate indifference. First, it is not clear from her allegations what conduct Plaintiff contends created a hostile environment. Plaintiff principally alleges that during a November 2023 protest at the law school that she participated in, several law students recorded protestors without their consent, and community members made threatening remarks about the protestors' future job prospects. Am. Compl., ¶¶ 14, 16. Following the protest, a fellow law student exposed Plaintiff's scholarship status in a tweet that was later deleted, another law student publicly stated she was "personally gunning for" Plaintiff and "doxed" Plaintiff, and another student falsely reported to NUPD that Plaintiff assaulted, battered and harassed her at the November 2023 protest. *Id.* at ¶¶ 18, 22, 30, 33.[1] She

---

[1] Plaintiff's allegations about incidents that allegedly happened to other students under other circumstances are not relevant to Plaintiff's Title VI or other claims.

6

also contends that she made complaints to the University regarding "harassment and targeting" she faced by other students, but does not describe what the harassment was, where it took place, or how frequently it occurred. This makes evaluating her claims under the governing rubric impossible.

Cases in which an environment was deemed sufficiently severe and pervasive to support a hostile environment claim are markedly different from the allegations Plaintiff makes about her own experiences. *See, e.g.*, *I.G. by & through Grunspan v. Jefferson Cnty. Sch. Dist. through Bd. of Educ. For Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 995 (D. Colo. 2020) (finding severe and pervasive conduct where plaintiff alleged repeated defacement of plaintiff's father's car and school property with swastikas, derogatory jokes, and remarks about plaintiff's Jewish heritage, and that "[f]rom September through the remainder of 2016, students at the School 'were giving Nazi salutes and verbally stating "Heil Hitler" as they walked through the halls during class breaks.'"); *T.E. et al. v. Pine Bush Cent. Sch. Dist. et al.*, 58 F. Supp. 3d 332, 339–50 (S.D.N.Y. 2014) (describing alleged antisemitic conduct occurring over the course of years, including physical and verbal threats, school property vandalized with swastikas, and constant harassment such as the use of derogatory terms about plaintiff's Jewish heritage); *accord Gul-E-Rana Mirza v. The Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 860 (N.D. Ill. 2009) (finding severe and pervasive conduct where plaintiff alleged co-worker used racial epithets against plaintiff and engaged in sale-stealing, and supervisor regularly singled out plaintiff and granted preferential treatment to non-Pakistani, non-Muslim co-workers).

Plaintiff's allegations of harassment do not approach this level. Plaintiff does not describe any harassment with specificity. She does not allege, for example, that she was repeatedly

7

assaulted physically or verbally, that her grades suffered, or that she was extensively absent from school as a result of the alleged harassment.

Nor does Plaintiff allege facts that show to whom she reported many of these purported incidents of harassment. To hold the University liable under Title VI, Plaintiff must establish that "a school official who possessed the requisite control over the situation [] had actual knowledge of, and [was] deliberately indifferent to, the alleged harassment." *Sojda on behalf of Sojda*, No. 23 CV 4231, 2024 WL 1579065, at *2 (N.D. Ill. Apr. 11, 2024) (cleaned up); *see also Davis*, 526 U.S. at 646–47 (holding that actual—not constructive—notice is the appropriate standard in peer-harassment cases). "Regarding actual knowledge, [s]chool administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Id.* (internal citation and quotation marks omitted). Although Plaintiff alleges that she and other students "met with administrators of [] Northwestern to express their safety concerns" following the protest, she fails to identify the "administrators" that she met with or the particular "safety concerns" that were reported. Am. Compl., ¶ 19. Thus, Plaintiff's allegations are insufficient to establish that the University had actual notice of purported incidents of harassment.

Moreover, although Plaintiff alleges that she filed two OCR reports against a fellow student, Anita Kinney, in November 2022 and November 2023 after Ms. Kinney stated that she was "personally gunning for" Plaintiff and began "doxing" her, Plaintiff fails to allege that Northwestern did not address Plaintiff's complaints. *Id.* at ¶¶ 22, 33. Rather, Plaintiff simply claims that she did not receive the remedy of her choice: a no-contact directive against Ms. Kinney. *Id.* at ¶¶ 23, 34. However, the Seventh Circuit has held that "school officials are given broad latitude to resolve peer harassment," and plaintiffs are not entitled to their remedy of choice. *Davis*, 526 U.S.

8

at 643, 648 (holding that school administrators are not required to engage in any particular type of disciplinary action).

What's more, Plaintiff concedes in her Amended Complaint that the University *did* respond to her concerns about the underlying incident that Plaintiff did actually raise by sending letters to DLA Piper and the Illinois Bar at her request (Am. Compl., ¶¶ 55, 58), undermining her claim that the University was deliberately indifferent to a known hostile environment (the existence of which of course she has not shown, either). In short, because Plaintiff alleges none of the elements of a Title VI claim, her claim should be dismissed.

**II.     Plaintiff Fails To Adequately Plead A Breach Of Contract Claim.**

    **A.     Plaintiff Has Not Identified Any Specific And Enforceable Promises.**

To state a breach of contract claim a student must point to an identifiable contractual promise. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883–84 (7th Cir. 2022). For an implied contract, "the student's complaint must be specific about the source of the implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.* at 884 (quoting *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013)). As one court explained, "[t]hough a student handbook may contain material that forms part of the contract between a university and its students, only the handbook's 'specific promises' become part of the contract, not its 'expression[s] of intention, hope or desire.'" *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1064 (N.D. Ill. 2021) (quoting *Abrams v. Ill. Coll. of Podiatric Med.*, 77 Ill.App.3d 471, 476 (1st Dist. 1979)). Accordingly, "'definite' and 'concrete promise[s]' must be distinguished from 'unenforceable expression[s].'" *Id.* (quoting *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *7 (N.D. Ill. Feb. 4, 2019)); *see also Polley v. Nw. Univ.*, 560 F. Supp. 3d 1197, 1207 (N.D. Ill. 2021) (granting motion to dismiss where students

9

pointed to aspirational "promises" such as "an environment with limitless possibilities to learn, make a difference, and define your path for future success.").

Here, Plaintiff claims she had an express contractual relationship with Northwestern by virtue of her enrollment and as defined in Northwestern's written policies and procedures. Am. Compl., ¶ 104. Plaintiff contends Northwestern promised Plaintiff a "discrimination-free, harassment-free, and targeting-free environment." *Id.* at ¶ 105. But anti-discrimination provisions in a university's handbook or policies are not "definite or enforceable" and are "a general reference of adherence to existing law concerning discrimination." *Harris v. Adler Sch. of Prof'l Psych.*, 309 Ill. App. 3d 856, 861 (1st Dist. 1999) (dismissing student's breach of contract claim premised upon college's non-discrimination policy). Beyond those general allegations, Plaintiff does not identify the definite written University policies at issue, much less the specific provisions allegedly breached by the Defendants. As a result, her claim for breach of contract fails.

### B. Northwestern Has Explicitly Disclaimed Any Contractual Relationship.

To the extent Plaintiff's breach of contract claim relies upon the University's Student Handbook, Plaintiff's claim fails for the additional reason that the University expressly disclaimed any contractual relationship in its Handbook. A student cannot assert a breach of contract claim based on a student policy that expressly disclaims any contractual relationship. *See Buschauer v. Columbia Coll. Chi.*, No. 20 C 3394, 2021 WL 1293829, at **2, 5 (N.D. Ill. Apr. 6, 2021) (finding no enforceable contract where course catalog included a disclaimer that it "is not a contract."); *see also Carr v. Bd. Of Regents of Univ. Sys. Of Ga.*, 249 Fed. Appx. 146, 150–51 (11th Cir. 2007) (undergraduate catalog did not constitute a contract because of express disclaimer); *Truell v. Regent Univ. Sch. Of L.,* No. CIVA 2:04CV716, 2006 WL 2076769, at **6–7 (E.D. Va. July 21, 2006) (dismissing breach of contract claim where the university's catalog stated "this catalog does not establish contractual relationships.").

Here, to the extent that Plaintiff's claim is premised upon Northwestern's Student Handbook, the claim fails because Northwestern disclaimed any contractual relationship in its Student Handbook. The Student Handbook[2] states in bolded italics that "[t]he provisions of this Student Handbook do not constitute a contract, expressed or implied, between any students, prospective and/or matriculated, and Northwestern University." The Court should therefore dismiss any breach of contract claim based on the Student Handbook.

**III.     There Is No Independent Cause Of Action For Breach Of The Implied Duty Of Good Faith And Fair Dealing Under Illinois Law.**

The Illinois Supreme Court has made clear that there is no independent cause of action for breach of the implied duty of good faith and fair dealing, with one exception for certain insurance disputes, which is not relevant here. *Voyles v. Sandia Mortg. Corp.*, 196 Ill.2d 288, 295 (2004). This well-established principle has been upheld consistently by Illinois courts. *See The N. Trust Co. v. VIII S. Mich. Assocs.*, 276 Ill. App. 3d 355, 366–67 (1st Dist. 1995); *Household Fin. Servs., Inc. v. Coastal Mortg. Servs., Inc.*, 152 F. Supp. 2d 1015, 1024 (N.D. Ill. 2001) (holding that under Illinois law, a party "cannot bring an independent claim for breach of an implied duty of good faith and fair dealing"); *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir. 2000) (finding that the plaintiff could not bring a separate cause of action for breach of implied duty of good faith and fair dealing). Instead, "the proper place for an implied covenant argument is within a breach of contract claim, 'not standing alone as its own claim.'" *Household Fin. Servs., Inc.*, 152 F. Supp. 2d at 1024 (citation omitted). As a result, Count IV should be dismissed.

---

[2] Northwestern's Student Handbook, pg. 5 (https://www.northwestern.edu/communitystandards/student-handbook/student-handbook.pdf) (last accessed February 28, 2025). The Court may take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, including documents retrieved from a website. *See* Fed. R. Evid. 201(b)(2); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003).

11

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an order dismissing Plaintiff's First Amended Complaint against them with prejudice and granting such further relief as this Court deems equitable and just.

Dated: February 28, 2025

Respectfully submitted,

NORTHWESTERN UNIVERSITY, HARI OSOFSKY, SUSAN MICHELLE SPIES ROTH, AND GEORGE LANGFORD

By: *Joshua W. B. Richards*
One of their attorneys

Casey Grabenstein (casey.grabenstein@saul.com)
Shivani Govani (shivani.govani@saul.com)
Saul Ewing LLP
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
(312) 876-7100

Joshua W.B. Richards (joshua.richards@saul.com) – *pro hac vice*
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7777

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on February 28, 2025, he caused the foregoing to be filed electronically with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which sent electronic notification to all parties who have appeared and are registered as CM/ECF participants in this matter.

/s/ *Joshua W. B. Richards*