## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

---

**YASMEEN ELAGHA**

       *Plaintiff,*

v.                                       **Case No: 1:24-cv-12066**
                                            **Hon. Charles P. Kocoras**
                                            **JURY TRIAL DEMANDED**

**NORTHWESTERN UNIVERSITY,**
**HARI OSOFSKY in her official capacity as**
**Dean of Northwestern University School of Law,**
**SUSAN MICHELLE SPIES ROTH, in her official capacity**
**as Dean of students at Northwestern University School of Law,**
**GEORGE LANGFORD, in his official capacity as associate**
**Dean at Northwestern University School of Law,**

       *Defendants.*

---

## SECOND-AMENDED COMPLAINT

    **NOW COMES**, Plaintiff, Yasmeen Elagha, by and through her counsel, Advanta Law, PLC, & The Shiraz Law Firm, PLLC., Waleed Naser, and Farah Chalisa as local counsel, and for her Second-Amended Complaint ("SAC"), states and alleges the following:

### I.    NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff's claims are brought pursuant to pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., 28 U.S.C. §§ 1331, 1337, 1343, and 1367; and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et.seq*.

## II.    JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., 28 U.S.C. §§ 1331, 1337, 1343, and 1367.

3. This Court has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et.seq*.

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of Illinois under 28 U.S.C. § 1391 because Plaintiff is a resident of the Eastern District of Illinois, and the actions giving rise to the claims pled and alleged in this amended Complaint all occurred within the Eastern District of Illinois.

## III.    <u>PARTIES</u>

6. Plaintiff **YASMEEN ELAGHA** ("Plaintiff" or "Plaintiff Elagha" or "Elagha") is a Palestinian Muslim woman who wears a hijab, graduated from Northwestern Law School in May 2024, and is currently a licensed attorney practicing law in the state of Illinois.

7. Defendant **NORTHWESTERN UNIVERSITY** ("Defendant NU", "Defendant Northwestern", or "Defendant University") is a university located in the state of Illinois that receives financial assistance and funding from the United States federal government.

8. Defendant **HARI OSOFSKY** ("Defendant Osofsky") at all times relevant to this amended complaint was the Dean of the Northwestern University Pritzker School of Law.

9. Defendant **SUSAN MICHELLE SPIES ROTH** ("Defendant Roth") at all times relevant to this amended complaint was the Associate Dean and Dean of Students at the Northwestern University Pritzker School of Law.

10. Defendant **GEORGE LANGFORD** ("Defendant Langford") at all times relevant to this amended complaint was the Associate Dean/Infrastructure Planning and Design at the Northwestern University Pritzker School of Law.

### IV.  FACTUAL ALLEGATIONS

11. In 2021, Plaintiff Elagha was accepted into Defendant Northwestern's prestigious law school and graduated with honors in May 2024.

12. While a law school student, Plaintiff Elagha was very active in Pro-Palestinian, anti-war causes and organizations on campus.

13. On or about November 16, 2023, Palestinian students and anti-war allies, including Plaintiff Elagha, held a silent protest wearing all black and carrying signs, with tape over their mouths.

14. Despite protestors' explicit refusal to be photographed, several law students followed and recorded Plaintiff Elagha and the other students participating in the peaceful protest, even when asked to stop.

15. Protestors, including Plaintiff Elagha, sought assistance from administrators of the Defendant Northwestern's Law School, but nothing was done to stop the students who were recording them against their consent.

16. During the peaceful march, other members of the Defendant Northwestern community made threatening remarks about their status at the university and their future job prospects, saying things like "we know people high up in university" and "good luck getting jobs after this."

17. Following the protest, pictures and videos of the protestors were shared on social media, including one post by a student at the Defendant Northwestern's Law School that garnered significant attention and attracted racist and harmful comments.

18. Plaintiff Elagha, who had participated in the protest, had her private scholarship status at Defendant Northwestern exposed in a tweet by a fellow law student, though it was later deleted.

19. After the protest, that same day, a group of students, including Plaintiff, met with administrators of the Defendant Northwestern to express their safety concerns stemming from the protest, asking the school to issue a statement to promote civility on campus and to hold students accountable for doxing and harassment.

20. Despite assurances that the Defendant Northwestern would follow up on their concerns, no concrete actions were taken to address the threats or the doxing incidents.

21. In fact, since at least November 2022, Plaintiff Elagha made complaints in writing to the Defendant Northwestern regarding the harassment and targeting she faced by other students in writing, yet did not receive any protections like other students of different racial and ethnic backgrounds had received.

22. In November 2022, Plaintiff Elagha filed an OCR report with Defendant Northwestern against fellow law student Anita Kinney ("Kinney") after Kinney publicly stated that she was "personally gunning for" Plaintiff as a result of Plaintiff sending a school-wide email supporting Palestine.

23. Despite Plaintiff Elagha requesting Defendant Northwestern to issue a no-contact directive against Kinney as Defendant Northwestern customarily have done when requested by

students of other races, Defendant Northwestern ignored Plaintiff's request and did not issue a no-contact directive against Kinney.

24. Since at least 2023 and 2024, Plaintiff Elagha made numerous complaints and warnings in writing to Defendant Northwestern that the actions of harassment and targeting by other students put her at risk of losing her career opportunities.

25. On or about November 16, 2023, Plaintiff Elagha again participated in a silent protest held on Defendant Northwestern's campus.

26. At this time, Plaintiff Elagha had recently received a job offer from internationally recognized law firm DLA Piper as an associate in their Fall 2024 class.

27. Fellow law student, Melody Mostow ("Mostow") at all times relevant, upon information and belief, was at the protest to oppose the silent protest held by the students and to cause issues.

28. Upon information and belief, prior to, during, and after the protest, Kinney, acting in concert with Mostow, encouraged Mostow to make a false claim against Plaintiff in an effort to interfere with Plaintiff's future career prospects and to directly affect any economic advantages she may obtain.

29. Upon information and belief, Kinney was not on campus during the protest and encouraged Mostow to create issues for Plaintiff and other students.

30. Upon information and belief, on or about November 16, 2023, Mostow falsely reported to the Northwestern University Police Department ("NUPD") that Plaintiff assaulted, battered, and harassed her at the protest.

31. Upon information and belief, NUPD never even contacted Plaintiff and instead, posted on their website the allegations made by Mostow.

32. Nonetheless, NUPD failed to remove the false claim from their public database causing harm to Plaintiff's reputation and perpetuating the false accusation that Plaintiff committed a crime.

33. After the November 2023 protest, Plaintiff Elagha again filed an OCR report with the Defendant Northwestern against Kinney requesting the Defendant Northwestern to issue a no-contact directive against Kinney because Kinney began "doxing" the Plaintiff.

34. Despite Plaintiff Elagha's request, the Defendant Northwestern again treated Plaintiff's request differently than other similarly situated students of different ethnic and racial backgrounds and denied Plaintiff's request.

35. On or about May 20, 2024, Tony Kinnett ("Kinnett"), an investigative columnist with the Daily Signal emailed Plaintiff Elagha stating that she "is alleged to have followed/stalked and then assaulted an individual on November 9, 2023" and asked her "Did you follow/stalk Melody Mostow on 11/9/23? Did you assault Melody Mostow on 11/9/23?"

36. On or about that same day, Plaintiff Elagha forwarded the reporter's email to Defendant Deans Osofsky, Spies Roth, and Langford with the notice that "Now, I am at risk of being defamed with false allegations from Melody Mostow. I can consider my job offer rescinded if this publishes. I need the administration's assistance in immediately shutting this down. The administration must contact the reporter and emphasize that this event is fully fabricated, false, and defamatory."

37. Rather than protect their student, Defendant Dean Spies Roth responded on behalf of the University, advising Plaintiff Elagha to refer the reporter to "media@northwestern.edu" which they claimed is the official email for requests for comments from the Defendant Northwestern.

38. However, Plaintiff Elagha was looking for the Deans of her school to refute the defamatory claims being made against her and protect her from harm and false claims that they knew were going to be publicly published, which they refused to do.

39. Kinnett was provided with the email "media@northwestern.edu" as was advised by the Defendant Northwestern.

40. Upon information and belief, neither Star Media, Daily Signal, Connecticut Star, Tennessee Star, nor Kinnett ever reached out to the Defendant Northwestern to corroborate the allegations.

41. The Defendant Northwestern knowingly failed to protect Plaintiff from the allegations which the Defendant Northwestern and Defendants Osofsky, Roth & Langford knew were false.

42. On or about May 21, 2024, the Daily Signal published an article that Plaintiff Elagha "berated a fellow law student, Melody Mostow for taking photographs of the demonstration" and that "in public comments, Melody Mostow alleged that Yasmeen Elagha pushed her in the back. She filed a police report with Northwestern University Police about the incident involving Elagha."

43. On or about May 22, 2024, the Connecticut Star and the Tennessee Star published an article that Plaintiff Elagha "berated a fellow law student, Melody Mostow for taking photographs of the demonstration" and that "in public comments, Melody Mostow alleged that Yasmeen Elagha pushed her in the back. She filed a police report with Northwestern University Police about the incident involving Elagha."

44. However, the official crime log kept by campus police reports the incident as "harassment," instead of as an assault or battery.

45. Not only did Kinnett publish an article, but he also made posts on his account on social media platform "X" regarding the same.

46. On or about May 22, 2024, Plaintiff Elagha received an email from DLA Piper asking her to complete paperwork for a background check.

47. Plaintiff Elagha immediately emailed Deans Osofsky, Spies Roth, and Langford the published articles, informed them of DLA Piper's request, and expressed her disappointment that Defendant Northwestern failed to protect her, effectively failing to prevent severe, pervasive, and objectively offensive harassment causing Plaintiff to be deprived of opportunities despite being warned by Plaintiff many times.

48. On or about May 23, 2024, Defendant Dean Spies Roth responded to Plaintiff Elagha that the reporter did not choose to contact the university.

49. Defendant Northwestern's Office of Civil Rights conducted an investigation after Mostow made a report against Plaintiff and found that there was no physical contact between Plaintiff Elagha and Mostow.

50. In fact, Plaintiff Northwestern's Office of Civil Rights "reviewed video footage of the demonstration and did not observe any physical contact between Ms. Elagha and Student A [Mostow]. Based on the above, NU-OCR found no violation of University policy."

51. Upon information and belief, Mostow recanted her allegations against Plaintiff only to Defendant Dean Roth.

52. In fact, Defendant Northwestern was aware that Mostow recanted the allegations against Plaintiff Elagha, but failed to act or take any action pursuant to Defendant Northwestern's Policies and Student Code of Conduct.

53. To make matters worse, while studying for the bar exam, on or about June 3, 2024, the Illinois Board of Law Admissions sent Plaintiff Elagha a letter requesting additional information to complete processing of her Character and Fitness application due to receiving information that 1) she is a party in a civil suit, and 2) she was "involved in a protest at NU which possibly resulted in a criminal charge."

54. On or about June 17, 2024, Plaintiff Elagha, forced to take time away from studying for the bar exam, forwarded the letter from the Illinois Board of Admissions to the Bar to Defendant Northwestern and its Deans Osofsky, Spies Roth, and Langford.

55. Despite being aware of the false allegations against Plaintiff Elagha since at least November 2023, despite multiple written follow-ups from Plaintiff Elagha, and despite knowing that Mostow recanted her allegations against Plaintiff, it took Defendant Northwestern at least two weeks to respond to Plaintiff Elagha and at least another week to send a letter to the Illinois Board of Admissions confirming that the allegations against Plaintiff Elagha regarding criminal charges was false and no findings of responsibility were issued from any Title IX complaint.

56. Unfortunately, since Defendant Northwestern failed to protect its student Plaintiff Elagha and refute the false and defamatory statements made against her, and despite her warning and fears, on or about July 10, 2024, DLA Piper terminated Plaintiff Elagha's employment and refused to allow her to join the incoming Fall 2024 associate class.

57. Once again, after failing to refute the false and defamatory statements made against Plaintiff Elagha, and despite Plaintiff Elagha's repeated pleas and warning to Defendant Northwestern that if they do not clarify this that she will lose her job, Plaintiff Elagha was terminated from employment at DLA Piper.

58. Even more tragically, it took Defendant Northwestern at least two weeks after Plaintiff Elagha was terminated by DLA Piper to send a letter refuting the allegations against Plaintiff Elagha and certifying that any allegation that Plaintiff Elagha has been the subject of a criminal charged related to an on-campus protest is false and Plaintiff Elagha has no adverse disciplinary finding in her file.

59. But the damage was done and Defendant Northwestern's deliberate negligence cost Plaintiff Elagha her job opportunity with DLA Piper.

60. On or about August 07, 2024, DLA Piper confirmed their termination of Plaintiff Elagha and did not change their position.

61. But it was too late as the article was published, remains published, and Plaintiff Elagha lost her career at DLA Piper.

62. Defendants in concert with each other failed to correct the dissemination of false and patently inaccurate accusations and charges against Plaintiff Elagha.

63. Beginning October 2023, Plaintiff was subjected to severe, pervasive, and objectively offensive harassment based on her Palestinian identity and advocacy, including threats of violence, doxing, racist remarks by faculty, and false criminal accusations.

64. Plaintiff's fellow student, Sam Millner, published violent social media posts against Palestinians and pro-Palestinian supporters, including threats to "share your address online" if one supports Hamas, and praised the bombing of Gaza, tweeting that, "Gaza will turn into a tent city. No buildings will remain."

65. Plaintiff reported these threats and expressed safety concerns to Northwestern administration, but no action was taken and her complaints were not followed up with or taken seriously.

66. Northwestern took no disciplinary action against Millner and admitted him to the prestigious JD-MBA program, despite Plaintiff's safety complaints.

67. Because of the hostile and unsafe learning environment and the personal losses she endured, Plaintiff did not feel safe attending her classes on campus.

68. Defendant Northwestern did not grant Plaintiff a remote learning accommodation and instead told her she could be excused from classes.

69. Instead of addressing the hostile learning environment Plaintiff outlined to them throughout the semester, Defendant Northwestern and Defendant Deans instead permitted Plaintiff to be absent from classes yet provided no remote option for attendance. This furthered Plaintiff from access to learning and an education.

70. Because Plaintiff did not have safe access to the classroom and thus could not attend many of her classes, Plaintiff did not feel adequately prepared to take her final exams at the end of the Fall 2023 semester.

71. As a result, Plaintiff's final exams were deferred to the Spring 2024 semester, during which she was forced to independently teach herself an entire year's worth of coursework and complete all exams within a two-week period shortly before graduating in May 2024.

72. In addition, Plaintiff was subject to racists remarks and treatment from Professor Arimond.

73. On February 27, 2024, Plaintiff sent an email to Defendants Dean Osofsky and Spies Roth detailing Professor Arimond's discriminatory, and racists conduct toward the Plaintiff.

74. In the February 27, 2024 email, Plaintiff advised Defendants Dean Osofsky and Spies Roth that Professor Arimond stated that "someone who looks like you probably shouldn't go around saying they're going to blow things up." [1]

75. Professor Arimond's racist statement was in response to Plaintiff indicating that she would blow something up on her computer screen-as in enlarge the object for easier viewing.

76. Moreover, despite Defendant Northwestern's policy prohibiting administration officials from expressing political views, top administrative officials of Northwestern issued public statements condemning Hamas with no mention of Israeli violence against Palestinians.

77. In October 2023 and November 2023, President Schill issued emails condemning Hamas and pro-Palestine activism, incorrectly associating the Palestinian flag with Hamas and banning its presence on campus.

78. Similarly, in October 2023, Defendant Dean Osofsky also issued an email condemning Hamas with no mention of Israeli violence against Palestinians.

79. These public statements made by various officials of Defendant Northwestern, including its President, contributed to the hostile and unsafe environment on the law school campus for Plaintiff and other Palestinian students.

80. Northwestern had actual knowledge of all events, including but not limited to those incorporated above, through detailed written complaints, OCR reports, and direct communications from Plaintiff and other students.

81. Northwestern's failure to investigate, discipline, or offer protection—despite repeated notice—constitutes deliberate indifference under Title VI.

---

[1] See https://www.cbsnews.com/chicago/news/federal-civil-rights-complaint-northwestern-discriminating-palestinian-muslim-students/ (referencing a Title IV complaint against Northwestern University alleging hostile environment and failure to protect Palestinian and Muslim students).

82. These incidents, and Northwestern's lack of response, collectively contributed to a severe hostile environment.[2]

## V.    DAMAGES

83. The unlawful, intentional, willful, deliberately indifferent, and reckless acts and omissions of all Defendants caused Plaintiff Elagha to be improperly publicly humiliated, harassed, attacked, wrongfully accused, terminated from her lucrative job, discriminated against, targeted, and discriminated against for criminal allegations for which she clearly did not commit.

84. As a direct result of Defendants' actions and omissions, Plaintiff Elagha sustained injuries and damages, including but not limited to loss of her reputation, loss of her career opportunity at DLA Piper and similarly situated firms, income, pain and suffering, mental anguish, emotional distress, indignities, degradation, restrictions on all forms of personal freedom including but not limited to diet, sleep, enjoyment, and freedom of speech and expression.

85. As a direct result of Defendants' actions and omissions, Plaintiff Elagha sustained economic injuries and damages including loss of income and loss of career opportunities directly due to the widely disseminated false and defamatory criminal allegations published against her.

86. As a direct result of Defendants' actions and omissions, Plaintiff Elagha sustained injuries and damages, including pain and suffering, personal injuries, public humiliation and degradation, loss of reputation, abuse, and harassment.

---

[2] See https://dailynorthwestern.com/2024/02/29/featured-stories/in-focus/in-focus-northwestern-law-employees-students-allege-toxic-environment-under-dean-osofsky/.

## VI.  CAUSES OF ACTION

### COUNT I:
**Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.**
**Intentional Discrimination Towards Plaintiff and other Palestinian and/or Muslim Middle**
**Eastern Students**

87. Plaintiff incorporates by reference all of the foregoing paragraphs.

88. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

89. Defendant Northwestern receives financial assistance and funding from the United States Department of Education and other federal agencies, and is therefore subject to suit under Title VI of the Civil Rights Act of 1964.

90. Discrimination against Middle Easterners and/or Muslims based on actual or perceived ancestry, race, ethnic characteristics, or national origin – is prohibited under Title VI, as reflected not only in decades of Title VI jurisprudence, but also in the written policies of the Office of Civil Rights of the United States Department of Education.

91. Plaintiff Elagha is and identifies as a Palestinian Muslim, and her status and identification as a Palestinian Muslim brings her within the scope of Title VI's protections. Middle Eastern Law Student Association members include Middle Eastern students and Muslims at Defendant Northwestern, who are also within the scope of Title VI's protections.

92. Title VI prohibits a recipient of federal funds from intentionally treating any individual worse, even in part, because of his or her ancestry, race, ethnic characteristics, or national origin.

93. The acts and omissions of Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford subjected Plaintiff Elagha to discrimination, harassment, and targeting on the basis of her actual and/or perceived Palestinian Muslim ancestry, race, ethnic characteristics, or national origin.

94. Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, had actual notice that such discrimination and harassment, over which Northwestern has substantial control and the authority to remediate, was and continues to be so severe, pervasive, and objectively offensive that it created and continues to create a hostile environment based on Middle Eastern and/or Muslim ancestry, race, ethnic characteristics, or national origin that deprives Plaintiff Elagha full access to Defendant Northwestern's protections, opportunities, and educational programs.

95. Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, intentionally discriminated against Plaintiff Elagha on the basis of her actual and/or perceived Palestinian Muslim ancestry, race, ethnic characteristics, or national origin, as exhibited by Defendant Northwestern and Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford deliberate indifference to the abuse, harassment, and intimidation of Plaintiff Elagha in school, in the media, and through false criminal allegations made by other students, in violation of Title VI.

96. Specifically, Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, clearly and

unreasonably failed, and continue to fail, to cure or otherwise adequately, appropriately, and meaningfully address, ameliorate, or remedy the discrimination against Plaintiff Elagha, discipline Mostow and other students who targeted and made false claims against Plaintiff Elagha in violation of the school policies, and the hostile environment that she and other Middle Eastern and Muslim students are forced to endure at Defendant Northwestern because of their race, ethnic characteristics, or national origin.

97. Defendant Northwestern's and Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford violations of Title VI are the actual, direct, and proximate causes of Plaintiff Elagha's injuries.

98. As a result of the foregoing, Plaintiff Elagha has suffered, and continue to suffer, substantial damages, in amounts to be determined at trial.

99. Plaintiff is entitled to attorneys' fees and costs pursuant to Title VI of the Civil Rights Act of 1964.

**WHEREFORE**, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by Defendants' violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. §2000d *et seq*, and to deter Defendants and others from similar behavior in the future. Plaintiff further prays that this Honorable Court awards her attorneys' fees and costs pursuant to Title VI of the Civil Rights Act of 1964.

### Count II:
### Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.
### Hostile Educational Environment

100. Plaintiff incorporates by reference all of the foregoing paragraphs.

101.    Defendant Northwestern grossly failed to take prompt and effective steps reasonably calculated to end the harassment, eliminate any hostile environment, and prevent the harassment from recurring. Such unlawful deliberate indifference caused Plaintiff Elagha to be subjected to a hostile educational environment and ultimately cost Plaintiff Elagha her lucrative job.

102.    The environment at Defendant Northwestern, which has been rendered hostile for Plaintiff Elagha as a result of her Palestinian and Muslim ancestry, race, ethnic characteristics, or national origin, is sufficiently severe, pervasive, persistent, and offensive such that it deprived Plaintiff Elagha of equal access protection under school policies, and deprived Plaintiff Elagha of the educational opportunities and benefits that Defendant Northwestern provides to non-Middle Eastern and non-Muslim students.

103.    Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, actively and intentionally engage in this pattern of severe and/or pervasive discrimination.

104.    Defendant Northwestern and its administrators, including but not limited to Defendants Hari Osofsky, Susan Michelle Spies Roth, and George Langford, also directly and intentionally discriminated against Plaintiff Elagha, with her actual or perceived Palestinian and Muslim ancestry, race, ethnic characteristics, or national origin a substantial or motivating factor in Defendant Northwestern's actions.

105.    Defendant Northwestern unreasonably failed to act to protect Plaintiff. Where it did act, it acted grossly inadequately and discriminatorily, and with leniency, tolerance, deliberate indifference, and/or unjustifiable delay, in applying its policies to known or reported incidents involving false claims and false criminal accusations, harassment, or

where the victim or complainant is a Middle Eastern or Muslim Student, including Plaintiff Elagha. As detailed above, Defendant Northwestern's actions, inactions, and conduct were, and continue to be, intended to treat Plaintiff Elagha differently as a Palestinian Muslim student as compared to other similarly situated non-Middle Eastern or non-Muslim students.'

106.     Defendant Northwestern's actions and inactions failed to properly protect Plaintiff Elagha from harassment and false claims made by other students, failed to enforce policies designed to prevent false allegations and harassment, and failed to take any reasonable step to prevent a knowingly false statement and accusation from being published against Plaintiff.

107.     Defendants' actions and inactions created and perpetuated a hostile educational environment that was so severe, pervasive, and objectively offensive that it deprived Plaintiff of meaningful access to her legal education.

108.     Plaintiff was subjected to repeated harassment, including public doxing, threats from fellow students, racist and Islamophobic remarks from faculty, unequal application of University policies, and false criminal accusations, all based on her Palestinian and Muslim identity.

109.     As a result of this hostile environment, Plaintiff was unable to safely attend classes, was denied remote accommodations, and ultimately had to self-teach an entire year's worth of coursework and complete her final exams in an accelerated two-week period.

110.     Northwestern had actual knowledge of the discriminatory conduct through Plaintiff's formal complaints, repeated written reports, and direct communications with senior administrators.

111.    Despite this knowledge, Defendants failed to take any meaningful remedial action, refusing to discipline students or faculty, failing to investigate safety threats, and neglecting to publicly correct false and defamatory allegations made against Plaintiff.

112.    Defendants further contributed to the hostile environment through public statements that condemned Hamas while omitting Israeli violence, in violation of University policy, and by failing to support Palestinian students in the same manner as other affinity groups.

113.    Defendants' ongoing inaction, selective enforcement of policies, and tolerance of discrimination amount to deliberate indifference under Title VI and directly denied Plaintiff the full and equal benefit of her federally funded education.

114.    Defendant Northwestern clearly knew of the harassment and false criminal claims and accusations made by other students towards Plaintiff through repeated documentation.

115.    Defendant Northwestern failed to take any reasonable step to end the harassment, punish the harassment, and protect Plaintiff Elagha from the damages suffered as a result of the accusations against her after repeated warnings to Defendant Northwestern.

116.    Defendant Northwestern's violations of Title VI are the actual, direct, and proximate causes of Plaintiff Elagha's injuries.

117.    As a result of the foregoing, Plaintiff Elagha has suffered, and continues to suffer, substantial damages, in amounts to be determined at trial.

118.    Plaintiff is entitled to attorneys' fees and costs pursuant to Title VI of the Civil Rights Act of 1964.

**WHEREFORE**, Plaintiff prays this Honorable Court enter a judgment against all Defendants for actual and punitive damages sufficient to compensate for the damages caused by

Defendants' violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. §2000d *et seq*, and to deter Defendants and others from similar behavior in the future. Plaintiff further prays that this Honorable Court awards her attorneys' fees and costs pursuant to Title VI of the Civil Rights Act of 1964.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff YASMEEN ELAGHA prays as follows:

A. That the Court award compensatory, consequential, and punitive damages to Plaintiff against all Defendants, jointly and severally, in an amount to be determined at trial;

B. Reasonable attorneys' fees, costs of suit, and expenses;

C. Pre-judgment interest and post-judgment interest at the maximum rate allowable by the law; and

D. For all other relief and damages to which Plaintiff may be entitled.

Dated: June 3, 2025                    Respectfully submitted,

By: */s/ Farah Chalisa*
FARAH CHALISA
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Tel: 224-392-7822
farah@naserlegal.com

WALEED NASER
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Office: 312-248-2501
Direct: 872-265-8490
waleed@naserlegal.com

AHMAD ZAHER
**ADVANTA LAW FIRM, PLC**
23800 Northwestern Hwy, Suite 220,
Southfield, MI 48075
Tel: 1.248.281.6299
Fax: 1.248.864.8554

azaher@advantalaw.com

SHIRAZ K. KHAN
**THE SHIRAZ LAW FIRM, PLLC**.
30400 Telegraph Rd. Suite 380
Bingham Farms, MI. 48025
Tel: (248) 419-0678
Fax: (248) 817-4833
info@shirazlawfirm.com


**ATTORNEYS FOR**
**YASMEEN ELAGHA**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**YASMEEN ELAGHA**

        *Plaintiff,*

v.

**NORTHWESTERN UNIVERSITY,**
**HARI OSOFSKY in her official capacity as**
**Dean of Northwestern University School of Law,**
**SUSAN MICHELLE SPIES ROTH, in her official capacity as**
**Dean of students at Northwestern University School of Law,**
**GEORGE LANGFORD, in his official capacity as associate**
**Dean at Northwestern University School of Law,**

        *Defendants.*

**Case No: 1:24-cv-12066**
**Hon. Charles P. Kocoras**
**JURY TRIAL DEMANDED**

---

## DEMAND FOR JURY TRIAL

    **NOW COMES**, Plaintiff, Yasmeen Elagha, by and through her counsel, Advanta Law, PLC, & The Shiraz Law Firm, PLLC., Waleed Naser, and Farah Chalisa as local counsel, and pursuant to Fed.R.Civ.P. 38, hereby demands a jury trial on all the issues so triable by a jury as pled in Plaintiff's second amended complaint.

Dated: June 3, 2025

Respectfully submitted,

By: */s/ Farah Chalisa*
FARAH CHALISA
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Tel: 224-392-7822
farah@naserlegal.com

WALEED NASER
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606

Office: 312-248-2501
Direct: 872-265-8490
waleed@naserlegal.com

AHMAD ZAHER
**ADVANTA LAW FIRM, PLC**
23800 Northwestern Hwy, Suite 220
Southfield, MI 48075
Tel: 1.248.281.6299
Fax: 1.248.864.8554
azaher@advantalaw.com

SHIRAZ K. KHAN
**THE SHIRAZ LAW FIRM, PLLC.**
30400 Telegraph Rd. Suite 380
Bingham Farms, MI. 48025
Tel: (248) 419-0678
Fax: (248) 817-4833
info@shirazlawfirm.com

**ATTORNEYS FOR
YASMEEN ELAGHA**

## CERTIFICATE OF SERVICE

I, FARAH CHALISA, certify that the foregoing document(s) was filed and served via the Court's electronic filing system this 3rd day of June, 2025, which will automatically send notification of such filing to all attorneys and parties of record registered electronically.

Dated: June 3, 2025                    Respectfully submitted,

By: */s/ Farah Chalisa*
FARAH CHALISA
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Tel: 224-392-7822
farah@naserlegal.com