**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

YASMEEN ELAGHA,
Plaintiff,

v.

NORTHWESTERN UNIVERSITY, et al.,
Defendants.

CASE NO.: 1:24-CV-12066

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Plaintiff Yasmeen Elagha, a former student at Northwestern University's Northwestern Pritzker School of Law, has sued Northwestern University ("Northwestern" or "the University"), Hari Osofsky, Susan Michelle Spies Roth, and George Langford (collectively, the "Individual Defendants," and with the University, "Defendants") for (1) intentional discrimination under Title VI, and (2) hostile educational environment under Title VI. Despite having an opportunity to correct the pleading deficiencies in the First Amended Complaint ("FAC"), Plaintiff's Second Amended Complaint ("SAC") fails to allege facts which, if true, would support any claim for relief. As such, her claims against Defendants should be dismissed in their entirety with prejudice.

***First***, the Court should dismiss Plaintiff's Title VI claims against the Individual Defendants because Title VI does not provide for individual liability.

***Second***, Plaintiff's allegations of harassment in support of her hostile environment claim are fatally deficient, since she fails to sufficiently allege that (a) the harassment was severe or pervasive, (b) it arose within the University's programs and activities, (c) she was deprived of any educational benefits, (d) the University had actual knowledge of certain incidents of harassment stemming from the November 2023 protest, or (e) the University was deliberately indifferent.

***Third***, Plaintiff fails to sufficiently allege any facts that would support a conclusion that the University intentionally discriminated against her on the basis of race, color, or national origin.

***Fourth***, to the extent Plaintiff's Title VI claims are premised on her allegations that the University banned the presence of the Palestinian flag on campus and issued a statement condemning Hamas without mentioning violence against Palestinians, her claims fail. In making these allegations, Plaintiff relies on characterizations of public, written statements, which are in turn integral to her allegations. Those public documents belie her allegations. As a result, those allegations are not well-pleaded or entitled to the presumption of truth.

## ALLEGED FACTS

Plaintiff was a student at the University's Northwestern Pritzker School of Law between Fall 2021 and Spring 2024. Doc. # 38, ("Compl.") at ¶ 11. Plaintiff alleges that during a November 2023 protest at the law school that she participated in, several law students recorded protestors without their consent, and community members made threatening remarks about the protestors' future job prospects. *Id.* at ¶¶ 14, 16. Following the protest, a fellow law student exposed Plaintiff's scholarship status in a tweet that was later deleted, another law student ("A.K.") publicly stated she was "personally gunning for" Plaintiff and "doxed" Plaintiff, and another law student ("M.M.") allegedly falsely reported to the University Police Department ("NUPD") that Plaintiff assaulted, battered, and harassed her at the November 2023 protest. *Id.* at ¶¶ 18, 22, 30, 33.

The SAC alleges M.M.'s allegations were false and the report caused Plaintiff to lose her job offer with DLA Piper (which is not a party to this action). *Id.* at ¶ 56. Plaintiff generally accuses Defendants of failing to protect Plaintiff from the publication and dissemination of M.M.'s report. *Id.* at ¶¶ 41, 62. Plaintiff further alleges her professor made a racist remark to her during class. *Id.* at ¶ 74. Although Plaintiff alleges she made complaints to the University regarding "harassment

and targeting" she faced by other students, she fails to provide any facts related to the alleged harassment or targeting from which the Court could determine whether her conclusory allegations are supported. *Id.* at ¶ 21.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation and internal quotations omitted). On review of a motion under Rule 12(b)(6), the district court accepts the facts in the complaint as true, views them in the light most favorable to the plaintiff, and draws reasonable inferences in plaintiff's favor, but need not accept unsupported conclusions of law. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

## ARGUMENT

### I. The Individual Defendants Are Not Proper Defendants To Title VI Claims.

"[I]ndividuals cannot be liable under Title VI." *Bryant v. Oak Forest High Sch. Dist. 228, Bd. of Educ.*, 2007 WL 2738544, at *3 (N.D. Ill. Sept. 12, 2007). Instead, the appropriate party to be sued is the entity in receipt of the federal grant money. *See Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997) ("Title IX claim[s] can only be brought against a grant recipient and not an individual.").[1] Because individuals cannot be defendants under Title VI, the Title VI claims against the Individual Defendants must be dismissed with prejudice.

### II. The SAC Fails To State Title VI Claims.[2]

[1] *See Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014) ("Title VI and Title IX are so similar that a decision interpreting one generally applies to the other.").

[2] For purposes of Plaintiff's Title VI claims, the Court should disregard the allegations in Plaintiff's Second Amended Complaint that are unrelated to Plaintiff. Plaintiff's lengthy allegations regarding incidents that happened to other students under different circumstances are irrelevant to whether the University discriminated against Plaintiff on the basis of her race, color, or national origin. *See, e.g., Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Prolixity is a bane of the legal profession" and "[f]at in a complaint can be ignored."); *see also U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Surplusage can and should be ignored.").

### A. Plaintiff's Allegations of Harassment in Support of Her Hostile Environment Claim Are Fatally Deficient.

To establish a hostile educational environment under Title VI, a plaintiff must adequately demonstrate, as relevant here: (1) the alleged hostile environment was so severe, pervasive, and objectively offensive that it deprived her of access to educational benefits; (2) the school had actual knowledge of the conduct; and (3) the school was deliberately indifferent towards the conduct. *Canel v. Art Inst. of Chi.*, 23 CV 17064, 2025 WL 564504, at *5 (N.D. Ill. Feb. 20, 2025). To state a claim, "[s]chool officials must have had 'actual knowledge' of harassment 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Galster*, 768 F.3d at 613–14 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). To have actual knowledge of an incident, school officials must have witnessed it or received a report of it. *Gabrielle M. v. Park Forest–Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 823–24 (7th Cir. 2003). "To impose liability, school officials' response to known harassment also must have been 'clearly unreasonable in light of the known circumstances.'" *Galster*, 768 F.3d at 614 (quoting *Davis*, 526 U.S. at 648).

#### 1. Plaintiff does not allege severe, pervasive, and objectively offensive harassment.

In determining what constitutes severe and pervasive harassment, courts in the Seventh Circuit consider the "totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with . . . the student's educational opportunities." *Hendrichsen v. Ball State Univ.*, 107 Fed. Appx. 680, 684–85 (7th Cir. 2004) (holding professor's actions towards student were not severe or pervasive enough because the inappropriate behavior lasted a few weeks, it did not physically threaten the student, and the student admitted her academic performance was not affected by the professor's actions). "As a general rule, unless the conduct is quite severe, a single

incident or isolated incidents" cannot create a hostile educational environment. *Adusumilli v. Ill. Inst. of Tech.*, No. 97 C 8507, 1998 WL 601822, at **1, 4 (N.D. Ill. Sept. 9, 1998) (holding student's allegation of sexual harassment against classmate was not severe or pervasive because student alleged a single instance of physical harassment).

"The Supreme Court has set a high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment." *Galster*, 768 F.3d at 617 (citing *Davis*, 526 U.S. at 643). "School officials are given broad latitude to resolve peer harassment and are liable only in 'certain limited circumstances.'" *Id.* (quoting *Davis*, 526 U.S. at 643). "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* In fact, the "response does not have to be perfect or even successful." *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 543 (7th Cir. 2022). As the Seventh Circuit recently explained, a "response will suffice to avoid institutional liability so long as it is not so unreasonable, under all the circumstances, as to constitute an 'official decision' to permit discrimination." *Id*.

As this Court noted in its memorandum opinion dismissing Plaintiff's initial hostile educational environment claim, Plaintiff's allegations of harassment do not satisfy the "severe and pervasive" element of her claim. Doc. # 36 at 10. Plaintiff's SAC likewise fails to allege harassment that was severe, pervasive, and objectively offensive. As an initial matter, it is not clear from her allegations what conduct Plaintiff contends created a hostile environment. Similar to her allegations in the FAC, Plaintiff's SAC principally alleges that during a November 2023 protest at the law school that she participated in, several law students recorded protestors without their consent, and community members made threatening remarks about the protestors' future job prospects. Doc. # 38, ¶¶ 14, 16. Following the protest, a fellow law student exposed Plaintiff's scholarship status in a tweet that was later deleted, another law student publicly stated she was

"personally gunning for" Plaintiff and "doxed" Plaintiff, and another law student falsely reported to NUPD that Plaintiff assaulted, battered, and harassed her at the November 2023 protest. *Id.* at ¶¶ 18, 22, 30, 33. In addition, the SAC newly alleges Plaintiff's professor made a racist remark to Plaintiff during class. *Id.* at ¶ 74. While Plaintiff contends she made complaints to the University regarding "harassment and targeting" she faced by other students, she does not describe what the harassment was, where it took place, or its frequency. This makes evaluating her claims under the governing rubric impossible. *See Landau, et al. v. Corp. of Haverford Coll.*, CV 24-2044, 2025 WL 1796473, at *1 (E.D. Pa. June 30, 2025) (dismissing Title VI claim because plaintiffs failed "to proceed with clarity and specificity as to who experienced what and when").

This Court dismissed Plaintiff's hostile educational environment claim in Plaintiff's FAC, noting that "[i]n the education context, courts have required consistent and/or severe misconduct, such as physical threats, the use of racial epithets, violence, or sexual contact and abuse at school to establish a hostile environment claim." Doc. # 36 at 10. Plaintiff's SAC suffers from the same pleading deficiencies. The kinds of environments sufficiently severe and pervasive to support a hostile environment claim are markedly different from the allegations Plaintiff makes. *See, e.g.*, *I.G. by & through Grunspan v. Jefferson Cnty. Sch. Dist. through Bd. of Educ. For Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 995 (D. Colo. 2020) (finding severe and pervasive conduct where plaintiff alleged repeated defacement of plaintiff's father's car and school property with swastikas, derogatory jokes, and remarks about plaintiff's Jewish heritage, and that "[f]rom September through the remainder of 2016, students at the School 'were giving Nazi salutes and verbally stating "Heil Hitler" as they walked through the halls during class breaks.'"); *T.E. et al. v. Pine Bush Cent. Sch. Dist. et al.*, 58 F. Supp. 3d 332, 339–50 (S.D.N.Y. 2014) (describing alleged antisemitic conduct occurring over the course of years, including physical and verbal threats,

school property vandalized with swastikas, and constant harassment such as the use of derogatory terms about plaintiff's Jewish heritage); *accord Gul-E-Rana Mirza v. The Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 860 (N.D. Ill. 2009) (finding severe and pervasive conduct where plaintiff alleged co-worker used racial epithets and supervisor regularly singled out plaintiff and granted preferential treatment to non-Pakistani, non-Muslim co-workers).

Plaintiff's allegations of harassment are not qualitatively similar to the type of conduct found to establish the requisite severity or pervasiveness, as the foregoing authorities illustrate. Plaintiff does not describe any harassment with specificity. She does not allege, for example, that she was repeatedly assaulted physically or that she experienced frequent and consistent threats or racial epithets, or anything that approaches that standard. As a result, Plaintiff's allegations do not support a conclusion that she was subjected to severe or pervasive harassment.

**2. Plaintiff fails to allege she was deprived of any educational benefits.**

Nor does Plaintiff sufficiently allege she was deprived of any educational benefits. "Examples of a negative impact on access to education may include dropping grades, becoming homebound or hospitalized due to harassment." *Gabrielle M.*, 315 F.3d at 823 (internal citation omitted); *see Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010) (plaintiff not deprived of access to education where her "grades did not suffer, she was not extensively absent from school, she graduated with a class rank of 27 out of over 500, and thereafter enrolled in college.").

In its memorandum opinion, this Court held Plaintiff's sole allegation that she lost a career opportunity failed to adequately support that she was deprived of any educational benefits during the harassment. Doc. #36 at 12. Plaintiff's SAC also fails to meet this threshold. Plaintiff alleges she "did not feel safe attending her classes on campus" due to "the hostile and unsafe learning environment and the personal losses she endured," but "personal losses" are not a Title VI matter.

While her allegation that she felt unsafe attending classes might meet the bar if it were supported by facts that made it objectively reasonable, it is not supported.

Plaintiff has not sufficiently alleged she was deprived of any educational benefits. She fails to allege that her academic performance suffered as a result of the foregoing allegations. To the contrary, as this Court noted, the fact that Plaintiff "graduated with honors and is currently a licensed, practicing attorney" undercuts her claim. Doc. # 36 at 12. Thus, Plaintiff has not demonstrated she was deprived of any educational benefits.

**3. Plaintiff fails to allege the University had actual knowledge of certain allegations of harassment.**

Additionally, Plaintiff does not allege the University had actual knowledge of several purported incidents of harassment, limiting the bases on which Plaintiff could hope to meet all the elements of her claim. To have actual knowledge of an incident, school officials must have witnessed it or received a report of it. *Gabrielle M.*, 315 F.3d at 823–24. To hold the University liable under Title VI, Plaintiff must establish that "a school official who possessed the requisite control over the situation [] had actual knowledge of, and [was] deliberately indifferent to, the alleged harassment." *Sojda on behalf of Sojda v. Chi. Bd. of Educ.*, No. 23 CV 4231, 2024 WL 1579065, at *2 (cleaned up); *see also Davis*, 526 U.S. at 646–47 (holding that actual—not constructive—notice is the standard in peer-harassment cases). "Regarding actual knowledge, [s]chool administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Id.*

With respect to Plaintiff's allegations stemming from the November 2023 protest, Plaintiff fails to sufficiently allege the University had actual knowledge of these instances of harassment. Rather, Plaintiff alleges in conclusory fashion that she "made complaints in writing to the [University]" regarding alleged "harassment and targeting she faced" and that she and other

students "met with administrators of [] Northwestern to express their safety concerns" following the protest. Doc. # 38, ¶¶ 19, 21. But Plaintiff critically fails to identify the specific University personnel or "administrators" that she met with or the particular "harassment and targeting" or "safety concerns" that were reported. *Id.* Without such pleading, neither the defense nor the Court can assess whether Plaintiff put an appropriate person at the University on notice of her claims sufficient to trigger potential liability. *See Sojda*, No. 23 CV 4231, 2024 WL 1579065 at *2 (holding a plaintiff must establish that "a school official who possessed the requisite control over the situation [] had actual knowledge of, and [was] deliberately indifferent to, the alleged harassment"). As pleaded, Plaintiff's allegations are insufficient to establish the University had actual notice of these purported incidents of harassment.

**4. Plaintiff fails to allege the University was deliberately indifferent to any alleged harassment.**

Most importantly, Plaintiff fails to allege facts showing the University was deliberately indifferent to any alleged harassment. "To impose liability, school officials' response to known harassment also must have been 'clearly unreasonable in light of the known circumstances.'" *Galster*, 768 F.3d at 614. "The Supreme Court has set a high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment." *Galster*, 768 F.3d at 617. "School officials are given broad latitude to resolve peer harassment and are liable only in 'certain limited circumstances.'" *Id.* "[C]ourts should refrain from second-guessing disciplinary decisions made by school administrators." *Id.*

In fact, the "response does not have to be perfect or even successful." *C.S.*, 34 F.4th at 543. As the Seventh Circuit recently explained, a "response will suffice to avoid institutional liability so long as it is not so unreasonable, under all the circumstances, as to constitute an 'official decision' to permit discrimination." *Id*. Even "[a] negligent response is not unreasonable, and

therefore will not subject a school to [Title VI] liability." *Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 912 (7th Cir. 2020) (citation omitted). Moreover, a plaintiff is not entitled to her specific remedy of choice. *See Galster*, 768 F.3d at 621 (holding plaintiffs are not "entitle[d] . . . to any specific remedial measure"); *see also Landau, et al.*, CV 24-2044, 2025 WL 1796473, at *8 ("The facts as pleaded reflect that a [University] administrator listened and responded to the prospective student's concerns and encouraged him to seek recourse through an established mechanism. Plaintiffs would have preferred a different response, but once again that does not support deliberate indifference.").

As this Court previously held, Plaintiff's "claim falters on the deliberative indifference element." Doc. # 36 at 12. Although Plaintiff alleges that she filed two OCR reports against a fellow student ("A.K.") in November 2022 and November 2023 after A.K. stated that she was "personally gunning for" Plaintiff and began "doxing" her, Plaintiff fails to allege that Northwestern did not address Plaintiff's complaints. Doc. # 38, ¶¶ 22, 33. Rather, Plaintiff simply claims that she did not receive the remedy of her choice: a no-contact directive against A.K. *Id.* at ¶¶ 23, 34. Likewise, Plaintiff alleges that she did not feel safe attending her classes on campus, and instead of granting her a remote learning accommodation, the University allowed Plaintiff to be excused from her classes. *Id.* at ¶¶ 67–69. However, as the Seventh Circuit has held, "school officials are given broad latitude to resolve peer harassment," and plaintiffs are not entitled to their remedy of choice. *Davis*, 526 U.S. at 643, 648 (holding that school administrators are not required to engage in any particular type of disciplinary action). Excusing Plaintiff from class is not a clearly unreasonable response, even if it is not the response Plaintiff preferred.

What's more, Plaintiff concedes in her SAC that the University *did* respond to her concerns about the underlying incident that Plaintiff did actually raise by sending letters to DLA Piper and the Illinois Bar at her request (Doc. # 38, ¶¶ 55, 58), undermining her claim that the University

was deliberately indifferent to a known hostile environment (the existence of which of course she has not shown, either). In short, because Plaintiff alleges none of the elements of a hostile educational environment under Title VI, her claim should be dismissed.

**B. The SAC Does Not Plead The Elements to Show Intentional Discrimination.**

To state a claim for intentional discrimination under Title VI, a plaintiff must adequately allege: (1) she has been intentionally discriminated against on the grounds of race, color, or national origin; and (2) the defendants are recipients of federal financial assistance. *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015). A plaintiff can show intentional discrimination directly or indirectly. *Totten v. Benedictine Univ.*, No. 20 C 6107, 2021 WL 3290926, at *9 (N.D. Ill. Aug. 2, 2021).

Under the "direct method," a plaintiff may establish intentional discrimination through evidence relating "to the motivation of the decisionmaker responsible for the contested decision." *Id.* "Direct evidence typically requires an admission of discriminatory animus." *Lubavitch-Chabad of Ill., Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013) (quoting *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009)). "[A] plaintiff may also produce circumstantial evidence that establishes . . . discriminatory motive through a longer chain of inferences." *Id.* To show intentional discrimination under the "indirect method," a plaintiff must show that she "(1) is a member of a protected class; (2) met the school's legitimate expectations; (3) suffered an adverse action; and (4) was treated less favorably than similarly situated individuals outside of the protected class." *Totten*, No. 20 C 6107, 2021 WL 3290926, at *10.

Plaintiffs are required to allege comparable discrimination at the pleading stage. *See id.* ("To demonstrate discrimination under the indirect method, Totten must show that she. . . was treated less favorably than similarly situated individuals outside of the protected class."); *see also Does 1-2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 581 (8th Cir. 2021) ("[T]he Amended

Complaint "does not allege facts showing that similarly situated [alleged comparators] were treated differently."); *Resendez v. Prance*, No. 3:16-CV-862-JVB-MGG, 2018 WL 3275615, at *6 (N.D. Ind. Jan. 26, 2018) (dismissing complaint where the plaintiff presented "a small sample of dissimilar situations that cannot on their own support an inference of discrimination"). To be similarly situated, the comparator must be directly comparable to the plaintiff in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

In analyzing this claim in Plaintiff's FAC, this Court concluded that Plaintiff's allegations that she made multiple complaints regarding the harassment and the University either failed to respond or responded differently to any of those complaints permits an inference of intentional discrimination. Doc. #36 at 9. In so doing, the Court relied upon *Anthony v. O'Fallon Twp. High Sch. Dist. 203 Bd. of Educ.*, 712 F. Supp. 3d 1109, 1117 (S.D. Ill. 2024). However, *Anthony* is distinguishable from the instant case on several critical grounds.

In *Anthony*, a case involving discrimination by a vice principal rather than peer discrimination, the mother of a ninth-grade student sued a high school for intentional discrimination under Title VI following a racist remark by the school's vice principal. 712 F. Supp. 3d 1109, 1117 (S.D. Ill. 2024). In that case, the plaintiff alleged that in a meeting between the vice principal, her daughter, and other students, the vice principal commented that "[a]ll the dark-skinned people are causing all of the problems lately." *Id.* at 1116. Once the plaintiff learned of the incident, she contacted the principal that same day. *Id.* Rather than conducting an investigation, the principal informed the vice principal of the complaint. *Id.* The plaintiff also called the superintendent that same day, and he stated that the vice principal "could not have made a racist, harassing statement" and explicitly refused to conduct an investigation despite multiple requests from plaintiff and the parents of other students. *Id.* The court held that the plaintiff's allegations

were sufficient to allege intentional discrimination. *Id.* at 1119. In particular, the court held that the plaintiff's pleading that that the vice principal made a disparaging remark to her daughter and the high school wholly failed to investigate the matter when it was escalated to school officials by the plaintiff and the parents of other students "produces an inference of discriminatory intent." *Id.*

Here, as opposed to the harassment by a high-ranking school official at issue in *Anthony*, Plaintiff's allegations primarily involve peer-on-peer harassment, and the Supreme Court has set a much higher threshold for students seeking to hold universities liable for peer-on-peer harassment. *Galster*, 768 F.3d at 617 ("The Supreme Court has set a high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment.") (citation omitted). As this Court noted, Plaintiff "does not allege any blatant discriminatory behavior by Defendants." Doc. #36 at 9. In contrast, the plaintiff in *Anthony* alleged explicit discriminatory behavior by the school. In particular, she alleged that despite multiple complaints from her as well as other parents, the principal and superintendent refused to believe the vice principal had made a disparaging comment and explicitly refused to conduct an investigation. Plaintiff's allegations are markedly different from those in *Anthony* because she does not allege any similar express discrimination by the University. The indicia of discrimination present in *Anthony* simply are not present here, and without any comparator evidence, Plaintiff's mere conclusory allegation that an act by the University was "because of" her ethnicity is not supported. As a result, Plaintiff's allegations fail to meet the high threshold to state a claim for intentional discrimination.

### C. Plaintiff's Allegations That The University Prohibited The Display of The Palestinian Flag on Campus and Issued a Statement Condemning Hamas Without Mentioning Violence Against Palestinians is Not Entitled to The Presumption of Truth.

Insofar as Plaintiff's Title VI claims rely on her allegations that the University banned the Palestinian flag from being displayed on campus and issued a statement condemning Hamas

without mentioning violence against Palestinians, her claims fail because the Court is permitted, even on a Rule 12 motion, to conclude that her allegation is factually erroneous. While a plaintiff's allegations are entitled to the presumption of truth at the motion to dismiss stage, that presumption does not apply where the plaintiff's allegations are inconsistent with a document that is material to, but not attached to, the pleading itself. *Guar. Res. Lending, Inc. v. Int'l Mortg. Cntr., Inc.*, 305 F.Supp.2d 846, 852 (N.D. Ill. 2004).

A defendant may attach to a motion to dismiss documents that are "referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). When that is the case, those documents are to be treated as part of the pleadings and the court does not need to convert the motion to dismiss to a motion for summary judgment. *Id*. Where the contents of the attached document conflict with the allegations of the complaint, the document controls unless there is a dispute as to the document's authenticity or completeness. *Ctrs. v. Centennial Mortg. Inc*., 398 F.3d 930, 933 (7th Cir. 2005). Indeed, and while the allegations of a pleading are ordinarily entitled to the presumption of truth, that presumption evaporates where the allegations in the pleading are inconsistent with the document. *Guar. Res. Lending, Inc.*, 305 F. Supp. 2d at 852.

Here, Plaintiff's allegation regarding the University's ban on the display of the Palestinian flag involves troubling and material mischaracterizations. Plaintiff alleges that "[i]n October 2023 and November 2023, President Schill issued emails condemning Hamas and pro-Palestine activism, incorrectly associating the Palestinian flag with Hamas and banning its presence on campus." Doc. # 38, ¶ 77. The emails, however, contain no such proscription. The October 2023 emails and November 4, 2023 emails do not reference the Palestinian flag or any other flag. *See*

October 2023 and November 4, 2023 emails attached as **Group Exhibit A**.[3] In the November 13, 2023 email, President Schill called for the rejection of "statements or banners that significant parts of our community interpret as promoting murder and genocide, such as "flying flags associated with Hamas and banners with the slogan 'From the River to the Sea.'" *See* November 13, 2023 email attached as **Exhibit B**. President Schill's email does not ban the display of the Palestinian flag on campus. Rather, it calls for University members to reject flags associated with Hamas. *Id.*

Similarly, although Plaintiff alleges that in October 2023, Dean Osofsky "issued an email condemning Hamas with no mention of Israeli violence against Palestinians," the email belies her claim. Doc. # 38, ¶ 78. To the contrary, Dean Osofsky's email states "I unequivocally condemn the atrocities committed by Hamas. I also am deeply concerned for every person impacted by the horrific violence and abhor antisemitism, islamophobia, and every form of hate." *See* October 12, 2023 email attached as **Exhibit C**.[4]

As such, Plaintiff's characterizations of President Schill's and Dean Osofsky's emails are misleading, demonstrably false, and not entitled to the presumption of truth. As a result, these particular allegations lend no support to her claims (and, though perhaps immaterial at the motion to dismiss phase, diminish the plausibility of her other allegations as well).

**CONCLUSION**

WHEREFORE, Defendants respectfully request that this Court enter an order dismissing Plaintiff's Second Amended Complaint against them with prejudice and granting such further relief as this Court deems equitable and just.

---

[3] President Schill's emails are publicly available at https://www.northwestern.edu/leadership-notes/#author=Michael_Schill (last accessed July 15, 2025).

[4] Dean Osofsky's emails are publicly available at https://www.law.northwestern.edu/about/news/leadership-messages/ (last accessed July 15, 2025).

Dated: July 15, 2025

Respectfully submitted,

NORTHWESTERN UNIVERSITY, HARI OSOFSKY, SUSAN MICHELLE SPIES ROTH, AND GEORGE LANGFORD

By: *Joshua W. B. Richards*
One of their attorneys

Casey Grabenstein (casey.grabenstein@saul.com)
Shivani Govani (shivani.govani@saul.com)
Saul Ewing LLP
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
(312) 876-7100

Joshua W.B. Richards (joshua.richards@saul.com) – *pro hac vice*
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7777

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on July 15, 2025, he caused the foregoing to be filed electronically with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which sent electronic notification to all parties who have appeared and are registered as CM/ECF participants in this matter.

/s/ *Joshua W. B. Richards*