**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

YASMEEN ELAGHA,
               Plaintiff,

     v.

NORTHWESTERN UNIVERSITY,
               Defendant.

CASE NO.: 1:24-CV-12066

**DEFENDANT NORTHWESTERN UNIVERSITY'S MOTION FOR
<u>JUDGMENT ON THE PLEADINGS</u>**

Defendant Northwestern University ("Northwestern" or "the University") moves under Rule 12(c) for judgment on the pleadings on all counts in Plaintiff Yasmeen Elagha's ("Plaintiff") Third Amended Complaint ("TAC"). In support of its Motion, Northwestern states as follows:

**<u>INTRODUCTION</u>**

Plaintiff's TAC—now her fourth attempt to state a viable claim—still does not allege facts capable of supporting liability under Title VI. The pleadings establish Plaintiff has not plausibly pleaded either a hostile educational environment or intentional discrimination. *First*, Plaintiff's hostile environment claim fails on multiple independent grounds. Most clearly, the TAC does not allege severe, pervasive, and objectively offensive harassment. It also does not plausibly allege facts that meet the high standard of "deliberate indifference" because the pleadings show Northwestern investigated reported incidents, evaluated evidence, complied with federal reporting obligations, and took affirmative steps to address Plaintiff's concerns.

*Second*, Plaintiff's intentional discrimination claim fails because she does not identify any adverse action or any valid comparator who was treated more favorably. Instead, her generalized examples—campus-wide messaging after October 7, student-event space allocations, enforcement

of the poster policy, and removal of an Instagram story image—reflect no more than neutral action and policy enforcement, not discrimination based on race, national origin, or religion.

The pleadings demonstrate that Northwestern acted lawfully and reasonably at every turn. It investigated Plaintiff's allegations, found no policy violations, complied with federal reporting requirements, enforced neutral policies, provided an academic accommodation, and affirmatively clarified third party accusations against Plaintiff to her benefit. As this Court has twice concluded, the pleadings foreclose any plausible inference of intentional discrimination or deliberate indifference. As a result, Northwestern is entitled to judgment under Rule 12(c).

## **BACKGROUND**

Plaintiff attended Northwestern University's Pritzker School of Law from August 2021 through May 2024, when she graduated. Doc. #54 at ¶¶ 5, 8. She asserts that during her enrollment she experienced discrimination based on her race, national origin, and religion. Doc. #54 at ¶ 10. Her claims arise from a series of interactions with other students and from Northwestern's responses to events occurring during the 2022–2023 and 2023–2024 academic years.

In November 2022, after Plaintiff sent a Palestine-related email to the law school student body, another student stated she was "personally gunning for" Plaintiff and engaged in unwanted communications toward Plaintiff. *Id.* at ¶¶ 15–16. Plaintiff submitted a report to the University and requested, but did not receive, a no-contact directive. *Id.* at ¶¶ 17, 20, 22. Plaintiff also alleges another student later published inflammatory social media posts advocating violence against Palestinians and that she requested mediation in response. *Id.* at ¶¶ 15–16, 34. Plaintiff further alleges one professor referenced the treatment of pro-Palestine law students elsewhere, another professor imposed heightened expectations in coursework, and a speaker at a Jewish Law Student Association ("JLSA") event made statements she perceived as hostile. *Id.* at ¶¶ 46–47, 130, 150.

Following the outbreak of hostilities in Gaza in October 2023, Northwestern's then-President announced the formation of an Advisory Committee on Preventing Antisemitism and Hate, stating the committee's focus was "not just on stemming the growth of antisemitism, but also hate directed to other groups such as our students of Palestinian descent." Doc. #62 at ¶ 30. Additional campus-wide communications expressed concern for the loss of life affecting both Israelis and Palestinians and condemned antisemitism, Islamophobia, and racism. *Id.* at ¶¶ 30–31.

On November 16, 2023, Plaintiff organized a silent protest at the law school, which other individuals photographed and recorded. Doc. #54 at ¶¶ 51, 53; Doc. #62 at ¶¶ 51, 53. Around the same time, Plaintiff reported her University email address was disclosed to non-University entities and her scholarship award was disseminated online. Doc. #54 at ¶ 77, 79, 82; Doc. #62 at ¶ 79. Photography and videography during public demonstrations are not prohibited by University policy, and a student's University email address and "degrees and awards received" constitute directory information under FERPA and University policy. Doc. #62 at ¶¶ 77, 79.

During the protest, Plaintiff and another student inadvertently brushed shoulders. Doc. #54 at ¶¶ 60–61. A report was later made to the Northwestern University Police Department ("NUPD") against Plaintiff about the incident. Doc. #62 at ¶¶ 71. Information from the report was posted on Northwestern's Daily Crime Blotter as required by the Jeanne Clery Campus Safety Act,[1] but the blotter entry did not include any identifying information about Plaintiff. *Id.* at ¶¶ 74–75. Northwestern reviewed available video footage and determined no policy violation had occurred. *Id.* at ¶¶ 71–72. Media outlets later published articles referencing the report. Doc. #54 at ¶¶ 42–43. At Plaintiff's request, the University later sent written communications to the Illinois Board of

---

[1] The Jeanne Clery Campus Safety Act requires higher education institutions to maintain and publicly disclose a daily crime log reflecting reported crimes occurring on campus. *See* 20 U.S.C. § 1092(f)(1)(F); 34 C.F.R. § 668.46(f). The daily crime log must include the nature, date, time, and general location of reported crimes, but does not require disclosure of identifying information regarding involved individuals. *Id.*

3

Admissions to the Bar ("IBAB") and to Plaintiff's prospective employer DLA Piper confirming no criminal charge had been filed against Plaintiff and the University's review of the complaint found no violation of University policy by Plaintiff. Doc. #62 at ¶¶ 69–70, 99–100.

Plaintiff also complains about certain campus policies and enforcement actions. She alleges the JLSA held a vigil in Thorne Auditorium, and the Muslim Law Student Association ("MLSA") was treated differently with respect to event space. Doc. #54 at ¶¶ 102–03. But the pleadings establish both events were held in Thorne Auditorium and University administrators attended the MLSA vigil. Doc. #62 at ¶¶ 102–03. Plaintiff further alleges the Black Law Student Association ("BLSA") was granted a grieving space in Lowden Hall following the death of a law student in 2021, and she compares that event to her October 2023 request for a grieving space. Doc. #54 at ¶¶ 106–07. The pleadings reflect she was granted use of a classroom in a building commonly used for instruction. Doc. #62 at ¶¶ 106–07.

Plaintiff also alleges Northwestern removed posters advertising a Palestine-related event. Doc. #54 at ¶¶ 116–118. The posters were removed because they did not comply with the law school's poster policy, and a law school-wide reminder of that policy was issued. Doc. #62 at ¶¶ 116–118. Plaintiff alleges students sent an email identifying other allegedly non-compliant posters that were not removed. Doc. #54 at ¶ 119. Plaintiff further alleges Northwestern removed a photograph of her cultural display from its Instagram story during the University's Global Village event. Doc. #54 at ¶ 141. The image was removed from the University's marketing platform after concerns were raised about the inclusion of a map of Palestine in the display. Doc. #62 at ¶ 141.

Upon her request, Plaintiff received an academic accommodation, including permission to receive incomplete grades and complete examinations at a later date. Doc. #38 at ¶¶ 68, 71; Doc.

4

#62, ¶ 136. Public records reflect Plaintiff was admitted to practice law in Illinois on November 6, 2024, she graduated with honors, and she is a licensed, practicing attorney.[2] Doc. #62, at ¶ 94.

## LEGAL STANDARD

In deciding a motion for judgment on the pleadings, the Court must accept all well-pleaded allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). "The pleadings include the complaint, the answer, and any written instruments attached as exhibits, such as affidavits, letters, contracts, and loan documentation." *Curry v. City of Chicago*, 2013 U.S. Dist. LEXIS 32037, at *7 (N.D. Ill. Mar. 8, 2013). Judgment is proper "'when it appears beyond a doubt that the [non-moving party] cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved.'" *Crosby v. Reg'l Transp. Auth.*, 2010 WL 2350707, at *1 (N.D. Ill. June 11, 2010) (quoting *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007)).

## ARGUMENT

**I.** **Plaintiff Fails to State a Hostile Educational Environment Claim Under Title VI.**

To plead a hostile educational environment under Title VI, a plaintiff must allege facts that adequately demonstrate: (1) participation in a federally funded program; (2) a hostile environment that was so severe, pervasive, and objectively offensive that it deprived her of access to educational benefits; (3) actual knowledge by the school of the alleged conduct; and (4) deliberate indifference by the school toward that conduct. *Canel v. Art Inst. of Chicago*, 23 CV 17064, 2025 WL 564504, at *5 (N.D. Ill. Feb. 20, 2025). Plaintiff cannot satisfy this standard on the face of the pleadings

---

[2] The Court may take judicial notice of Plaintiff's licensure status as reflected in publicly available records of the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). *See Myers v. City of Chicago*, No. 11 C 8529, 2012 WL 4009694, at *1 n.1 (N.D. Ill. Sept. 12, 2012) (taking judicial notice that plaintiff was admitted to and an active member of the Illinois bar).

because she fails to allege severe, pervasive, and objectively offensive harassment, any deprivation of educational benefits, or deliberate indifference by Northwestern.

### A.     Plaintiff Does Not Plead Severe, Pervasive, and Objectively Offensive Harassment.

To satisfy Title VI's severity requirement, Plaintiff must allege harassment that is "so severe, pervasive, and objectively offensive that it can be said to deprive [her] of access to the educational opportunities or benefits provided by the school." *Doe v. Galster*, 768 F.3d 611, 613–14 (7th Cir. 2014) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). In assessing whether conduct meets that demanding standard, courts in the Seventh Circuit consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the student's educational opportunities. *Hendrichsen v. Ball State Univ.*, 107 F. App'x 680, 684–85 (7th Cir. 2004). Unless conduct is quite severe, a single incident or isolated incidents are insufficient to establish a hostile educational environment. *Adusumilli v. Ill. Inst. of Tech.*, No. 97 C 8507, 1998 WL 601822, at *4 (N.D. Ill. Sept. 9, 1998).

This Court has previously concluded Plaintiff has failed to meet this standard on substantially identical allegations. Doc. #36 ("*Elagha I*") at 10. In *Elagha I*, the Court held Plaintiff's protest-related allegations—including being photographed, social media commentary, a fellow student's police report, and peer hostility—while "troubling," did not rise to the level of conduct that is "severe, pervasive, and objectively offensive" under Title VI. *Id.* at 11. Like in *Elagha I*, Plaintiff now alleges other students recorded her during a public protest—conduct Northwestern does not prohibit—but identifies no policy violation arising from that recording. Doc. #62 at ¶¶ 77, 82, Ex. I at 5. She also alleges online dissemination of her University email address and scholarship award, but Northwestern's FERPA Policy expressly identifies email

6

addresses and "degrees and awards received" as directory information, the disclosure of which does not violate FERPA or University policy. *Id.* at ¶ 79, Ex. J at 1. Plaintiff further alleges a fellow student falsely reported her to NUPD following a brief shoulder brush during the protest, resulting in a Daily Crime Blotter entry and subsequent media coverage. Doc. #54 at ¶¶ 60–61, 71–75. But the filing of a single allegedly false report does not constitute severe or pervasive harassment. *Adusumilli*, No. 97 C 8507, 1998 WL 601822, at *4.

Plaintiff then pivots to allegations that a fellow student stated she was "gunning for" Plaintiff and later confronted her at a campus event, and another student published inflammatory social media posts advocating violence against Palestinians. *Id.* at ¶¶ 15–16, 34. She also alleges one of her professors made remarks concerning two examples of public responses to law students at other schools who had expressed support of Palestine, and another professor imposed heightened expectations in clinical coursework. *Id.* at ¶¶ 46–47, 150. Plaintiff further points to alleged statements by a speaker at a JLSA event—which she characterizes as hostile toward Plaintiff and/or Palestinian-supporting students. *Id.* at ¶ 130. Plaintiff characterizes these events collectively as harassment. But even considered in totality, they do not allege conduct that is severe, pervasive, and objectively offensive under Title VI. *See Galster*, 768 F.3d 611, 613–14 (7th Cir. 2014) (holding actionable harassment must be "so severe, pervasive, and objectively offensive" that it effectively denies equal access to educational opportunities).

Courts have found hostile educational environments only in circumstances involving sustained, targeted, and egregious conduct—often over extended periods—marked by threats, vandalism, slurs, or repeated physical intimidation. *See, e.g.*, *I.G. by & through Grunspan v. Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 995 (D. Colo. 2020) (repeated swastika vandalism, Nazi salutes, and ongoing antisemitic remarks); *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d

332, 339–50 (S.D.N.Y. 2014) (years of antisemitic harassment, including physical and verbal threats and repeated vandalism); *Gul-E-Rana Mirza v. Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 860 (N.D. Ill. 2009) (racial epithets and persistent discriminatory treatment).

Plaintiff alleges nothing remotely comparable. Her allegations describe isolated events, online commentary by others, a single disputed police report, isolated peer interactions, and academic disagreements—not the kind of sustained, threatening, or humiliating conduct courts have recognized as actionable hostile environments. Under *Davis* and *Galster*, Plaintiff's allegations fall well short of the severe, pervasive, and objectively offensive threshold required to state a Title VI hostile educational environment claim.[3]

### B. Plaintiff Does Not Allege Deliberate Indifference by Northwestern.

Plaintiff's hostile educational environment claim fails most clearly (and independently from the other arguments raised above) because she does not plausibly allege that Northwestern responded to her reports in a manner that was "clearly unreasonable in light of the known circumstances." *Galster*, 768 F.3d at 614 (quoting *Davis*, 526 U.S. at 648); *see also Elagha I* at 12; Doc. #49 ("*Elagha II*") at 12. The Supreme Court has set a high bar for imposing institutional liability in peer-harassment cases, and courts afford school administrators broad latitude in addressing student complaints. *Galster*, 768 F.3d at 617. A university's response "does not have to be perfect or even successful," and mere negligence is insufficient to show deliberate indifference. *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 543 (7th Cir. 2022); *Johnson v. N.E. Sch. Corp.*, 972 F.3d 905, 912 (7th Cir. 2020).

---

[3] Title VI also requires a plaintiff to plausibly allege a concrete deprivation of educational access—not merely uncomfortable campus experiences. *See Gabrielle M. v. Park Forest–Chicago Heights, IL Sch. Dist. 163*, 315 F.3d 817, 823 (7th Cir. 2003); *Trentadue v. Redmon*, 619 F.3d 648, 653–54 (7th Cir. 2010). Here, the pleadings establish Plaintiff remained enrolled, received an academic accommodation upon request—including excused absences and deferred examinations—graduated with honors, and was admitted to practice law in Illinois on November 6, 2024. Doc. #62, ¶¶ 94, 136. These undisputed facts independently foreclose any plausible inference Plaintiff was denied access to Northwestern's educational opportunities.

In *Elagha I* and again in *Elagha II*, this Court held Plaintiff failed to plausibly allege deliberate indifference because Northwestern responded to her reports and its actions were not clearly unreasonable in light of the known circumstances. *Elagha I* at 12; *Elagha II* at 12. The Court emphasized institutional liability requires more than dissatisfaction with a university's response, a response need not be perfect or successful, negligence is insufficient, and a plaintiff is not entitled to any particular remedial measure. *Elagha I* at 13; *Elagha II* at 13. Applying that standard, the Court concluded Northwestern's response did not support a claim for deliberate indifference. *Elagha I* at 14; *Elagha II* at 13.

Here, Plaintiff alleges other students photographed and recorded her during the November 16, 2023 protest and images from the protest circulated online. Doc. #54 at ¶¶ 51–54, 59–60, 77, 82. She further alleges her University email address and the fact that she received a University scholarship award were disseminated online. *Id.* at ¶¶ 77, 79, 82. However, Northwestern does not prohibit photography or videography during public demonstrations. Doc. #62 at ¶¶ 77, 82. Northwestern policy likewise expressly classifies a student's University email address and "degrees and awards received" as directory information, disclosure of which does not violate federal privacy laws or University policy. *Id.* at ¶ 79, Ex. J at 1; 20 U.S.C. § 1232g(a)(5)(A) (describing information that need not be kept confidential under federal privacy laws impacting students). Plaintiff therefore has not alleged facts from which the Court can conclude that Northwestern acted in a clearly unreasonable manner in declining to treat the photography and videography during the protest or dissemination of directory information as actionable misconduct.

Plaintiff also alleges she requested a mediation session with the student who posted inflammatory social media content advocating violence against Palestinians and sought a no-contact directive against the student who had previously expressed hostility toward her and

allegedly confronted her after Plaintiff sent a Palestine-related email. Doc. #54 at ¶¶ 15–16, 34. Northwestern did not impose those specific remedies. But Title VI does not entitle a plaintiff to her preferred form of relief, and a university's decision not to adopt a particular requested measure—such as mediation or a no-contact directive—does not constitute deliberate indifference. *Galster*, 768 F.3d at 621; *Elagha I* at 13; *Elagha II* at 13. At most, Plaintiff pleads disagreement with Northwestern's response to peer conflict, which is insufficient as a matter of law.

Plaintiff then alleges a fellow law student falsely reported her to NUPD following a brief shoulder brush during the protest. Doc. #54 at ¶¶ 60–61, 71–75. Following the report, Northwestern posted a Daily Crime Blotter entry as required by the Jeanne Clery Campus Safety Act that did not include identifying information about Plaintiff. *Id.* at ¶¶ 74–75. As part of its investigation, Northwestern reviewed available video footage, which did not substantiate any physical contact by Plaintiff. Doc. #62 at ¶¶ 71–72. Plaintiff's disagreement with the handling of that report and investigation does not transform these actions into deliberate indifference.

Plaintiff further alleges media outlets published articles referencing the police report and she suffered professional consequences with the IBAB and DLA Piper, her prospective employer. Doc. #54 at ¶¶ 90–91, 94, 96. Northwestern subsequently sent written communications to clarify the allegations against her were unsupported: on July 1, 2024, Northwestern sent a letter to the IBAB confirming no criminal charge had been filed and the University's Office of Civil Rights and Title IX Compliance ("NU-OCR") found no violation of University policy, and on July 26, 2024, Northwestern sent a similar letter to Plaintiff's prospective employer. Doc. #24 at ¶ 55; Doc. #38 at ¶ 55; Doc. #62 at ¶¶ 69–70, 99–100.[4] These communications are not the hallmark of a

---

[4] Plaintiff herself has alleged the existence of such communications and has never disputed their authenticity or substance; those facts are therefore not in reasonable dispute for purposes of the pleadings. *See* Doc. #24 at ¶ 55; Doc. #38 at ¶ 55; Doc. #62 at ¶¶ 69–70, 99–100. Those allegations confirm the University affirmatively acted to clarify the record with third parties.

deliberate policy of harassment, as Plaintiff must show; instead, they demonstrate Northwestern took affirmative steps in response to Plaintiff's concerns. Plaintiff also alleges Northwestern failed to adequately protect her while she continued her studies. Doc. #54 at ¶¶ 135–37. Yet the pleadings establish Northwestern granted an academic accommodation upon her request, including excused absences and permission to take incomplete grades and complete examinations at a later date. Doc. #62 at ¶¶ 136, 207. These measures reflect affirmative steps to support Plaintiff's continued access to her education, not deliberate indifference.

Taken together, Plaintiff's allegations show Northwestern investigated reported incidents, evaluated available evidence, complied with federal reporting obligations, clarified information to external entities, and provided an academic accommodation. At most, Plaintiff pleads dissatisfaction with Northwestern's conclusions and responses. But Title VI does not authorize courts to second-guess administrators' decisions or impose liability simply because a plaintiff would have preferred a different approach. *Galster*, 768 F.3d at 617, 621; *Landau, et al. v. Corp. of Haverford Coll.*, CV 24-2044, 2025 WL 1796473, at \*8 (E.D. Pa. June 30, 2025); *see also Doe v. Northwestern Univ.*, No. 1:24-cv-04125, slip op. at 14 (N.D. Ill. Mar. 3, 2026) (observing that courts consistently hold that a Title VI plaintiff is not entitled to any one specific response). Because the pleadings establish affirmative institutional action rather than inaction, Plaintiff has not plausibly alleged deliberate indifference as a matter of law.

## II. <u>Plaintiff Fails to State a Claim for Intentional Discrimination Under Title VI.</u>

To state a claim for intentional discrimination under Title VI, a plaintiff must plausibly allege she was intentionally discriminated against on the basis of race, color, or national origin by a recipient of federal funding. *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015). A plaintiff may attempt to establish intentional discrimination through either direct or

11

indirect evidence. *Totten v. Benedictine Univ.*, No. 20 C 6107, 2021 WL 3290926, at *9 (N.D. Ill. Aug. 2, 2021). Plaintiff proceeds, at most, under the indirect method.

Under that framework, Plaintiff must plausibly allege she: (1) is a member of a protected class; (2) met Northwestern's legitimate expectations; (3) suffered an adverse action; and (4) was treated less favorably than similarly situated individuals outside her protected class. *Id.* at *10. To satisfy the comparator requirement, Plaintiff must identify individuals who are directly comparable to her in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Conclusory references to dissimilar situations or isolated examples do not suffice. *See Does 1–2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 581 (8th Cir. 2021); *Resendez v. Prance*, No. 3:16-CV-862-JVB-MGG, 2018 WL 3275615, at *6 (N.D. Ind. Jan. 26, 2018).

Plaintiff does not satisfy this standard. As an initial matter, Plaintiff fails to plausibly allege any adverse action. To satisfy this element, Plaintiff must plead a materially adverse educational action—one that meaningfully alters her status or access to educational opportunities. *Totten*, No. 20 C 6107, 2021 WL 3290926, at *10. Routine administrative decisions, enforcement of neutral policies, or isolated inconveniences do not suffice. *See id.* (dismissing claim where plaintiff failed to allege any meaningful deprivation of educational access). Plaintiff's cited examples—removal of noncompliant posters, exclusion of a single image from an Instagram story, and allocation of campus space—do not constitute materially adverse educational actions under governing law. *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 696 (7th Cir. 2017) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *Yap v. Northwestern Univ.*, 119 F. Supp. 3d 841, 851 (N.D. Ill. 2015). Plaintiff likewise identifies no similarly situated individuals outside her protected classes who received more favorable treatment, and none of her allegations establish disparate treatment based on protected status. Each of Plaintiff's examples

12

instead reflects either neutral institutional decisions, equal treatment across student groups, or the absence of any valid comparator.

Plaintiff first alleges Northwestern's campus-wide statements and response to events following October 7, 2023 did not address Gaza or Palestine. Even if such statements could qualify as adverse action as to Plaintiff, the pleadings reflect University leadership issued communications condemning antisemitism, Islamophobia, and racism, expressed concern for the loss of life affecting both Israelis and Palestinians, and announced the formation of a President's Advisory Committee on Preventing Antisemitism and Hate with an expressly inclusive mandate that encompassed support for students of Palestinian descent. Doc. #62 at ¶¶ 30–31, Ex. A. These actions and communications objectively reflect neutral, inclusive messaging, are not in reasonable dispute, and do not plausibly support an inference of intentional discrimination under Title VI.

Plaintiff next makes allegations concerning campus space, programming, and institutional support for student groups. Those allegations likewise fail to identify any similarly situated student or group outside her protected classes that was treated more favorably. Plaintiff alleges the JLSA held a vigil in support of Israel in a prominent lobby space, while the MLSA was pressured to hold a smaller, less public gathering. Doc. #54 at ¶¶ 102–03. Again, even if such a room assignment could qualify as meeting the threshold for a disparate treatment claim, the pleadings establish both events were held in Thorne Auditorium, and University administrators attended the MLSA vigil. Doc. #62 at ¶¶ 102–03. The pleadings therefore confirm JLSA and MLSA were afforded access to the same venue and administrative engagement, defeating any inference of disparate treatment.

Plaintiff similarly alleges the BLSA was granted a grieving space in Lowden Hall following the death of a law student in 2021, while her request for a grieving space in October 2023 was treated differently. Doc. #54 at ¶¶ 106–07. These circumstances are not comparable in

13

any material respect: BLSA's gathering followed the death of a member of the law school community and was open to all students, whereas Plaintiff's request arose from international events affecting students with personal ties abroad. Plaintiff pleads no facts showing any non-Palestinian, non-Muslim, or non-Middle Eastern group seeking space under similar circumstances got more favorable treatment. In any event, the pleadings establish MLSA was granted use of a classroom in a building commonly used for instruction. Doc. #62 at ¶¶ 106–07.

Importantly, courts have rejected attempts to satisfy the comparator requirement by pointing to different student groups or institutional responses to unrelated events rather than similarly situated individuals. *See Doe v. Northwestern Univ.*, No. 1:24-cv-04125, slip op. at 19–20 (dismissing Title VI intentional discrimination claim where plaintiffs relied on comparisons to the University's responses to other incidents and groups). Plaintiff's allegations suffer from the same defect: she compares Northwestern's treatment of different affinity groups—such as the JLSA, MLSA, and BLSA—rather than identifying any similarly situated individual who was treated more favorably.

Plaintiff also seeks to buttress allegations of discriminatory treatment based on Northwestern's removal of posters advertising a Palestine-related event. Doc. #54 at ¶¶ 116–18. But the pleadings establish the posters were removed because they did not comply with the law school's poster policy, and Northwestern issued a law school-wide reminder of that policy applicable to all students. Doc. #62 at ¶¶ 116–18. Plaintiff pleads no facts showing students outside her protected classes were permitted to post noncompliant materials or were otherwise exempted from the same rules. Although Plaintiff alleges students sent an email identifying "at least 43" other allegedly non-compliant posters that were not removed, she provides no factual detail about those posters—such as their content, timing, location, sponsorship, or whether they were in fact

14

similarly situated under the policy. Doc. #54 at ¶ 119. Bare reference to unspecified posters, without factual allegations establishing they were materially similar and treated differently under comparable circumstances, does not plausibly allege differential enforcement. Absent any well-pleaded allegation of differential enforcement against similarly situated students, Plaintiff's poster allegations cannot support an inference of discrimination.

Finally, Plaintiff alleges Northwestern removed a photograph of her cultural display from its Instagram story during the University's Global Village event. Doc. #54 at ¶ 141. The pleadings reflect the image was removed from the University's marketing platform after concerns were raised about the inclusion of a controversial map of Palestine in the display. Doc. #62 at ¶ 141. Plaintiff alleges no facts showing comparable content by students outside her protected classes was treated differently. Absent such allegations, she fails to plausibly plead disparate treatment.

Taken together, Plaintiff's allegations describe discretionary institutional decisions applied evenhandedly across student groups and content-neutral enforcement of University policies—not intentional discrimination. At no point does Plaintiff plausibly allege Northwestern treated her less favorably than any similarly situated student outside her protected classes. The examples she provides either relate to others' experiences or do not meet the standard for "adverse action" under the law. Plaintiff does not plausibly state a claim for intentional discrimination under Title VI.

## **CONCLUSION**

WHEREFORE, Defendant Northwestern University respectfully requests this Court enter an order granting its motion for judgment on the pleadings with prejudice for all counts in Plaintiff's Third Amended Complaint, and granting such further relief as this Court deems equitable and just.

Dated: March 6, 2026

Respectfully submitted,

NORTHWESTERN UNIVERSITY

By: *Shivani Govani*
One of its attorneys

| | |
|---|---|
| Casey Grabenstein | Joshua W.B. Richards |
| (casey.grabenstein@saul.com) | (joshua.richards@saul.com) – *pro hac vice* |
| Shivani Govani (shivani.govani@saul.com) | Saul Ewing LLP |
| Saul Ewing LLP | Centre Square West |
| 161 North Clark Street, Suite 4200 | 1500 Market Street, 38th Floor |
| Chicago, Illinois 60601 | Philadelphia, Pennsylvania 19102 |
| (312) 876-7100 | (215) 972-7777 |

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney certifies that on March 6, 2026, he caused the foregoing to be filed electronically with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which sent electronic notification to all parties who have appeared and are registered as CM/ECF participants in this matter.


/s/ *Shivani Govani*